United States Bankruptcy Court
Southern District of Texas

**ENTERED**

November 05, 2025

Nathan Ochsner, Clerk

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| KLEOPATRA FINCO S.À R.L., *et al.*,[1] | ) | Case No. 25-90642 |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | Re: Docket No. 7 |

**ORDER (I) SCHEDULING A COMBINED DISCLOSURE
STATEMENT APPROVAL AND PLAN CONFIRMATION HEARING,
(II) ESTABLISHING A PLAN AND DISCLOSURE STATEMENT
OBJECTION DEADLINE AND RELATED PROCEDURES, (III) APPROVING
THE SOLICITATION PROCEDURES, (IV) APPROVING THE COMBINED
HEARING NOTICE, (V) WAIVING THE REQUIREMENTS FOR THE U.S.
TRUSTEE TO CONVENE A MEETING OF CREDITORS, (VI) WAIVING THE
REQUIREMENTS FOR THE DEBTORS TO FILE (A) SCHEDULES AND SOFAS
AND (B) RULE 2015.3 FINANCIAL REPORTS, AND (VII) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) scheduling the Combined Hearing; (b) establishing the Objection Deadline and approving related procedures; (c) approving the Solicitation Procedures; (d) approving the form and manner of the Combined Hearing Notice; (e) approving the form and manner of the Publication Notice; (f) approving the form of the Opt-Out Forms; (g) approving the form of the Ballots; (h) conditionally waiving the requirements that (x) U.S. Trustee convene the Creditors' Meeting and (y) the Debtors file Schedules, SOFAs, and 2015.3 Reports; (i) allowing the notice period for the Disclosure Statement and the

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Klockner. The location of Kleopatra Finco S.à r.l.'s principal place of business and the Debtors' service address in these chapter 11 cases is 46A, Avenue J.F. Kennedy, L-1855 Luxembourg, R.C.S. Luxembourg.

[2]    Capitalized terms used and not defined herein have the meanings ascribed to them in the Motion.

Combined Hearing to run simultaneously; and (j) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the *Order of Reference to Bankruptcy Judges* from the United States District Court for the Southern District of Texas, entered May 24, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having found that it may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.        The following Confirmation Schedule is hereby approved (subject to modification as necessary):

| Event | Date |
|---|---|
| First Lien SFA Loans Voting Record Date[3] | October 30, 2025 |
| Solicitation Launch Date | November 4, 2025 |
| Petition Date | November 4, 2025 |

---

[3]    To facilitate solicitation of the First Lien Secured Notes and Second Liens Secured Notes, the Debtors established a separate voting record date for First Lien Secured Noteholders and Second Liens Secured Noteholders (the "Noteholders Voting Record Date" and, together with the First Lien SFA Loans Voting Record Date, collectively, the "Voting Record Dates").  The Noteholders Voting Record Date is the individualized date in

| Event | Date |
|---|---|
| Initial Plan Supplement Deadline | December 4, 2025, at 4:00 p.m., prevailing Central Time |
| Voting Deadline | December 11, 2025 at 4:00 p.m., prevailing Central Time |
| Opt-Out Deadline | December 11, 2025 at 4:00 p.m., prevailing Central Time |
| Objection Deadline | December 11, 2025 at 4:00 p.m., prevailing Central Time |
| Combined Hearing | December 16, 2025, at 1:00 p.m., prevailing Central Time |

2.      The Combined Hearing, at which time this Court will consider, among other things, final approval of the adequacy of the Disclosure Statement and confirmation of the Plan, shall be held on **December 16, 2025 at 1:00 p.m., prevailing Central Time**.  The Combined Hearing may be continued from time to time by the Court, without further notice, other than adjournments announced in open court or in the filing of a notice of reset hearing in these chapter 11 cases. The adjourned date or dates will be available on the electronic case filing docket and the Claims and Noticing Agent's website at: https://cases.stretto.com/Klockner.

3.      The Disclosure Statement (including all applicable exhibits thereto) provides Holders of Claims, Holders of Interests, and other parties in interest with sufficient notice of the injunction, exculpation, and release provisions contained in Article VIII of the Plan, in satisfaction of the requirements of Bankruptcy Rules 2002(c)(3) and 3016(b) and (c).

4.      The Debtors are required to file the Plan Supplement on or before **December 4, 2025 at 4:00 p.m., prevailing Central Time,** or such date that is seven (7) days prior to the Objection Deadline; *provided* that such Plan Supplement may be amended, supplemented, or

---

which each Holder of First Lien Secured Notes and Second Lien Secured Notes submits their respective votes on the Plan and thereby blocks the amount of their Claims entitled to vote on the Plan.

otherwise modified from time to time in accordance with the Plan and Confirmation Order up to and including the Effective Date.

5.      Any objections to adequacy of the Disclosure Statement and confirmation of the Plan must be filed on or before **December 11, 2025 at 4:00 p.m., prevailing Central Time**.

6.      Any objections to the Disclosure Statement or confirmation of the Plan must:

a.      be in writing;

b.      comply with the Bankruptcy Rules and the Bankruptcy Local Rules;

c.      state the name and address of the objecting party and the amount and nature of the Claim or Interest beneficially owned by such entity;

d.      state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objections; and

e.      be filed with this Court with proof of service thereof and served upon the Notice Parties so as to be actually received by the Objection Deadline.

7.      Any objections not satisfying the requirements of this Order shall not be considered and shall be overruled.

8.      The Combined Hearing Notice, a copy of which is attached hereto as **<u>Exhibit 1</u>**, the Publication Notice, a copy of which is attached hereto as **<u>Exhibit 2</u>**, and the Opt-Out Form, a copy of which is attached hereto as **<u>Exhibit 5</u>**, and service thereof, comply with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules and are approved and deemed to be sufficient and appropriate under the circumstances.

9.      The Solicitation Packages and the Solicitation Procedures utilized by the Debtors for distribution of the Solicitation Packages, as set forth in the Motion, in soliciting acceptances

and rejections of the Plan satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable rules, laws, and regulations, including any applicable registration requirements and exemptions therefrom under the Securities Act, are approved.

10.     The Debtors are authorized to enter into transactions to cause the Publication Notice to be published in *The New York Times* (national and international editions), within five (5) business days following entry of this Order, or as soon as reasonably practicable thereafter, and to make reasonable payments required for such publication.  The Publication Notice, together with the Combined Hearing Notice provided for in the Motion, is deemed to be sufficient and appropriate under the circumstances.

11.     The Ballots, substantially in the forms attached hereto as **Exhibit 3A, Exhibit 3B, and Exhibit 4** are approved.  The procedures used for tabulations of votes to accept or reject the Plan as set forth in the Motion and as provided by the Ballots are approved.

12.     The U.S. Trustee need not and shall not convene a Creditors Meeting pursuant to section 341(e) of the Bankruptcy Code; *provided* that if the Plan is not confirmed within 62 days of the Petition Date, the U.S. Trustee may schedule a Creditors Meeting as soon as reasonably practicable thereafter.

13.     The deadline for the Debtors to file the Rule 2015.3 Reports, Schedules, and SOFAs is January 5, 2026, without prejudice to the Debtors' right to request further extensions thereof; *provided* that such date may be further extended by agreement between the Debtors and the U.S. Trustee without further order of the Court; *provided further* that if Plan is confirmed within 62 days of the Petition Date, such requirement to file the Rule 2015.3 Reports, Schedules, and SOFAs shall be waived.

14.     The notice and objection procedures set forth in this Order and the Motion constitute good and sufficient notice of the Combined Hearing, commencement of these chapter 11 cases, deadline and procedures for objection to approval of the Solicitation Procedures, adequacy of the Disclosure Statement, and confirmation of the Plan, and no other or further notice shall be necessary.

15.     The Debtors are not required to mail a copy of the Plan or the Disclosure Statement to Holders of Claims and Interests in the Non-Voting Classes.

16.     Nothing in this Order shall be construed as a waiver of the right of the Debtors or any other party in interest, as applicable, to object to a proof of claim after the Voting Record Date.

17.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

18.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of the Bankruptcy Rule 6004(a), the Bankruptcy Local Rules, and the Complex Case Procedures are satisfied by such notice.

19.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

20.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

21.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.


Signed:  November 05, 2025

_____
Christopher Lopez
United States Bankruptcy Judge

## <u>Exhibit 1</u>

### Combined Hearing Notice

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KLEOPATRA FINCO S.À R.L., *et al.*,[1] | ) | Case No. 25-90642 (CML) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

### NOTICE OF (I) COMMENCEMENT OF
### PREPACKAGED CHAPTER 11 BANKRUPTCY
### CASES; (II) HEARING APPROVING THE DISCLOSURE
### STATEMENT, CONFIRMING THE JOINT PREPACKAGED CHAPTER 11
### PLAN, AND RELATED MATTERS; AND (III) OBJECTION DEADLINES
### AND SUMMARY OF THE DEBTORS' JOINT PREPACKAGED CHAPTER 11 PLAN

On November 4, 2025 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") commenced filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"). Contemporaneously therewith, the Debtors filed the *Joint Prepackaged Plan of Reorganization of Kleopatra Finco S.à r.l. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 5] (as amended, supplemented, or otherwise modified from time to time, the "Plan") and the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of Kleopatra Finco S.à r.l. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 6] (as amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement") pursuant to sections 1125 and 1126(b) of the Bankruptcy Code.[2]

**YOU ARE ADVISED TO CAREFULLY REVIEW THE PLAN, INCLUDING THE RELEASE, EXCULPATION, DISCHARGE, AND INJUNCTION PROVISIONS THEREIN, AS YOUR RIGHTS MAY BE AFFECTED.**

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Klockner. The location of Kleopatra Finco S.à r.l.'s principal place of business and the Debtors' service address in these chapter 11 cases is 46A, Avenue J.F. Kennedy, L-1855 Luxembourg, R.C.S. Luxembourg.

[2]   Capitalized terms used but not defined herein have the meanings given to them in the Plan or the Disclosure Statement, as applicable. The statements contained herein are summaries of the provisions contained in the Plan and the Disclosure Statement and do not purport to be precise or complete statements of all the terms and provisions of the Plan or the documents referred therein. To the extent there is a discrepancy between the terms herein and the Plan or the Disclosure Statement, as applicable, shall govern and control. For a more detailed description of the Plan, please refer to the Disclosure Statement.

Copies of the Plan, the Disclosure Statement, and any other publicly-filed documents in the Chapter 11 Cases are available free of charge, as applicable, by: (a) visiting the Debtors' restructuring website at https://cases.stretto.com/Klockner; (b) emailing KPInquiries@Stretto.com (with "Kleopatra – Solicitation Inquiries" in the subject line); or (c) calling the Claims and Noticing Agent at (833) 212-0915 (USA or Canada) (toll-free) or +1 (949) 273-2457 (International). You may also obtain copies of any pleadings filed in the Chapter 11 Cases via PACER at https://www.pacer.gov (for a fee). The Plan is a "prepackaged" plan of reorganization. The Debtors believe that any valid alternative to confirmation of the Plan would result in significant delays, litigation, and additional costs, and, ultimately, would jeopardize recoveries for Holders of Allowed Claims.

## CRITICAL INFORMATION REGARDING RELEASE PROVISIONS IN THE PLAN

ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, DISCHARGE, AND INJUNCTION PROVISIONS, AND ARTICLE VIII.D CONTAINS A THIRD-PARTY RELEASE. ACCORDINGLY, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE IT MIGHT AFFECT YOUR RIGHTS.

IF YOU DO NOT (A) ELECT TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.C OR VIII.D OF THE PLAN; OR (B) TIMELY FILE AN OBJECTION TO SUCH RELEASES (WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES) THAT IS UNRESOLVED AT CONFIRMATION, YOU WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL OF YOUR CLAIMS, INTERESTS, AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES.

THE RELEASE, EXCULPATION, INJUNCTION, AND DISCHARGE PROVISIONS AND RELATED DEFINITIONS CONTAINED IN THE PLAN ARE INCLUDED IN THIS NOTICE.

### Hearing on Confirmation of the Plan and the Adequacy of the Disclosure Statement

A hearing on confirmation of the Plan and the adequacy of the Disclosure Statement (the "Combined Hearing") will be held before the Honorable Christopher M. Lopez, United States Bankruptcy Judge, in Courtroom 400 of the United States Bankruptcy Court, 515 Rusk Street Houston, Texas 77002, on **December 16, 2025 at [●] [a.m./p.m.]**, prevailing Central Time, to consider the adequacy of the Disclosure Statement, any objections to the Disclosure Statement, confirmation of the Plan, any objections thereto, and any other matter that may properly come before the Bankruptcy Court. Please be advised that the Combined Hearing may be continued from time to time by the Bankruptcy Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on other parties entitled to notice.

## Information Regarding the Plan

**Voting Record Dates**.   The voting record date for First Lien SFA Loans was **October 30, 2025**, which was the date used for determining which Holders of First Lien SFA Claims were entitled to vote on the Plan (the "First Lien SFA Loans Voting Record Date").  Given the mechanics of the First Lien Secured Notes and Second Lien Secured Notes the Debtors established a separate record date for the First Lien Secured Noteholders and Second Lien Secured Noteholders (the "Noteholders Voting Record Date" and together with the First Lien SFA Loans Voting Record Date, the "Voting Record Dates").  The Noteholders Voting Record Date is the individualized date in which each Holder of First Lien Secured Notes and Second Lien Secured Notes submits their respective votes on the Plan and thereby blocks the amount of their Claims entitled to vote on the Plan.

**Objections to the Plan**.  The deadline for filing objections to the Plan or the Disclosure Statement (each, an "Objection") is **December 11, 2025 at 4:00 p.m., prevailing Central Time** (the "Objection Deadline").   Any Objections must:  (a) be in writing; (b) comply with the Bankruptcy Rules and the Bankruptcy Local Rules; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest beneficially owned by such entity; (d) state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objections; and (e) be filed with the Bankruptcy Court with proof of service thereof and served upon the Notice Parties so as to be actually received by the Objection Deadline.

Objections must be filed with the Bankruptcy Court and served so as to be **actually received** by the Objection Deadline, by those parties who have filed a notice of appearance in the Debtors' Chapter 11 Cases as well as the following parties:

| | |
|---|---|
| **Debtors** | **Kleopatra Finco S.à r.l.** |
| | 3585 Klockner Road |
| | Gordonsville, VA 22942 |
| | Attention: Marc Rotella, Chief Financial Officer, Shené Mitchell, Deputy General Counsel |
| | E-mail address: marc.rotella@kpfilms.com, shene.mitchell@kpfilms.com |
| **Proposed Counsel to the Debtors** | **Kirkland & Ellis LLP** |
| | 333 West Wolf Point Plaza |
| | Chicago, Illinois 60654 |
| | Attention: Chad J. Husnick, P.C., John R. Luze, P.C., Jeffrey T. Michalik, David R. Gremling |
| | E-mail address: chad.husnick@kirkland.com john.luze@kirkland.com jeff.michalik@kirkland.com dave.gremling@kirkland.com |
| | - and – |
| | **Kirkland & Ellis LLP** |
| | 601 Lexington Avenue |
| | New York, New York 10022 |
| | Attention: Joshua A. Sussberg, P.C. |

3

| | E-mail address: | joshua.sussberg@kirkland.com |
|---|---|---|

- and –

**Porter Hedges LLP**
1000 Main St., 36th Floor
Houston, Texas 77002

| Attention: | John F. Higgins, Eric M. English, M. Share Johnson, Megan Young-John, James A. Keefe and Joanna D. Caytas |
|---|---|
| E-mail address: | jhiggins@porterhedges.com |
| | eenglish@porterhedges.com |
| | sjohnson@porterhedges.com |
| | myoung-john@porterhedges.com |
| | jkeefe@porterhedges.com |
| | jcaytas@porterhedges.com |

| United States Trustee | **Office of the United States Trustee for the Southern District of Texas** |
|---|---|
| | 515 Rusk Street, Suite 3516 |
| | Houston, Texas 77002 |
| | Attention:   Andrew Jimenez |

**IF AN OBJECTION IS NOT TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT SHALL <u>NOT</u> BE CONSIDERED BY THE BANKRUPTCY COURT.**

<u>**Summary of Plan Treatment**</u>

The following chart summarizes the treatment provided by the Plan to each class of Claims against and Interests in the Debtors, and indicates the voting status of each class.

| SUMMARY OF ESTIMATED RECOVERIES | | |
|---|---|---|
| **Class** | **Claim/Interest** | **Treatment of Claim/ Interest** |
| 1 | Other Secured Claims | Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment of its Allowed Claim, each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction of such Other Secured Claim, at the option of the applicable Debtor or the Reorganized Debtor in consultation with the Required Consenting Senior Creditors, either: (i)     payment in full in Cash of its Allowed Other Secured Claim; (ii)     the collateral securing its Allowed Other Secured Claim; (iii)     Reinstatement of its Allowed Other Secured Claim; or (iv)     such other treatment rendering its Allowed Other Secured Claim Unimpaired. |

4

| SUMMARY OF ESTIMATED RECOVERIES | | |
|---|---|---|
| **Class** | **Claim/Interest** | **Treatment of Claim/ Interest** |
| 2 | Other Priority Claims | Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment of its Allowed Claim, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim or such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. |
| 3 | First Lien Claims | Except to the extent that a Holder of an Allowed First Lien Claim agrees to less favorable treatment, on the Effective Date, each Holder of an Allowed First Lien Claim shall receive: (i) its *pro rata* share of 100 percent of the New Equity Interests, subject to dilution on account of the Management Incentive Plan; or (ii) such reasonable equivalent value on account of the Alternative Instrument (if any). |
| 4 | Second Lien Claims | Except to the extent that a Holder of an Allowed Second Lien Claim agrees to less favorable treatment, on the Effective Date, each Holder of an Allowed Second Lien Claim shall receive its *pro rata* share of an aggregate principal amount of €17.5 million of Exit Financing Loans or Notes in accordance with the Exit Facility Documents (which €17.5 million shall be in addition to the amount of the Exit Financing Loans or Notes provided to the DIP Lenders pursuant to Article II.C of the Plan). |
| 5 | General Unsecured Claims | Each Holder of an Allowed General Unsecured Claim shall, in full and final satisfaction of such General Unsecured Claim, either:<br><br>(i)  be Reinstated; or<br><br>(ii)  receive such other treatment rendering such General Unsecured Claims Unimpaired. |
| 6 | Intercompany Claims | Each Allowed Intercompany Claim shall be, at the option of the applicable Debtor or the Reorganized Debtor with the reasonable consent of the Required Consenting Senior Creditors, either:<br><br>(i)  Reinstated;<br><br>(ii)  adjusted, converted to equity, set off, settled, distributed, or contributed; or<br><br>(iii)  discharged, cancelled, and released without any distribution on account of such Allowed Intercompany |

| SUMMARY OF ESTIMATED RECOVERIES | | |
|---|---|---|
| **Class** | **Claim/Interest** | **Treatment of Claim/ Interest** |
| | | Claims. |
| 7 | Intercompany Interests | Each Allowed Intercompany Interest shall be, at the option of the applicable Debtor or the Reorganized Debtor with the reasonable consent of the Required Consenting Senior Creditors, either: (i)   Reinstated; (ii)   adjusted, converted to equity, set off, settled, distributed, or contributed; or (iii)   discharged, cancelled, and released without any distribution on account of such Intercompany Claims. |
| 8 | Section 510(b) Claims | On the Effective Date, all Section 510(b) Claims will be cancelled, released, discharged, extinguished, and will be of no further force or effect, and Holders of Section 510(b) Claims will not receive any distribution on account of such Section 510(b) Claims. |
| 9 | KH2 Equity Interests and KPA Equity Interests | On the Effective Date, all KH2 Equity Interests and KPA Equity Interests shall be cancelled, released, extinguished, and discharged and will be of no further force or effect.  Holders of KH2 Equity Interests and KPA Equity Interests shall receive no recovery or distribution on account thereof and each Holder of a KH2 Equity Interest and KPA Equity Interest shall not receive or retain any distribution, property, or other value on account of such KH2 Equity Interest or KPA Equity Interest. |

### Discharge, Injunctions, Exculpation, and Releases

Please be advised that the Plan contains certain release, exculpation, discharge, and injunction provisions as follows:

### Relevant Definitions

"**Exculpated Parties**" means, collectively, and in each case in its capacity as such: (a) each of the Debtors; and (b) the independent directors or managers of any Debtor.

"**Related Party**" means, each of, and in each case solely in its capacity as such, current and former directors, managers, officers, committee members, members of any Governing Body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals,

members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors.

"**Released Parties**" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Lenders; (d) the Agents (including the DIP Agent); (e) Holders of First Lien Claims; (f) the members of the Ad Hoc Group; (g) the Consenting Senior Creditors; (h) Holders of Second Lien Claims; (i) the CastleKnight Funds; (j) the SVP Funds; (k) the Factors; (l) Holders of Claims or Interests who vote to accept the Plan or are presumed to accept the Plan and do not affirmatively opt out of the releases set forth therein; (m) Holders of Claims or Interests who abstain from voting on the Plan and who do not affirmatively opt out of the releases set forth therein; (n) Holders of Claims or Interests who vote to reject the Plan or are deemed to reject the Plan but do not affirmatively opt out of the releases set forth therein; (o) each current and former Affiliate of each Entity in clause (a) through the following clause (p); and (p) each Related Party of each Entity in clause (a) through clause (o); provided that, in each case, an Entity shall not be a Released Party if it: (i) affirmatively opts out of the releases in the Plan; or (ii) timely objects to the releases in the Plan and such objection is not resolved before the Confirmation Hearing.

"**Releasing Parties**" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Lenders; (d) the Agents (including the DIP Agent); (e) Holders of First Lien Claims; (f) the members of the Ad Hoc Group; (g) the Consenting Senior Creditors; (h) Holders of Second Lien Claims; (i) the CastleKnight Funds; (j) the SVP Funds; (k) the Factors; (l) Holders of Claims or Interests who vote to accept the Plan or are presumed to accept the Plan and do not affirmatively opt out of the releases set forth therein; (m) Holders of Claims or Interests who abstain from voting on the Plan and who do not affirmatively opt out of the releases set forth therein; (n) Holders of Claims or Interests who vote to reject the Plan or are deemed to reject the Plan but do not affirmatively opt out of the releases set forth therein; (o) each current and former Affiliate of each Entity in clause (a) through the following clause (p); and (p) each Related Party of each Entity in clause (a) through clause (o); provided that, in each case, an Entity shall not be a Releasing Party if it: (i) affirmatively opts out of the releases in the Plan; or (ii) timely objects to the releases in the Plan and such objection is not resolved before the Confirmation Hearing.

A.      *Discharge of Claims and Termination of Interests*.

**Pursuant to section 1141(d) of the Bankruptcy Code and except as otherwise specifically provided in the Plan, or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims that the Debtors resolve or compromise after the Effective Date), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of**

whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services that employees of the Debtors have performed prior to the Effective Date, and that arise from a termination of employment, any contingent or noncontingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (a) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the holder of such a Claim or Interest has accepted the Plan.  Any default or "event of default" by the Debtors with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date.  Without prejudice to the distributions, rights, and treatment that are provided by the Plan, the Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date, and, upon the Effective Date, all Holders of such Claims and Interests shall be forever precluded and enjoined, pursuant to Section 524 of the Bankruptcy Code, from prosecuting or asserting any such Claim or Interest against the Debtors, Reorganized Debtors, or any of their assets or property.

B.      *Release of Liens*.

        Except as otherwise provided in the Exit Facility Documents, the Factoring Program Documents, the Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, benefit, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert and, as applicable, be reassigned, surrendered, reconveyed, or retransferred to the Reorganized Debtors and their successors and assigns.  Any Holder of such Secured Claim shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor (including any Cash Collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder, including the Agents/Trustees) and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

        To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as

8

practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps reasonably requested by the Debtors or the Reorganized Debtors, that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.

C.      *Releases by the Debtors*.

        **Except as otherwise provided in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, their Estates, the Reorganized Debtors, and any Person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative Claims, asserted or assertable on behalf of any of the Debtors, Reorganized Debtors, and their Estates, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, contingent or noncontingent, in Law, equity, contract, tort or otherwise, that the Debtors, their Estates, or the Reorganized Debtors, including any successors to the Debtors or any Estate representatives appointed or selected, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, their Estates, or other Entity, or that any holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof), the purchase, sale, or recission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, any related adversary proceedings, intercompany transactions between or among a Debtor and another Debtor or an Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into or filing of the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the**

Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan, any other Definitive Document, or any Restructuring Transactions before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Disclosure Statement or the Plan, the solicitation of votes with respect to the Plan, the Consent Solicitation, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any Causes of Action identified in the Schedule of Retained Causes of Action, *provided* that, for the avoidance of doubt no Causes of Action against any Consenting Stakeholder shall be included on such Schedule of Retained Causes of Action, (ii) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or Agreement (including any Definitive Document, the Exit Facility Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any Claim or obligation arising under the Plan, or (iii) any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

D.    *Releases by Third Parties.*

**Except as otherwise provided in the Plan or the Confirmation Order to the contrary, on and after the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, pursuant to section 1123(b) of the Bankruptcy Code, in each case except for Claims arising under, or preserved by, the Plan, to the fullest extent permitted under applicable law, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each and every Releasing Party, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claims or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action arising at any time prior to the Effective Date, including any Avoidance Actions and any derivative claims assert, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, existing on or before the Effective Date, contingent or noncontingent, in law, equity, contract, tort, or otherwise, including any derivative Claims asserted or assertable on behalf of any of the Debtors, that such Entities would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, or their Estates or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, and their Estates (including the capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the purchase, sale, or recission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor or Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or Filing of the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Facility, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Facility, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan, or the Plan Supplement, before or during the Chapter 11 Cases, or any Restructuring Transactions, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable**

Law, the filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the Consent Solicitation, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan and the Restructuring Transactions, including the issuance or distribution of Securities pursuant to the Restructuring Transactions and/or Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the Exit Facility Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any Claim or obligation arising under the Plan, or (b) any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

E.     *Exculpation.*

Notwithstanding anything contained in the Plan to the contrary, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or Third-Party Release, effective as of the Effective Date, no Exculpated Party shall have or incur liability or obligation for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any Claim arising from the Petition Date through the Effective Date related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the RSA and related prepetition transactions, the Bridge Facilities, the Bridge Facility Agreement, the Definitive Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan, the Plan Supplement, the Restructuring Transactions, the DIP Facility, the DIP Documents, or any wind down transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other

12

agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) in connection with the RSA and related prepetition transactions, the Bridge Facilities, the Bridge Facility Agreement, the Definitive Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Disclosure Statement, the Plan, the Plan Supplement, the Restructuring Transactions, the DIP Facility, the DIP Documents, any preference, fraudulent transfer, or other avoidance Claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Restructuring Transactions, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

F.  *Injunction*.

Except as otherwise expressly provided in the Plan or in the Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that have been extinguished, released, discharged, or are subject to exculpation, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, and the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has timely filed a motion with the Bankruptcy Court expressly requesting the right to perform such setoff, subrogation or recoupment on or before the Effective Date, and notwithstanding an indication of a Claim, Interest, or Cause of Action or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, the Reorganized Debtors, the Exculpated

**Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as applicable, subject to Article VIII.C, Article VIII.D, and Article VIII.E hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim not released or subject to exculpation under the Plan, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party.**

Dated: [●], 2025
Houston, Texas

/s/ DRAFT

**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)

Eric M. English (TX Bar No. 24062714)
M. Shane Johnson (TX Bar No. 24083263)
Megan Young-John (TX Bar No. 24088700)
James A. Keefe (TX Bar No. 24122842)
Joanna D. Caytas (TX Bar No. 24127230)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone:       (713) 226-6000
Facsimile:       (713) 226-6248
Email:           jhiggins@porterhedges.com
                 eenglish@porterhedges.com
                 sjohnson@porterhedges.com
                 myoung-john@porterhedges.com
                 jkeefe@porterhedges.com
                 jcaytas@porterhedges.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:       (212) 446-4800
Facsimile:       (212) 446-4900
Email:           joshua.sussberg@kirkland.com

-and-

Chad J. Husnick, P.C. (*pro hac vice* pending)
John R. Luze, P.C. (*pro hac vice* pending)
Jeffrey T. Michalik (*pro hac vice* pending)
David R. Gremling (*pro hac vice* pending)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:       (312) 862-2000
Facsimile:       (312) 862-2200
Email:           chad.husnick@kirkland.com
                 john.luze@kirkland.com
                 jeff.michalik@kirkland.com
                 dave.gremling@kirkland.com

*Proposed Co-Counsel for the Debtors
and Debtors in Possession*

*Proposed Co-Counsel for the Debtors
and Debtors in Possession*

## Exhibit 2

**Publication Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| KLEOPATRA FINCO S.À R.L., *et al.*,[1] | ) | Case No. 25-90642 (CML) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**NOTICE OF COMMENCEMENT OF PREPACKAGED CHAPTER 11**
**BANKRUPTCY CASES AND HEARING ON THE DISCLOSURE STATEMENT**
**AND CONFIRMATION OF THE JOINT PREPACKAGED CHAPTER 11 PLAN**

      **PLEASE TAKE NOTICE THAT** on November 4, 2025 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed with the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") the *Joint Prepackaged Plan of Reorganization of Kleopatra Finco S.à r.l. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 5] (as amended, supplemented, or otherwise modified from time to time, the "Plan") and proposed *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of Kleopatra Finco S.à r.l. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 6] (as amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement") pursuant to sections 1125 and 1126(b) of title 11 of the United States Code (the "Bankruptcy Code"). Copies of the Plan, the Disclosure Statement, and any other publicly-filed documents in the Chapter 11 Cases are available free of charge, as applicable, by: (a) visiting the Debtors' restructuring website at https://cases.stretto.com/Klockner; (b) emailing KPInquiries@Stretto.com (with "Kleopatra – Solicitation Inquiries); or (c) calling the Claims and Noticing Agent at (833) 212-0915 (USA or Canada) (toll-free) or +1 (949) 273-2457 (International). You may also obtain copies of any pleadings filed in the Chapter 11 Cases via PACER at https://www.pacer.gov (for a fee).[2]

      **PLEASE TAKE FURTHER NOTICE THAT** a hearing (the "Combined Hearing") will be held before the Honorable Christopher M. Lopez, United States Bankruptcy Judge, on December 16, 2025, at [●] [a.m./p.m.] (prevailing Central Time) in Courtroom [●], 4th floor, 515 Rusk Street, Houston, Texas 7700, to consider the adequacy of the Disclosure Statement, any objections to the Disclosure Statement, confirmation of the Plan, any objections thereto, and any

---

[1]   A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://cases.stretto.com/Klockner. The location of Kleopatra Finco S.à r.l.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 46A, Avenue J.F. Kennedy, L-1855 Luxembourg, R.C.S. Luxembourg.

[2]   Capitalized terms used but not defined herein have the meanings given to them in the Plan or the Disclosure Statement, as applicable. The statements contained herein are summaries of the provisions contained in the Plan and the Disclosure Statement and do not purport to be precise or complete statements of all the terms and provisions of the Plan or the documents referred therein. To the extent there is a discrepancy between the terms herein and the Plan or the Disclosure Statement, as applicable, shall govern and control. For a more detailed description of the Plan, please refer to the Disclosure Statement.

other matter that may properly come before the Bankruptcy Court. Please be advised that the Combined Hearing may be continued from time to time by the Bankruptcy Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on other parties entitled to notice.

**PLEASE TAKE FURTHER NOTICE THAT** objections (each, an "<u>Objection</u>"), if any, must:  (a) be in writing; (b) comply with the Bankruptcy Rules and the Bankruptcy Local Rules; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest beneficially owned by such entity; (d) state with particularity the legal and factual basis for such Objections, and, if practicable, a proposed modification to the Plan that would resolve such Objections; and (e) be filed with the Court with proof of service thereof and served upon the Notice Parties so as to be actually received by the Objection Deadline.

Objections must be filed with the Bankruptcy Court and served so as to be **actually received** no later than **December 11, 2025 at 4:00 p.m., prevailing Central Time**, by those parties who have filed a notice of appearance in the Debtors' Chapter 11 Cases as well as the following parties:

| | |
|---|---|
| **Debtors** | **Kleopatra Finco S.à r.l.** |
| | 3585 Klockner Road |
| | Gordonsville, VA 22942 |
| | Attention:  Marc Rotella, Chief Financial Officer, |
| |     Shené Mitchell, Deputy General Counsel |
| | E-mail address:  marc.rotella@kpfilms.com, |
| |     shene.mitchell@kpfilms.com |
| | |
| **Proposed Counsel to the Debtors** | **Kirkland & Ellis LLP** |
| | 333 West Wolf Point Plaza |
| | Chicago, Illinois 60654 |
| | Attention:  Chad J. Husnick, P.C., |
| |     John R. Luze, P.C., |
| |     Jeffrey T. Michalik, |
| |     David R. Gremling |
| | E-mail address:  chad.husnick@kirkland.com |
| |     john.luze@kirkland.com |
| |     jeff.michalik@kirkland.com |
| |     dave.gremling@kirkland.com |
| | |
| | - and – |
| | |
| | **Kirkland & Ellis LLP** |
| | 601 Lexington Avenue |
| | New York, New York 10022 |
| | Attention:  Joshua A. Sussberg, P.C. |
| | E-mail address:  joshua.sussberg@kirkland.com |
| | |
| | - and – |

**Porter Hedges LLP**
1000 Main St., 36th Floor
Houston, Texas 77002
Attention:     John F. Higgins, Eric M. English, M. S Johnson, Megan Young-John, James A. Keefe Joanna D. Caytas
E-mail address:  jhiggins@porterhedges.com
eenglish@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com
jkeefe@porterhedges.com
jcaytas@porterhedges.com

**United States Trustee**     **Office of the United States Trustee for the Southern District of Texas**
515 Rusk Street, Suite 3516
Houston, Texas 77002
Attention:     Andrew Jimenez

**IF AN OBJECTION IS NOT TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE IT SHALL NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN**

**ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, DISCHARGE, AND INJUNCTION PROVISIONS, AND ARTICLE VIII.D CONTAINS A THIRD-PARTY RELEASE. ACCORDINGLY, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE IT MIGHT AFFECT YOUR RIGHTS.**

**IF YOU DO NOT (X) ELECT TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLES VIII.C OR VIII.D OF THE PLAN; OR (Y) TIMELY FILE AN OBJECTION TO SUCH RELEASES (WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES) THAT IS UNRESOLVED BEFORE CONFIRMATION YOU WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL YOUR CLAIMS, INTERESTS, AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES.**

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, RELEASE, EXCULPATION, DISCHARGE, AND INJUNCTION PROVISIONS THEREIN, AS YOUR RIGHTS MAY BE AFFECTED.**

**Exhibit 3A**

**Form of Ballot**
**for Class 3A Claims**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| KLEOPATRA FINCO S.À R.L., *et al.*,[1] | ) Case No. 25-90642 (CML) |
|  | ) |
| Debtors. | ) (Joint Administration Requested) |
|  | ) |

**BALLOT FOR VOTING ON THE JOINT**
**PREPACKAGED PLAN OF REORGANIZATION OF KLEOPATRA FINCO S.à R.L.**
**AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**CLASS 3 – FIRST LIEN CLAIMS (FIRST LIEN SECURED NOTES)**
**(REGULATION S NOTES: ISIN NUMBER XS2298381307 / COMMON CODE 229838130;**
**RULE 144A NOTES: ISIN NUMBER XS2298382297 / COMMON CODE 229838229)**

---

**PLEASE READ - YOUR RESPONSE IS REQUIRED BY 4:00 P.M., PREVAILING CENTRAL TIME, ON DECEMBER 11, 2025.**

- PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT RELATING TO THE *JOINT PREPACKAGED PLAN OF REORGANIZATION OF KLEOPATRA FINCO S.À R.L. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE* (AS MAY BE MODIFIED, AMENDED, OR SUPPLEMENTED FROM TIME TO TIME, THE "PLAN")[2] FOR KLEOPATRA FINCO S.À R.L. AND CERTAIN OF ITS AFFILIATES (COLLECTIVELY, THE "COMPANY") INCLUDED WITH THIS BALLOT BEFORE COMPLETING THIS BALLOT. THIS BALLOT PERMITS YOU TO VOTE ON THE PLAN (INCLUDING THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN), WHICH IS SUBJECT TO BANKRUPTCY COURT APPROVAL AND CONTEMPLATES COMPREHENSIVE RESTRUCTURING TRANSACTIONS (THE "RESTRUCTURING TRANSACTIONS") UPON COMPANY'S EMERGENCE FROM CHAPTER 11. THE COMPANY HAS NOT COMMENCED CHAPTER 11 CASES AS OF THE TIME THIS BALLOT WAS SENT.

- IN ORDER TO COMPLETE THIS BALLOT, YOU MUST FIRST SUBMIT OR CAUSE A DIRECT PARTICIPANT TO SUBMIT AN ELECTRONIC CONSENT INSTRUCTION[3] FOR YOUR FIRST LIEN CLAIMS IN THE FORM SPECIFIED IN THE CLEARING SYSTEM NOTICE FOR SUBMISSION BY A DIRECT PARTICIPANT IN THE RELEVANT CLEARING SYSTEM[4] BY THE RELEVANT DEADLINE. ONCE THIS IS COMPLETE, YOU WILL RECEIVE A FIRST LIEN CUSTODY INSTRUCTION REFERENCE NUMBER / BLOCKING REFERENCE NUMBER, WHICH YOU MUST INCLUDE IN THIS BALLOT.

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Company's Claims and Noticing Agent at https://cases.stretto.com/Klockner. The location of Kleopatra Finco S.à r.l.'s principal place of business and the Company's service address in these Chapter 11 Cases is 46A, Avenue J.F. Kennedy, L-1855 Luxembourg, R.C.S. Luxembourg.

[2] Capitalized terms used but not defined herein have the meanings given to them in the Plan or the Disclosure Statement, as applicable.

[3] "Electronic Consent Instruction" means the electronic blocking instruction in the form specified in the notice sent to Direct Participants by the relevant Clearing System on or about the date of the Disclosure Statement informing Direct Participants of the procedures to be followed in order for Beneficial Holders to participate in the solicitation of votes with respect to the Plan, for submission by Direct Participants to the Information and Tabulation Agent via the relevant Clearing System in accordance with the requirements of such Clearing System by the relevant deadline in order for Beneficial Holders to participate in the solicitation of votes with respect to the Plan.

[4] "Clearing Systems" means, collectively or singularly, Euroclear Bank S.A./N.V. and Clearstream Banking, S.A.

FAILURE TO PROVIDE YOUR FIRST LIEN CUSTODY INSTRUCTION REFERENCE NUMBER / BLOCKING REFERENCE NUMBER IN THIS BALLOT MAY RESULT IN YOUR VOTE NOT BEING COUNTED.

- IF A BENEFICIAL HOLDER[5] HOLDS CLASS 3 FIRST LIEN SECURED NOTES CLAIMS THROUGH ONE OR MORE DIRECT PARTICIPANTS,[6] SUCH BENEFICIAL HOLDER MUST IDENTIFY ALL CLASS 3 FIRST LIEN SECURED NOTES CLAIMS HELD IN ACCORDANCE WITH ITEM 3 OF THIS BALLOT, AND MUST INDICATE THE SAME VOTE TO ACCEPT OR REJECT THE PLAN ON ALL BALLOTS SUBMITTED.

- THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS **ACTUALLY RECEIVED** BY GLAS SPECIALIST SERVICES LIMITED (THE "INFORMATION AND TABULATION AGENT") AT VELVET@GLAS.AGENCY PRIOR TO **4:00 P.M. PREVAILING CENTRAL TIME ON DECEMBER 11, 2025** (THE "VOTING DEADLINE").

- IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT (I) THE INFORMATION AND TABULATION AGENT AT VELVET@GLAS.AGENCY AND (II) STRETTO, INC. (THE "CLAIMS AND NOTICING AGENT") AT KPINQUIRIES@STRETTO.COM.

- IF YOU HAVE ANY QUESTIONS REGARDING THE CHAPTER 11 CASES PLEASE CONTACT THE CLAIMS AND NOTICING AGENT AT KPINQUIRIES@STRETTO.COM WITH "KLEOPATRA BALLOT – SOLICITATION INQUIRIES" IN THE SUBJECT LINE, OR CALL (833) 212-0915 (USA OR CANADA) (TOLL-FREE) OR +1 (949) 273-2457 (INTERNATIONAL).

- IF THE BANKRUPTCY COURT CONFIRMS THE PLAN, IT WILL BIND YOU REGARDLESS OF WHETHER YOU HAVE VOTED.

- NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS DISTRIBUTED WITH THIS BALLOT.

- CONFIRMATION OF THE PLAN IS EXPRESSLY CONDITIONED UPON BANKRUPTCY COURT APPROVAL OF THE RELEASES BY RELEASING PARTIES (AS DESCRIBED BELOW AND LOCATED IN ARTICLE VIII OF THE PLAN), WHICH, IF APPROVED BY THE BANKRUPTCY COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES.  THE RELEASES BY RELEASING PARTIES, IF APPROVED, WILL BIND AFFECTED HOLDERS OF CLAIMS AND INTERESTS IN THE MANNER DESCRIBED IN ITEM 2 OF THIS BALLOT.

- IF YOU VOTE TO REJECT THE PLAN, OR IF YOU DO NOT VOTE ON THE PLAN, YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD PARTY RELEASE UNLESS YOU CHECK THE OPT OUT BOX ON ITEM 2 BELOW.

The Company is soliciting votes with respect to the Plan as set forth in the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of Kleopatra Finco S.à r.l. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* and all exhibits related thereto (collectively, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement").  The Company may file for protection under title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") and seek to consummate the Restructuring Transactions through the Chapter 11 Cases and the Plan.  Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein.  A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims or at least two-thirds in amount of Interests in that Voting Class votes to accept the Plan.  The Bankruptcy Court may confirm the Plan, which contemplates effectuating the Restructuring Transactions, if the Plan otherwise satisfies the

---

[5]   "Beneficial Holder" means a beneficial owner of a Class 3 Claim or Class 4 Claim whose Claims have not been satisfied prior to the Voting Record Date pursuant to Bankruptcy Court order or otherwise, as reflected in the records maintained by the Direct Participants holding through the Clearing Systems or other relevant security depository and/or the applicable indenture trustee, as of the Voting Record Date.

[6]   "Direct Participant" means a broker, dealer, commercial bank, trust company, custodian, or other intermediary who holds Class 3 First Lien Secured Notes Claims through the Clearing Systems, or such firm's agent, on behalf of a Beneficial Holder.

requirements of section 1129 of the Bankruptcy Code, and the Plan then would be binding on all Holders of Allowed Claims and Interests in the Voting Class, among others.  Subject to the terms and conditions of the Plan, you will receive the treatment identified in **Exhibit A**.  **For additional discussion of your treatment and rights under the Plan, please read the Disclosure Statement and the Plan.**

You are receiving this ballot (the "Ballot") because a Direct Participant has identified you as a Beneficial Holder of a First Lien Secured Claim in Class 3 (the "Voting Class") as of the individualized date in which each Holder of First Lien Secured Notes and Second Lien Secured Notes submits their respective votes on the Plan and thereby blocks the amount of their Claims entitled to vote on the Plan (the "Noteholders Voting Record Date").  Accordingly, you have the right to vote to accept or reject the Plan.

The Disclosure Statement describes the rights and treatment for each Class.  The Disclosure Statement, the Plan, and certain other materials (collectively, the "Solicitation Package") have been distributed under separate cover from this Ballot and are available at https://glas-agency.appiancloud.com/suite/sites/kp-transaction-1L-2L.  This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect thereto.  Once completed and returned in accordance with the attached instructions, the votes on the Plan will be counted as set forth herein.

**YOUR VOTE ON THIS BALLOT WILL BE APPLIED TO EACH DEBTOR AGAINST WHICH YOU HAVE SUCH CLAIM(S).**

*You should carefully and thoroughly review the Disclosure Statement and Plan before you vote to accept or reject the Plan.  You may wish to seek legal advice concerning the Plan and classification and treatment of your Claim under the Plan.  Your Claim has been classified in Class 3 under the Plan.*

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON DECEMBER 11, 2025.**

**Item 1.  Voting - Complete This Section.**

| **ITEM 1**:<br>**PRINCIPAL AMOUNT OF CLAIMS** | The undersigned hereby certifies that, as of the Noteholders Voting Record Date, the undersigned was the Beneficial Holder (or authorized signatory for a Beneficial Holder), of Claim(s) in the Voting Class as set forth below (your "Claims").  If you do not know the amount of your Class 3 First Lien Secured Notes Claims as of the Noteholders Voting Record Date, please contact the relevant Direct Participant for this information.  You may vote to accept or reject the Plan.  You must check the applicable box in the right-hand column below to "accept" or "reject" the Plan for the Voting Class in order to have your vote in the Voting Class counted.<br><br>Please note that you are voting all of your Claims in the Voting Class either to accept or reject the Plan.  You may not split your vote in the Voting Class.  If you do not indicate that you either accept or reject the Plan in the Voting Class by checking the applicable box below, your vote in the Voting Class will not be counted.  If you indicate that you both accept and reject the Plan for the Voting Class by checking both boxes below, your vote in the Voting Class will not be counted.<br><br>The Beneficial Holder of the Claim(s) in the Voting Class set forth below votes to (*please check one and only one box):* |
|---|---|

| Voting Class | Description and ISIN(s) | Amount | Clearing System | Vote to Accept or Reject Plan | Clearing System Account Number | Direct Participant Name / Custodian | Custody Instruction Reference Number / Blocking Reference Number |
|---|---|---|---|---|---|---|---|
| Class 3 | First Lien Claims<br><br>XS_____<br><br>XS_____ | €_____ | ☐ Euroclear<br><br>☐ Clearstream | ☐ ACCEPT (VOTE FOR) THE PLAN<br><br>☐ REJECT (VOTE AGAINST) THE PLAN | _____<br>_ | _____ | _____<br>__ |

**Item 2.  Release Information.**[7]

<u>Article VIII.C</u> of the Plan provides for a release by the Debtors (the "<u>Debtor Release</u>"):

Except as otherwise provided in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, their Estates, the Reorganized Debtors, and any Person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative Claims, asserted or assertable on behalf of any of the Debtors, Reorganized Debtors, and their Estates, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, contingent or noncontingent, in Law, equity, contract, tort or otherwise, that the Debtors, their Estates, or the Reorganized Debtors, including any successors to the Debtors or any Estate representatives appointed or selected, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, their Estates, or other Entity, or that any holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof), the purchase, sale, or recission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, any related adversary proceedings, intercompany transactions between or among a Debtor and another Debtor or an Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into or filing of the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan, any other Definitive Document, or any Restructuring Transactions before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Disclosure Statement or the Plan, the solicitation of votes with respect to the Plan, the Consent Solicitation, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing.

---

[7]    The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  You should read the Plan before completing this Ballot.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any Causes of Action identified in the Schedule of Retained Causes of Action, *provided* that, for the avoidance of doubt, no Causes of Action against any Consenting Stakeholder shall be included on such Schedule of Retained Causes of Action, (ii) any post Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or Agreement (including any Definitive Document, the Exit Facility Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any Claim or obligation arising under the Plan, or (iii) any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

Article VIII.D of the Plan provides for a third-party release by the Releasing Parties (the "**Third-Party Release**"):

Except as otherwise provided in the Plan or the Confirmation Order to the contrary, on and after the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, pursuant to section 1123(b) of the Bankruptcy Code, in each case except for Claims arising under, or preserved by, the Plan, to the fullest extent permitted under applicable law, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each and every Releasing Party, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claims or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action arising at any time prior to the Effective Date, including any Avoidance Actions and any derivative claims assert, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, existing on or before the Effective Date, contingent or noncontingent, in law, equity, contract, tort, or otherwise, including any derivative Claims asserted or assertable on behalf of any of the Debtors, that such Entities would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, or their Estates or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, and their Estates (including the capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the purchase, sale, or recission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor or Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or Filing of the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Facility, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Facility, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan, or the Plan Supplement, before

or during the Chapter 11 Cases, or any Restructuring Transactions, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable Law, the filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the Consent Solicitation, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan and the Restructuring Transactions, including the issuance or distribution of Securities pursuant to the Restructuring Transactions and/or Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the Exit Facility Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any Claim or obligation arising under the Plan, or (b) any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

## IMPORTANT INFORMATION REGARDING THE THIRD-PARTY RELEASE:

Under the Plan, "**Related Party**" means, each of, and in each case solely in its capacity as such, current and former directors, managers, officers, committee members, members of any Governing Body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors.

Under the Plan, "**Released Parties**" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Lenders; (d) the Agents (including the DIP Agent); (e) Holders of First Lien Claims; (f) the members of the Ad Hoc Group; (g) the Consenting Senior Creditors; (h) Holders of Second Lien Claims; (i) the CastleKnight Funds; (j) the SVP Funds; (k) the Factors; (l) Holders of Claims or Interests who vote to accept the Plan or are presumed to accept the Plan and do not affirmatively opt out of the releases set forth therein; (m) Holders of Claims or Interests who abstain from voting on the Plan and who do not affirmatively opt out of the releases set forth therein; (n) Holders of Claims or Interests who vote to reject the Plan or are deemed to reject the Plan but do not affirmatively opt out of the releases set forth therein; (o) each current and former Affiliate of each Entity in clause (a) through the following clause (p); and (p) each Related Party of each Entity in clause (a) through clause (o), provided that, in each case, an Entity shall not be a Released Party if it:  (i) affirmatively opts out of the releases in the Plan; or (ii) timely objects to the releases in the Plan and such objection is not resolved before the Confirmation Hearing.

Under the Plan, "**Releasing Parties**" means, collectively, and in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Lenders; (d) the Agents (including the DIP Agent); (e) Holders of First Lien Claims; (f) the members of the Ad Hoc Group; (g) the Consenting Senior Creditors; (h) Holders of Second Lien Claims; (i) the CastleKnight Funds; (j) the SVP Funds; (k) the Factors; (l) Holders of Claims or Interests who vote to accept the Plan or are presumed to accept the Plan and do not affirmatively opt out of the releases set forth therein; (m) Holders of Claims or Interests who abstain from voting on the Plan and who do not affirmatively opt out of the

releases set forth therein; (n) Holders of Claims or Interests who vote to reject the Plan or are deemed to reject the Plan but do not affirmatively opt out of the releases set forth therein; (o) each current and former Affiliate of each Entity in clause (a) through the following clause (p); and (p) each Related Party of each Entity in clause (a) through clause (o), provided that, in each case, an Entity shall not be a Releasing Party if it: (i) affirmatively opts out of the releases in the Plan; or (ii) timely objects to the releases in the Plan and such objection is not resolved before the Confirmation Hearing.

> **EVEN IF YOU VOTE TO REJECT THE PLAN, VOTE TO ACCEPT THE PLAN, OR IF YOU DO NOT VOTE ON THE PLAN, YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE UNLESS YOU OPT OUT OF THE THIRD-PARTY RELEASE BY CHECKING THE OPT-OUT BOX BELOW. BY OPTING OUT OF THE THIRD-PARTY RELEASE SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN THE PLAN.**

☐    The undersigned elects to **OPT OUT** of the Third-Party Release.

7

**Item 3.  Certification of Claims in the Voting Class Held in Additional Accounts.**

By completing and returning this Ballot, the Beneficial Holder of the Claims identified in Item 1 certifies that this Ballot is the only Ballot submitted for the Claims in the Voting Class identified in Item 1 owned by such Beneficial Holder as indicated in Item 1, except for the Claims identified in the following table.  **To be clear, if any Beneficial Holder holds Claims in a Voting Class through one or more Direct Participants, such Beneficial Holder must identify all Claims in the Voting Class held through its own name and/or each Direct Participant in the following table, and must indicate the same vote to accept or reject the Plan on all Ballots submitted.**

ONLY COMPLETE ITEM 3 IF YOU HAVE SUBMITTED OTHER BALLOTS ON ACCOUNT OF CLASS 3 CLAIMS.

| Class 3 – First Lien Secured Notes Claims | | | |
|---|---|---|---|
| **Account Number of Other Claims Voted in the Voting Class** | **Name of Owner[8]** | **Principal Amount of Other Claims Voted in the Voting Class** | **ISIN of Other Claims Voted in the Voting Class** |
| | | | |
| | | | |
| | | | |
| | | | |

---

[8]   Insert your name if the Claims in the respective Voting Class are held by you in your own name or, if held in a street name through a Direct Participant, insert the name of your broker or bank.

**Item 4.  Certifications.**

Upon execution of this Ballot, the undersigned certifies that:

a.      as of the Noteholders Voting Record Date, the undersigned was the Beneficial Holder (or authorized signatory for a Beneficial Holder) of the Claims in the Voting Class set forth in Item 1;

b.      the Beneficial Holder has reviewed a copy of the Disclosure Statement, the Plan, and the remainder of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

c.      the Beneficial Holder has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Solicitation Package or other publicly available materials;

d.      the Beneficial Holder has submitted an Electronic Consent Instruction to the relevant Clearing System for all of such Beneficial Holder's Claims through a Direct Participant, such that no transfers of such Beneficial Holder's First Lien Secured Notes may be effected until the earliest to occur of (i) the Voting Deadline and (ii) the date on which such Beneficial Holder submits a withdrawal notice, and the Beneficial Holder has received a First Lien Custody Instruction Reference Number / Blocking Reference Number that has been included in this Ballot;

e.      the Beneficial Holder has cast the same vote with respect to all of the Beneficial Holder's Claims in the Voting Class;

f.      the Beneficial Holder understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot voting the Claim and received by the Information and Tabulation Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Information and Tabulation Agent;

g.      the Beneficial Holder understands and acknowledges that by submitting Electronic Consent Instructions on behalf of an Eligible Holder, each Direct Participant will be deemed to have consented to the relevant Clearing System providing any details set forth in such Electronic Consent Instruction to the Information and Tabulation Agent (and to the Information and Tabulation Agent providing such details to the Debtors and their legal and other advisers).  Eligible Holders that need assistance with respect to the procedures for participating in the Consent Solicitation should contact the Information and Tabulation Agent.  Furthermore, pursuant to the terms of the Disclosure Statement, the Information and Tabulation Agent will be deemed to have been authorized by the Beneficial Holder to share with the Claims and Noticing Agent any and all information about such Beneficial Holder's Ballot disclosed to the Information and Tabulation Agent via such Beneficial Holder's Ballot or otherwise; and

h.      the Beneficial Holder understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the Beneficial Holder hereunder, shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, and legal representatives of the Beneficial Holder and shall not be affected by, and shall survive, the death or incapacity of the Beneficial Holder.

**Accepted and Acknowledged**

Name of Beneficial Holder:⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
(*print or type*)

Signature:⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯


Name of Signatory:⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
(*if other than Beneficial Holder*)

Date:⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

**Item 5. Beneficial Holder Information and Signature.**

Name of Beneficial Holder: _____
(*print or type*)

Signature: _____

Name of Signatory: _____
(*if other than Beneficial Holder*)

First Lien Custody Instruction Reference Number /
Blocking Reference Number: _____

Title: _____

Address: _____

_____

_____

Date Completed: _____

Email Address: _____

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON DECEMBER 11, 2025.**

**In order to complete this Ballot, you must provide your First Lien Custody Instruction Reference Number / Blocking Reference Number, which may only be obtained following delivery of an Electronic Consent Instruction to the relevant Clearing System.** You may obtain your First Lien Custody Instruction Reference Number / Blocking Reference Number in the manner described in the section entitled *Voting Instructions* below and in the Disclosure Statement.

**If you received a return envelope addressed to the relevant Direct Participant,** please complete, sign, and date the Ballot and return it in the envelope provided or otherwise in accordance with the instructions provided by the relevant Direct Participant. Please allow sufficient time for your Ballot to be processed by the relevant Direct Participant. The Ballot must be **actually received** by the Information and Tabulation Agent at velvet@glas.agency on or before the Voting Deadline.

IF YOU HAVE ANY QUESTIONS ABOUT THIS BALLOT OR THE PLAN SOLICITATION OR YOU NEED ADDITIONAL VOTING MATERIALS, PLEASE CONTACT THE INFORMATION AND TABULATION AGENT AT VELVET@GLAS.AGENCY. IF YOU HAVE QUESTIONS ABOUT THE VOTING PROCEDURES, PLEASE CONTACT THE RELEVANT DIRECT PARTICIPANT. ANY BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER WILL NOT BE COUNTED.

**Important Information Regarding Releases under the Plan**:

The Plan includes the following release, exculpation, and injunction provisions:[9]

Article VIII.C: Releases by the Debtors

       **Except as otherwise provided in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, their Estates, the Reorganized Debtors, and any Person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative Claims, asserted or assertable on behalf of any of the Debtors, Reorganized Debtors, and their Estates, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, contingent or noncontingent, in Law, equity, contract, tort or otherwise, that the Debtors, their Estates, or the Reorganized Debtors, including any successors to the Debtors or any Estate representatives appointed or selected, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, their Estates, or other Entity, or that any holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof), the purchase, sale, or recission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, any related adversary proceedings, intercompany transactions between or among a Debtor and another Debtor or an Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into or filing of the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan, any other Definitive Document, or any Restructuring Transactions before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Disclosure Statement or the Plan, the solicitation of votes with respect to the Plan, the Consent Solicitation, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon**

---

[9]      The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights. If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs. You should read the Plan before completing this Ballot.

any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any Causes of Action identified in the Schedule of Retained Causes of Action, *provided* that, for the avoidance of doubt, no Causes of Action against any Consenting Stakeholder shall be included on such Schedule of Retained Causes of Action, (ii) any post Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or Agreement (including any Definitive Document, the Exit Facility Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any Claim or obligation arising under the Plan, or (iii) any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

Article VIII.D: Releases by Third Parties

Except as otherwise provided in the Plan or the Confirmation Order to the contrary, on and after the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, pursuant to section 1123(b) of the Bankruptcy Code, in each case except for Claims arising under, or preserved by, the Plan, to the fullest extent permitted under applicable law, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each and every Releasing Party, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claims or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action arising at any time prior to the Effective Date, including any Avoidance Actions and any derivative claims assert, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, existing on or before the Effective Date, contingent or noncontingent, in law, equity, contract, tort, or otherwise, including any derivative Claims asserted or assertable on behalf of any of the Debtors, that such Entities would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, or their Estates or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, and their Estates (including the capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the purchase, sale, or recission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor or Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or Filing of the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Facility, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created

13

or entered into in connection with the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Facility, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan, or the Plan Supplement, before or during the Chapter 11 Cases, or any Restructuring Transactions, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable Law, the filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the Consent Solicitation, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan and the Restructuring Transactions, including the issuance or distribution of Securities pursuant to the Restructuring Transactions and/or Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the Exit Facility Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any Claim or obligation arising under the Plan, or (b) any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

Article VIII.E:  Exculpation

Notwithstanding anything contained in the Plan to the contrary, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or Third-Party Release, effective as of the Effective Date, no Exculpated Party shall have or incur liability or obligation for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action arising from the Petition Date through the Effective Date related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the RSA and related prepetition transactions, the Bridge Facilities, the Bridge Facility Agreement, the Definitive Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan, the Plan Supplement, the Restructuring Transactions, the DIP Facility, the DIP Documents, or any wind down transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) in connection with the RSA and related prepetition transactions, the Bridge Facilities, the Bridge Facility Agreement, the Definitive Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Disclosure Statement, the Plan, the Plan Supplement, the Restructuring Transactions, the DIP Facility, the DIP Documents, any preference, fraudulent transfer, or other avoidance Claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Restructuring Transactions, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such

14

Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

Article VIII.G:  Injunction

Except as otherwise expressly provided in the Plan or in the Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that have been extinguished, released, discharged, or are subject to exculpation, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, and the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has timely filed a motion with the Bankruptcy Court expressly requesting the right to perform such setoff, subrogation or recoupment on or before the Effective Date, and notwithstanding an indication of a Claim, Interest, or Cause of Action or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as applicable, subject to Article VIII.C, Article VIII.D, and Article VIII.E hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim not released or subject to exculpation under the Plan, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party.

The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

## VOTING INSTRUCTIONS

1. As described in the Disclosure Statement, the Company is soliciting the votes of Beneficial Holders of Class 3 First Lien Secured Notes Claims with respect to the Plan referred to in the Disclosure Statement. The Plan and the Disclosure Statement are included in the Solicitation Package you received with the Ballot and available at https://glas-agency.appiancloud.com/suite/sites/kp-transaction-1L-2L. Capitalized terms used but not defined herein shall have the meanings assigned to them in the Plan. **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.** You may wish to seek legal advice concerning the Plan and the treatment of your Claim under the Plan.

2. **In order to complete this Ballot, a Beneficial Holder must first deliver an Electronic Consent Instruction for all of such Beneficial Holder's Claims to the Clearing Systems. <u>Delivery of an Electronic Consent Instruction is required to obtain a First Lien Custody Instruction Reference Number / Blocking Reference Number, which is necessary to complete this Ballot.</u> Any Ballot that is properly completed, executed, and timely returned to the Company that fails to include a valid First Lien Custody Instruction Reference Number / Blocking Reference Number pertaining to such Beneficial Holder's Claims may not be counted.** Only Direct Participants may submit Electronic Consent Instructions to the Clearing Systems. Each Electronic Consent Instruction must include, in addition to any information required by the relevant Clearing System:

   (i)     the principal amount of the First Lien Secured Notes to which such Electronic Consent Instruction relates (only Electronic Consent Instructions with respect to First Lien Secured Notes in minimum denominations of €100,000 and integral multiples of €1,000 in excess thereof will be accepted);

   (ii)    the name of the Direct Participant and the securities account number for the relevant Clearing System in which the First Lien Secured Notes are held; and

   (iii)   the name, telephone number and email address of the Beneficial Holder of the First Lien Secured Notes which such Electronic Consent Instruction relates.

3. If the Beneficial Holder is not a Direct Participant, the Beneficial Holder (or a financial institution or other intermediary on its behalf) must procure that the Direct Participant through which it holds the First Lien Secured Note submits an Electronic Consent Instruction. The receipt of an Electronic Consent Instruction by the relevant Clearing System will be acknowledged by such Clearing System in accordance with the procedures laid out in the Clearing System Notice of that Clearing System, and the Beneficial Holder will receive a First Lien Custody Instruction Reference Number / Blocking Reference Number. Moreover, receipt of an Electronic Consent Instruction will result in the blocking of the First Lien Secured Notes represented by such Electronic Consent Instruction until the earliest to occur of (i) the Voting Deadline, and (ii) the date on which the relevant Beneficial Holder validly submits a withdrawal notice. Each Beneficial Holder that submits an Electronic Consent Instruction must take the appropriate steps through the relevant Clearing System necessary to ensure that no transfers can be effected in relation to such blocked First Lien Secured Notes in accordance with the requirements of the relevant Clearing System and the deadlines required by such Clearing System.

4. To ensure that your vote is counted, you must: (a) complete the Ballot; (b) indicate your decision either to accept or reject the Plan in Item 1 of the Ballot; and (c) **sign and return the Ballot in accordance with the instructions received, so that this Ballot (if "pre-validated" by the relevant Direct Participant) is actually received by the Information and Tabulation Agent at velvet@glas.agency by the Voting Deadline**. If you are returning your Ballot to the Direct Participant that provided you with this Ballot, your completed Ballot must be sent to the relevant Direct Participant, allowing sufficient time for the relevant Direct Participant to receive your Ballot and transmit the Ballot to the Information and Tabulation Agent so that it is <u>actually received</u> by the Voting Deadline. The relevant Direct Participant is authorized to disseminate the Solicitation Packages and voting instructions to, and collect voting information from, Beneficial Holders according to its customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.

5. The Information and Tabulation Agent will not accept Ballots by facsimile or other electronic means (other than by email at velvet@glas.agency for pre-validated ballots only). If you are directed by the relevant Direct Participant to submit the Ballot to the Direct Participant via electronic means, such instructions to the relevant

Direct Participant shall have the same effect as if you had completed and returned a physical Ballot to the relevant Direct Participant, including all certifications.

6.  The time by which a Ballot including your vote is **actually** **received** by the Information and Tabulation Agent at velvet@glas.agency shall be the time used to determine whether a Ballot has been submitted by the Voting Deadline.  **The Voting Deadline is December 11, 2025 at 4:00 p.m., prevailing Central Time**.

7.  If a Ballot is received after the Voting Deadline, it will not be counted unless the Company determines otherwise or as permitted by applicable law or court order.  In all cases, Beneficial Holders should allow sufficient time to ensure timely delivery.  No Ballot should be sent to the Company or the Company's financial or legal advisors.  A Ballot will not be counted unless received by the Information and Tabulation Agent.

8.  If a Beneficial Holder simultaneously casts inconsistent duplicate Ballots, with respect to the same Claim, such Ballots will not be counted.

9.  The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and to make certain certifications with respect thereto.  Accordingly, at this time, creditors should not surrender certificates or instruments representing or evidencing their Claims, and the Company will not accept delivery of any such certificates or instruments surrendered together with a Ballot.

10.  The Ballot does not constitute, and shall not be deemed to be:  (a) a Proof of Claim; or (b) an assertion or admission with respect to any Claim.

11.  Please be sure to sign and date your Ballot.  If you are completing the Ballot on behalf of an Entity, indicate your relationship with that Entity and the capacity in which you are signing.

12.  You must vote your entire Claim in the Voting Class either to accept or reject the Plan and may not split your vote.  Accordingly, a Ballot that partially rejects and partially accepts the Plan as to the Voting Class will not be counted as a vote to accept or reject the Plan as to that Class.

13.  Any Ballot that is properly completed, executed, and timely returned to the Company that fails to indicate acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.

14.  The following Ballots will not be counted in determining the acceptance or rejection of the Plan:  (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder; (b) any Ballot cast by a Person or Entity that does not hold a Claim in a Class that is entitled to vote on the Plan; (c) any unsigned Ballot; (d) any Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan; and/or (e) any Ballot submitted by a party not entitled to cast a vote with respect to the Plan.

15.  If you hold Claims or Interests in more than one Class under the Plan or for different Claims within a Class you may receive more than one Ballot.  Each Ballot votes only your Claims or Interests indicated on that Ballot.  Please complete and return each Ballot you receive.

16.  For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular Class will be aggregated and treated as if such creditor held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided*, that if separate affiliated entities hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such creditor held one Claim in such Class, and the vote of each affiliated entity will be counted separately as a vote to accept or reject the Plan.

---

**If you have any questions regarding the Plan Solicitation, you need additional voting materials, if you did not receive a copy of the Disclosure Statement or Plan, or if you need additional copies of the enclosed materials, please contact the Claims and Noticing Agent at KPInquiries@Stretto.com, with a copy to the Information and Tabulation Agent at Velvet@glas.agency.**

**PLEASE SUBMIT YOUR BALLOT PROMPTLY**

**<u>Exhibit A</u>**

The relevant Direct Participant may have checked a box below to indicate the ISIN to which this Ballot pertains, or otherwise provided that information to you on a label or schedule attached to this Ballot:

| | **CLASS 3 – FIRST LIEN SECURED NOTES ISIN** |
|---|---|
| ☐ | ISIN:  XS2298381307 |
| ☐ | ISIN:  XS2298382297 |

18

**<u>Exhibit 3B</u>**

**Form of Ballot**
**For Class 3B Claims**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KLEOPATRA FINCO S.À R.L., *et al.*,[1] | ) | Case No. 25-90642 (CML) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**BALLOT FOR VOTING ON THE JOINT PREPACKAGED**
**PLAN OF REORGANIZATION OF KLEOPATRA FINCO S.À R.L. AND ITS**
**DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**CLASS 3 – FIRST LIEN CLAIMS (FIRST LIEN SFA CLAIMS)**

---

**PLEASE READ - YOUR RESPONSE IS REQUIRED BY 4:00 P.M., PREVAILING CENTRAL TIME, ON DECEMBER 11, 2025,**

- PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT RELATING TO THE *JOINT PREPACKAGED PLAN OF REORGANIZATION OF KLEOPATRA FINCO S.À R.L. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE* (AS MAY BE MODIFIED, AMENDED, OR SUPPLEMENTED FROM TIME TO TIME, THE "PLAN")[2] FOR KLEOPATRA FINCO S.À R.L. AND CERTAIN OF ITS AFFILIATES (COLLECTIVELY, THE "COMPANY") INCLUDED WITH THIS BALLOT BEFORE COMPLETING THIS BALLOT. THIS BALLOT PERMITS YOU TO VOTE ON THE PLAN (INCLUDING THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN), WHICH IS SUBJECT TO BANKRUPTCY COURT APPROVAL AND CONTEMPLATES COMPREHENSIVE RESTRUCTURING TRANSACTIONS (THE "RESTRUCTURING TRANSACTIONS") UPON THE COMPANY'S EMERGENCE FROM CHAPTER 11. THE COMPANY HAS NOT COMMENCED CHAPTER 11 CASES AS OF THE DATE HEREOF.

- THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS **ACTUALLY RECEIVED** BY STRETTO, INC. (THE "CLAIMS AND NOTICING AGENT") PRIOR TO **4:00 P.M. PREVAILING CENTRAL TIME ON DECEMBER 11, 2025** (THE "VOTING DEADLINE").

- IF YOU VOTE TO REJECT THE PLAN, OR IF YOU DO NOT VOTE ON THE PLAN, YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD PARTY RELEASE UNLESS YOU CHECK THE OPT OUT BOX ON ITEM 5 BELOW.

- IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE CLAIMS AND NOTICING AGENT AT KPINQUIRIES@STRETTO.COM AND REFERENCE "KLEOPATRA – SOLICITATION INQUIRY" IN THE SUBJECT LINE, OR CALL (833) 212-0915 (USA OR CANADA) (TOLL-FREE) OR +1 (949) 273-2457 (INTERNATIONAL).

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://cases.stretto.com/Klockner. The location of Kleopatra Finco S.à r.l.'s principal place of business and the Debtors' service address in these chapter 11 cases is 46A, Avenue J.F. Kennedy, L-1855 Luxembourg, R.C.S. Luxembourg.

[2] Capitalized terms used but not defined herein have the meanings given to them in the Plan or the Disclosure Statement, as applicable.

- IF THE BANKRUPTCY COURT CONFIRMS THE PLAN, IT WILL BIND YOU REGARDLESS OF WHETHER YOU HAVE VOTED.

- NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

- CONFIRMATION OF THE PLAN IS EXPRESSLY CONDITIONED UPON BANKRUPTCY COURT APPROVAL OF THE RELEASES BY THE RELEASING PARTIES (AS DESCRIBED BELOW AND LOCATED IN ARTICLE VIII OF THE PLAN), WHICH, IF APPROVED BY THE BANKRUPTCY COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES.  THE RELEASES BY RELEASING PARTIES, IF APPROVED, WILL BIND AFFECTED HOLDERS OF CLAIMS AND INTERESTS IN THE MANNER DESCRIBED IN ITEM 2 OF THIS BALLOT.

The Company is soliciting votes with respect to the Plan as set forth in the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of Kleopatra Finco S.à r.l. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* and all exhibits related thereto (collectively, and as each may be modified, amended, or supplemented from time to time, the "Disclosure Statement").  The Company may file for protection under title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") and seek to consummate the Restructuring Transactions through the Chapter 11 Cases and the Plan.  Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein.  A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims or at least two-thirds in amount of Interests in that Voting Class votes to accept the Plan.  The Bankruptcy Court may confirm the Plan, which contemplates effectuating the Restructuring Transactions, if the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code, and the Plan then would be binding on all Holders of Allowed Claims and Interests in the Voting Class, among others.  **For additional discussion of your treatment and rights under the Plan, please read the Disclosure Statement and the Plan**.

You have received this ballot (the "Ballot") because the Company's books and records indicate that you are a Holder of an Allowed Claim in Class 3 (the "Voting Class") as of **October 30, 2025** (the "First Lien SFA Loans Voting Record Date") and as set forth in Item 1 of the Ballot.  Accordingly, you have the right to execute this Ballot and to vote to accept or reject the Plan on account of those Claims.

This Ballot may not be used for any purpose other than for casting votes with respect to the Plan and making certain certifications with respect to the Plan.  If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Claims and Noticing Agent immediately.

You should review the Plan before you vote.  You may wish to seek legal advice concerning the proposals related to the Plan.

The Disclosure Statement describes the rights and treatment for each Class.  The Disclosure Statement, the Plan, and certain other materials (collectively, the "Solicitation Package") have been distributed under separate cover from this Ballot.  This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect thereto.  Once completed and returned in accordance with the attached instructions, the votes on the Plan will be counted as set forth herein.

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON DECEMBER 11, 2025.**

**VOTING — COMPLETE THIS SECTION**

**Item 1.  Principal Amount of Claims**

The undersigned hereby certifies that, as of the First Lien SFA Loans Voting Record Date, the undersigned was the Holder of Claims in the Voting Class as set forth below (your "Claims").  You may vote to accept or reject the Plan. You must check the applicable box in the right-hand column below to "accept" or "reject" the Plan for each Voting Class in order to have your vote in that particular Voting Class counted.

Please note that you are voting all of your Claims in each particular Voting Class either to accept or reject the Plan. You may not split your vote in any particular Voting Class.  If you do not indicate that you either accept or reject the Plan in each particular Voting Class by checking the applicable box(es) below, your vote in that particular Voting Class will not be counted.  If you indicate that you both accept and reject the Plan for a particular Voting Class by checking both boxes below, your vote in that particular Voting Class will not be counted.

The Holder of the Claims in the Voting Class set forth below votes to:

| Master Account:  [●] | | | | |
|---|---|---|---|---|
| Investor:  [●] | | | | |
| **Voting Class** | **Description** | **Amount** | **Vote to Accept the Plan** | **Vote to Reject the Plan** |
| Class 3 | First Lien SFA Claims | $_____ | ☐ | ☐ |

**Item 2.  Release Information**.[1]

Article VIII.C of the Plan provides for a release by the Debtors (the "Debtor Release"):

Except as otherwise provided in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, their Estates, the Reorganized Debtors, and any Person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative Claims, asserted or assertable on behalf of any of the Debtors, Reorganized Debtors, and their Estates, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, contingent or noncontingent, in Law, equity, contract, tort or otherwise, that the Debtors, their Estates, or the Reorganized Debtors, including any successors to the Debtors or any Estate representatives appointed or selected, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, their Estates, or other Entity, or that any holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof), the purchase, sale, or recission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, any related adversary proceedings, intercompany transactions between or among a Debtor and another Debtor or an Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into or filing of the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan, any other Definitive Document, or any Restructuring Transactions before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Disclosure Statement or the Plan, the solicitation of votes with respect to the Plan, the Consent Solicitation, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing.

---

[1] The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights. If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs. You should read the Plan before completing this Ballot.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any Causes of Action identified in the Schedule of Retained Causes of Action, *provided* that, for the avoidance of doubt, no Causes of Action against any Consenting Stakeholder shall be included on such Schedule of Retained Causes of Action, (ii) any post Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or Agreement (including any Definitive Document, the Exit Facility Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any Claim or obligation arising under the Plan, or (iii) any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

Article VIII.D of the Plan provides for a third-party release by the Releasing Parties (the "<u>Third-Party Release</u>"):

Except as otherwise provided in the Plan or the Confirmation Order to the contrary, on and after the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, pursuant to section 1123(b) of the Bankruptcy Code, in each case except for Claims arising under, or preserved by, the Plan, to the fullest extent permitted under applicable law, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each and every Releasing Party, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claims or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action arising at any time prior to the Effective Date, including any Avoidance Actions and any derivative claims assert, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, existing on or before the Effective Date, contingent or noncontingent, in law, equity, contract, tort, or otherwise, including any derivative Claims asserted or assertable on behalf of any of the Debtors, that such Entities would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, or their Estates or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, and their Estates (including the capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the purchase, sale, or recission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor or Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or Filing of the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Facility, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Facility, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring

Program, the Factoring Program Documents, the Disclosure Statement, the Plan, or the Plan Supplement, before or during the Chapter 11 Cases, or any Restructuring Transactions, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable Law, the filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the Consent Solicitation, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan and the Restructuring Transactions, including the issuance or distribution of Securities pursuant to the Restructuring Transactions and/or Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the Exit Facility Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any Claim or obligation arising under the Plan, or (b) any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

<u>IMPORTANT INFORMATION REGARDING THE THIRD-PARTY RELEASE</u>:

Under the Plan, "**Related Party**" means, each of, and in each case solely in its capacity as such, current and former directors, managers, officers, committee members, members of any Governing Body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors.

Under the Plan, "**Released Parties**" means, collectively, and in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Lenders; (d) the Agents (including the DIP Agent); (e) Holders of First Lien Claims; (f) the members of the Ad Hoc Group; (g) the Consenting Senior Creditors; (h) Holders of Second Lien Claims; (i) the CastleKnight Funds; (j) the SVP Funds; (k) the Factors; (l) Holders of Claims or Interests who vote to accept the Plan or are presumed to accept the Plan and do not affirmatively opt out of the releases set forth therein; (m) Holders of Claims or Interests who abstain from voting on the Plan and who do not affirmatively opt out of the releases set forth therein; (n) Holders of Claims or Interests who vote to reject the Plan or are deemed to reject the Plan but do not affirmatively opt out of the releases set forth therein; (o) each current and former Affiliate of each Entity in clause (a) through the following clause (p); and (p) each Related Party of each Entity in clause (a) through clause (o), provided that, in each case, an Entity shall not be a Released Party if it:  (i) affirmatively opts out of the releases in the Plan; or (ii) timely objects to the releases in the Plan and such objection is not resolved before the Confirmation Hearing.

Under the Plan, "**Releasing Parties**" means, collectively, and in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Lenders; (d) the Agents (including the DIP Agent); (e) Holders of First Lien Claims; (f) the members of the Ad Hoc Group; (g) the Consenting Senior Creditors; (h) Holders of Second

Lien Claims; (i) the CastleKnight Funds; (j) the SVP Funds; (k) the Factors; (l) Holders of Claims or Interests who vote to accept the Plan or are presumed to accept the Plan and do not affirmatively opt out of the releases set forth therein; (m) Holders of Claims or Interests who abstain from voting on the Plan and who do not affirmatively opt out of the releases set forth therein; (n) Holders of Claims or Interests who vote to reject the Plan or are deemed to reject the Plan but do not affirmatively opt out of the releases set forth therein; (o) each current and former Affiliate of each Entity in clause (a) through the following clause (p); and (p) each Related Party of each Entity in clause (a) through clause (o), provided that, in each case, an Entity shall not be a Releasing Party if it:  (i) affirmatively opts out of the releases in the Plan; or (ii) timely objects to the releases in the Plan and such objection is not resolved before the Confirmation Hearing**.**

> **AS A HOLDER OF THE CLAIMS IN THE VOTING CLASS IDENTIFIED IN ITEM 1, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND, SUBJECT TO THE APPROVAL BY THE BANKRUPTCY COURT, ARE DEEMED TO PROVIDE THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN.  EVEN IF YOU VOTE TO REJECT THE PLAN, VOTE TO ACCEPT THE PLAN, OR IF YOU DO NOT VOTE ON THE PLAN, YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE UNLESS YOU OPT OUT OF THE THIRD-PARTY RELEASE BY CHECKING THE OPT-OUT BOX BELOW.  BY OPTING OUT OF THE THIRD-PARTY RELEASE SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN THE PLAN.**

☐    The undersigned elects to **OPT OUT** of the Third-Party Release.

**Item 3.  Certification, Ballot Completion, and Delivery Instructions**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors:

   (a)   that, as of the First Lien SFA Loans Voting Record Date, either:  (i) the undersigned is the Holder of the Claims in the Voting Class as set forth in Item 1; or (ii) the undersigned is an authorized signatory for an Entity that is the Holder of the Claims in the Voting Class as set forth in Item 1;

   (b)   that the undersigned (or in the case of an authorized signatory, the Holder) has received a copy of the Disclosure Statement and the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

   (c)   that the undersigned has cast the same vote with respect to all Claims in each particular Voting Class; and

   (d)   that no other Ballots with respect to the Claims in the Voting Class identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claims, then any such earlier Ballots voting those Claims are hereby revoked.

| BALLOT COMPLETION INFORMATION — COMPLETE THIS SECTION |
|---|

Name of Holder: _____

Signature: _____

Signatory Name (if other than the Holder): _____

Title: _____

Address: _____

Email Address: _____

Date Completed: _____

**RETURN INSTRUCTIONS**

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT PROMPTLY.   THIS BALLOT MUST BE COMPLETED, SIGNED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE CLAIMS AND NOTICING AGENT PRIOR TO THE VOTING DEADLINE. YOU MAY SUBMIT YOUR BALLOT VIA FIRST CLASS MAIL, OVERNIGHT COURIER, OR HAND DELIVERY TO:**

**FIRST CLASS MAIL TO:**

**Kleopatra Finco S.à r.l. Ballot Processing Center**
**c/o Stretto**
**410 Exchange, Suite 100**
**Irvine, CA 92602**

**YOU MAY SUBMIT YOUR BALLOT VIA OVERNIGHT COURIER OR HAND DELIVERY:**

**Kleopatra Finco S.à r.l. Ballot Processing Center**
**c/o Stretto**
**410 Exchange, Suite 100**
**Irvine, CA 92602**

**YOU MAY SUBMIT YOUR BALLOT BY ELECTRONIC, ONLINE SUBMISSION:**

Please visit https://cases.stretto.com/Klockner. Click on the "File a Ballot" section of the Debtors' website and follow the directions to submit your E-Ballot.  If you choose to submit your Ballot via Stretto's E-Ballot system, you should not also return a hard copy of your Ballot.

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized E-Ballot:**

**Unique E-Ballot Password: _____**

**"E-Balloting" is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile or email or other means of electronic transmission will not be counted.  Each E-Ballot Password is to be used solely for voting only those Claims described in Item 1 of your Ballot.**

**Holders who cast a Ballot using the Solicitation Agent's online portal should NOT also submit a paper Ballot.**

9

**Important Information Regarding Releases under the Plan**:

The Plan includes the following release, exculpation, and injunction provisions:[1]

Article VIII.C of the Plan provides for a release by the Debtors (the "<u>Debtor Release</u>")

> **Except as otherwise provided in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, their Estates, the Reorganized Debtors, and any Person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative Claims, asserted or assertable on behalf of any of the Debtors, Reorganized Debtors, and their Estates, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, contingent or noncontingent, in Law, equity, contract, tort or otherwise, that the Debtors, their Estates, or the Reorganized Debtors, including any successors to the Debtors or any Estate representatives appointed or selected, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, their Estates, or other Entity, or that any holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof), the purchase, sale, or recission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, any related adversary proceedings, intercompany transactions between or among a Debtor and another Debtor or an Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into or filing of the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan, any other Definitive Document, or any Restructuring Transactions before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Disclosure Statement or the Plan, the solicitation of votes with respect to the Plan, the Consent Solicitation, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement,**

---

[1] The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  You should read the Plan before completing this Ballot.

or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any Causes of Action identified in the Schedule of Retained Causes of Action, *provided* that, for the avoidance of doubt, no Causes of Action against any Consenting Stakeholder shall be included on such Schedule of Retained Causes of Action, (ii) any post Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or Agreement (including any Definitive Document, the Exit Facility Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any Claim or obligation arising under the Plan, or (iii) any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

Article VIII.D of the Plan provides for a third-party release by the Releasing Parties (the "Third-Party Release"):

Except as otherwise provided in the Plan or the Confirmation Order to the contrary, on and after the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, pursuant to section 1123(b) of the Bankruptcy Code, in each case except for Claims arising under, or preserved by, the Plan, to the fullest extent permitted under applicable law, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each and every Releasing Party, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claims or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action arising at any time prior to the Effective Date, including any Avoidance Actions and any derivative claims assert, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, existing on or before the Effective Date, contingent or noncontingent, in law, equity, contract, tort, or otherwise, including any derivative Claims asserted or assertable on behalf of any of the Debtors, that such Entities would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, or their Estates or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, and their Estates (including the capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the purchase, sale, or recission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor or Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or Filing of the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Facility, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or

entered into in connection with the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Facility, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring, the Factoring Program Documents, the Disclosure Statement, the Plan, or the Plan Supplement, before or during the Chapter 11 Cases, or any Restructuring Transactions, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable Law, the filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the Consent Solicitation, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan and the Restructuring Transactions, including the issuance or distribution of Securities pursuant to the Restructuring Transactions and/or Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the Exit Facility Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any Claim or obligation arising under the Plan, or (b) any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

Article VIII.E of the Plan provides for an exculpation of certain parties (the "Exculpation"):

Notwithstanding anything contained in the Plan to the contrary, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or Third-Party Release, effective as of the Effective Date, no Exculpated Party shall have or incur liability or obligation for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any Claim arising from the Petition Date through the Effective Date related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the RSA and related prepetition transactions, the Bridge Facilities, the Bridge Facility Agreement, the Definitive Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Disclosure Statement, the Plan, the Plan Supplement, the Restructuring Transactions, the DIP Facility, the DIP Documents, or any wind down transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) in connection with the RSA and related prepetition transactions, the Bridge Facilities, the Bridge Facility Agreement, the Definitive Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan, the Plan Supplement, the Restructuring Transactions, the DIP Facility, the DIP Documents, any preference, fraudulent transfer, or other avoidance Claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Restructuring Transactions, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have

constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

Article VIII.F of the Plan establishes an injunction (the "Injunction"):

Except as otherwise expressly provided in the Plan or in the Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that have been extinguished, released, discharged, or are subject to exculpation, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, and the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has timely filed a motion with the Bankruptcy Court expressly requesting the right to perform such setoff, subrogation or recoupment on or before the Effective Date, and notwithstanding an indication of a Claim, Interest, or Cause of Action or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as applicable, subject to Article VIII.C, Article VIII.D, and Article VIII.E hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim not released or subject to exculpation under the Plan, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party.

The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

Article VIII.F of the Plan establishes Discharge of Claims and Termination of Interests (the "Discharge of Claims & Termination of Interests"):

Pursuant to section 1141(d) of the Bankruptcy Code and except as otherwise specifically provided herein, or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided herein shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims that the Debtors resolve or compromise after the Effective Date), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services that employees of the Debtors have performed prior to the Effective Date, and that arise from a termination of employment, any contingent or noncontingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (a) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the holder of such a Claim or Interest has accepted the Plan. Any default or "event of default" by the

13

**Debtors with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date.  Without prejudice to the distributions, rights, and treatment that are provided by the Plan, the Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date, and, upon the Effective Date, all Holders of such Claims and Interests shall be forever precluded and enjoined, pursuant to Section 524 of the Bankruptcy Code, from prosecuting or asserting any such Claim or Interest against the Debtors, Reorganized Debtors, or any of their assets or property.**

## INSTRUCTIONS FOR COMPLETING THIS BALLOT:

1. This Ballot contains voting options with respect to the Plan.

2. To ensure that your vote is counted, this Ballot must be properly completed, executed, and delivered (a) via first class mail to Kleopatra Finco S.à r.l. Ballot Processing Center, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602, (b) overnight courier or hand delivery to Kleopatra Finco S.à r.l. Ballot Processing Center, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602, or (c) by electronic, online submission by visiting https://cases.stretto.com/Klockner, and clicking on "File a Ballot", so that this Ballot is **actually received** by the Claims and Noticing Agent on or before the Voting Deadline, **4:00 p.m. prevailing Central Time on December 11, 2025.**

3. Any Ballot submitted that is incomplete or illegible, indicates unclear or inconsistent votes with respect to the Plan or is improperly signed and returned will <u>NOT</u> be counted unless the Company otherwise determines.

4. To vote, you <u>MUST</u> deliver your completed Ballot (whether via mail, hand delivery, e-mail, or electronically on the Claims and Noticing Agent's website) so that it is <u>ACTUALLY RECEIVED</u> by the Claims and Noticing Agent on or before the Voting Deadline by one of the methods described above. **The Voting Deadline is 4:00 p.m. prevailing Central Time on December 11, 2025**.

5. Any Ballot received by the Claims and Noticing Agent after the Voting Deadline will not be counted with respect to acceptance or rejection of the Plan, as applicable, unless the Company otherwise determines. No Ballot may be withdrawn or modified after the Voting Deadline without the Company's prior consent.

6. Delivery of a Ballot reflecting your vote to the Claims and Noticing Agent will be deemed to have occurred only when the Claims and Noticing Agent actually receives your paper Ballot or E-Ballot.  In all cases, you should allow sufficient time to assure timely delivery.

7. If you deliver multiple Ballots to the Claims and Noticing Agent, <u>ONLY</u> the last properly executed Ballot timely received will be deemed to reflect your intent and will supersede and revoke any prior Ballot(s).

8. You must vote all of your Claims in each particular Voting Class either to accept or reject the Plan and may not split your vote.  Further, if a Holder has multiple Claims in the Voting Class, the Company may direct the Claims and Noticing Agent to aggregate those Claims for the purpose of counting votes.

9. This Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest, or an assertion or admission of a Claim, in the Company's chapter 11 cases.

10. You should not rely on any information, representations, or inducements made to obtain an acceptance of the Plan that are other than as set forth, or are inconsistent with, the information contained in the Disclosure Statement, the documents attached to or incorporated in the Disclosure Statement, and the Plan.

11. <u>SIGN AND DATE</u> your Ballot.[1]  In addition, please provide your name and mailing address if it is different from that set forth on the Ballot or if no address is preprinted on the Ballot.  Any unsigned Ballot will not be valid; however, for the avoidance of doubt, the scanned signature or e-signature included on an E-Ballot will be deemed immediately legally valid and effective.

---

[1] If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims and Noticing Agent, the Company, the Company's proposed counsel, or the Bankruptcy Court, must submit proper evidence to the requesting party of authority to so act on behalf of such Holder.

12. If your Claim or Interest is held in multiple accounts, you may receive more than one Ballot coded for each such account for which your Claims are held.  Each Ballot votes only your Claims indicated on that Ballot.  Accordingly, complete and return each Ballot you receive.

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE CLAIMS AND NOTICING AGENT BY EMAILING KPINQUIRIES@STRETTO.COM AND REFERENCE "KLEOPATRA – SOLICITATION INQUIRIES" IN THE SUBJECT LINE, OR BY CALLING (833) 212 0915 (USA OR CANADA) (TOLL FREE) OR +1 (949) 273 2457 (INTERNATIONAL).**

**<u>PLEASE SUBMIT YOUR BALLOT PROMPTLY</u>**

**Exhibit A**

Subject to the terms and conditions of the Plan, you will receive the following treatment if the Plan is consummated:

| | | |
|---|---|---|
| Class 3 | First Lien Claims | Except to the extent that a Holder of an Allowed First Lien Claim agrees to less favorable treatment, on the Effective Date, each Holder of an Allowed First Lien Claim shall receive: (i) its *pro rata* share of 100 percent of the New Equity Interests, subject to dilution on account of the Management Incentive Plan; or (ii) such reasonable equivalent value on account of the Alternative Instrument (if any). |

**For additional discussion of your treatment and rights under the Plan, please read the Disclosure Statement and the Plan.**

17

**<u>Exhibit 4</u>**

**Form of Ballot
For Class 4 Claims**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| KLEOPATRA FINCO S.À R.L., *et al.*,[1] | ) | Case No. 25-90642 (CML) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |

**BALLOT FOR VOTING ON THE JOINT
PREPACKAGED PLAN OF REORGANIZATION OF KLEOPATRA FINCO S.À R.L.
AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**CLASS 4 – SECOND LIEN CLAIMS (SECOND LIEN SECURED NOTES)
(REGULATION S NOTES: ISIN NUMBER XS3056028171 / COMMON CODE 305602817;
RULE 144A NOTES: ISIN NUMBER XS3056028502 / COMMON CODE 305602850)**

---

**PLEASE READ - YOUR RESPONSE IS REQUIRED BY 4:00 P.M., PREVAILING CENTRAL TIME, ON DECEMBER 11, 2025.**

- PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT RELATING TO THE *JOINT PREPACKAGED PLAN OF REORGANIZATION OF KLEOPATRA FINCO S.À R.L. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE* (AS MAY BE MODIFIED, AMENDED, OR SUPPLEMENTED FROM TIME TO TIME, THE "PLAN")[2] FOR KLEOPATRA FINCO S.À R.L. AND CERTAIN OF ITS AFFILIATES (COLLECTIVELY, THE "COMPANY") INCLUDED WITH THIS BALLOT BEFORE COMPLETING THIS BALLOT.  THIS BALLOT PERMITS YOU TO VOTE ON THE PLAN (INCLUDING THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN), WHICH IS SUBJECT TO BANKRUPTCY COURT APPROVAL AND CONTEMPLATES COMPREHENSIVE RESTRUCTURING TRANSACTIONS (THE "RESTRUCTURING TRANSACTIONS") UPON THE COMPANY'S EMERGENCE FROM CHAPTER 11.  THE COMPANY HAS NOT COMMENCED CHAPTER 11 CASES AS OF THE TIME THIS BALLOT WAS SENT.

- IN ORDER TO COMPLETE THIS BALLOT, YOU MUST FIRST SUBMIT OR CAUSE A DIRECT PARTICIPANT TO SUBMIT AN ELECTRONIC CONSENT INSTRUCTION[3] FOR YOUR SECOND LIEN CLAIMS IN THE FORM SPECIFIED IN THE CLEARING SYSTEM NOTICE FOR SUBMISSION BY A DIRECT PARTICIPANT IN THE RELEVANT CLEARING SYSTEM[4] BY THE RELEVANT DEADLINE.  ONCE THIS IS COMPLETE, YOU WILL RECEIVE A SECOND LIEN CUSTODY INSTRUCTION REFERENCE NUMBER / BLOCKING REFERENCE NUMBER, WHICH YOU MUST INCLUDE IN THIS BALLOT.  FAILURE TO PROVIDE YOUR SECOND LIEN CUSTODY INSTRUCTION REFERENCE

---

[1]  A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Company's Claims and Noticing Agent at https://cases.stretto.com/Klockner.  The location of Kleopatra Finco S.à r.l.'s principal place of business and the Company's service address in these Chapter 11 Cases is 46A, Avenue J.F. Kennedy, L-1855 Luxembourg, R.C.S. Luxembourg.

[2]  Capitalized terms used but not defined herein have the meanings given to them in the Plan or the Disclosure Statement, as applicable.

[3]  "Electronic Consent Instruction" means the electronic blocking instruction in the form specified in the notice sent to Direct Participants by the relevant Clearing System on or about the date of the Disclosure Statement informing Direct Participants of the procedures to be followed in order for Beneficial Holders to participate in the solicitation of votes with respect to the Plan, for submission by Direct Participants to the Information and Tabulation Agent via the relevant Clearing System in accordance with the requirements of such Clearing System by the relevant deadline in order for Beneficial Holders to participate in the solicitation of votes with respect to the Plan.

[4]  "Clearing Systems" means, collectively or singularly, Euroclear Bank S.A./N.V. and Clearstream Banking, S.A.

NUMBER / BLOCKING REFERENCE NUMBER IN THIS BALLOT MAY RESULT IN YOUR VOTE NOT BEING COUNTED.

- IF A BENEFICIAL HOLDER[5] HOLDS CLASS 4 SECOND LIEN SECURED NOTES CLAIMS THROUGH ONE OR MORE DIRECT PARTICIPANTS,[6] SUCH BENEFICIAL HOLDER MUST IDENTIFY ALL CLASS 4 SECOND LIEN SECURED NOTES CLAIMS HELD IN ACCORDANCE WITH ITEM 3 OF THIS BALLOT, AND MUST INDICATE THE SAME VOTE TO ACCEPT OR REJECT THE PLAN ON ALL BALLOTS SUBMITTED.

- THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS **ACTUALLY RECEIVED** BY GLAS SPECIALIST SERVICES LIMITED (THE "INFORMATION AND TABULATION AGENT") AT VELVET@GLAS.AGENCY PRIOR TO **4:00 P.M. PREVAILING CENTRAL TIME ON DECEMBER 11, 2025** (THE "VOTING DEADLINE").

- IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT (I) THE INFORMATION AND TABULATION AGENT AT VELVET@GLAS.AGENCY AND (II) STRETTO, INC. (THE "CLAIMS AND NOTICING AGENT") AT KPINQUIRIES@STRETTO.COM.

- IF YOU HAVE ANY QUESTIONS REGARDING THE CHAPTER 11 CASES, PLEASE CONTACT THE CLAIMS AND NOTICING AGENT AT KPINQUIRIES@STRETTO.COM WITH "KLEOPATRA BALLOT" IN THE SUBJECT LINE, OR CALL (833) 212-0915 (USA OR CANADA) (TOLL-FREE) OR +1 (949) 273-2457 (INTERNATIONAL).

- IF THE BANKRUPTCY COURT CONFIRMS THE PLAN, IT WILL BIND YOU REGARDLESS OF WHETHER YOU HAVE VOTED.

- NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS DISTRIBUTED WITH THIS BALLOT.

- CONFIRMATION OF THE PLAN IS EXPRESSLY CONDITIONED UPON BANKRUPTCY COURT APPROVAL OF THE RELEASES BY RELEASING PARTIES (AS DESCRIBED BELOW AND LOCATED IN ARTICLE VIII OF THE PLAN), WHICH, IF APPROVED BY THE BANKRUPTCY COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES. THE RELEASES BY RELEASING PARTIES, IF APPROVED, WILL BIND AFFECTED HOLDERS OF CLAIMS AND INTERESTS IN THE MANNER DESCRIBED IN ITEM 2 OF THIS BALLOT.

- IF YOU VOTE TO REJECT THE PLAN, OR IF YOU DO NOT VOTE ON THE PLAN, YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD PARTY RELEASE UNLESS YOU CHECK THE OPT OUT BOX ON ITEM 2 BELOW.

The Company is soliciting votes with respect to the Plan as set forth in the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of Kleopatra Finco S.à r.l. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* and all exhibits related thereto (collectively, and as each may be modified, amended, or supplemented from time to time, the "Disclosure Statement"). The Company may file for protection under title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") and seek to consummate the Restructuring Transactions through the Chapter 11 Cases and the Plan. Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein. A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims or at least two-thirds in amount of Interests in that Voting Class votes to accept the Plan. The Bankruptcy Court may confirm the Plan, which contemplates effectuating the Restructuring Transactions, if the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code, and the Plan then would be binding on all Holders of Allowed

---

[5]   "Beneficial Holder" means a beneficial owner of a Class 3 Claim or Class 4 Claim whose Claims have not been satisfied prior to the Voting Record Date pursuant to Bankruptcy Court order or otherwise, as reflected in the records maintained by the Direct Participants holding through the Clearing Systems or other relevant security depository and/or the applicable indenture trustee, as of the Voting Record Date.

[6]   "Direct Participant" means a broker, dealer, commercial bank, trust company, custodian, or other intermediary who holds Class 4 Second Lien Secured Notes Claims through the Clearing Systems, or such firm's agent, on behalf of a Beneficial Holder.

Claims and Interests in the Voting Class, among others.  Subject to the terms and conditions of the Plan, you will receive the treatment identified in **Exhibit A**.  **For additional discussion of your treatment and rights under the Plan, please read the Disclosure Statement and the Plan**.

You are receiving this ballot (the "Ballot") because a Direct Participant has identified you as a Beneficial Holder of a Second Lien Secured Claim in Class 4 (the "Voting Class") as of the individualized date in which each Holder of First Lien Secured Notes and Second Lien Secured Notes submits their respective votes on the Plan and thereby blocks the amount of their Claims entitled to vote on the Plan (the "Noteholders Voting Record Date").  Accordingly, you have the right to vote to accept or reject the Plan.

The Disclosure Statement describes the rights and treatment for each Class.  The Disclosure Statement, the Plan, and certain other materials (collectively, the "Solicitation Package") have been distributed under separate cover from this Ballot and are available at https://glas-agency.appiancloud.com/suite/sites/kp-transaction-1L-2L.  This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect thereto.  Once completed and returned in accordance with the attached instructions, the votes on the Plan will be counted as set forth herein.

**YOUR VOTE ON THIS BALLOT WILL BE APPLIED TO EACH DEBTOR AGAINST WHICH YOU HAVE SUCH CLAIM(S).**

*You should carefully and thoroughly review the Disclosure Statement and Plan before you vote to accept or reject the Plan.  You may wish to seek legal advice concerning the Plan and classification and treatment of your Claim under the Plan.  Your Claim has been classified in Class 4 under the Plan.*

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON DECEMBER 11, 2025.**

**Item 1.  Voting - Complete This Section.**

| **ITEM 1**: PRINCIPAL AMOUNT OF CLAIMS | The undersigned hereby certifies that, as of the Noteholders Voting Record Date, the undersigned was the Beneficial Holder (or authorized signatory for a Beneficial Holder), of Claim(s) in the Voting Class as set forth below (your "Claims").  If you do not know the amount of your Class 4 Second Lien Secured Notes Claims as of the Noteholders Voting Record Date, please contact the relevant Direct Participant for this information.  You may vote to accept or reject the Plan.  You must check the applicable box in the right-hand column below to "accept" or "reject" the Plan for the Voting Class in order to have your vote in the Voting Class counted.

Please note that you are voting all of your Claims in the Voting Class either to accept or reject the Plan.  You may not split your vote in the Voting Class.  If you do not indicate that you either accept or reject the Plan in the Voting Class by checking the applicable box below, your vote in the Voting Class will not be counted.  If you indicate that you both accept and reject the Plan for the Voting Class by checking both boxes below, your vote in the Voting Class will not be counted.

The Beneficial Holder of the Claim(s) in the Voting Class set forth below votes to (*please check one and only one box*): |

| Voting Class | Description and ISIN(s) | Amount | Clearing System | Vote to Accept or Reject Plan | Clearing System Account Number | Direct Participant Name / Custodian | Custody Instruction Reference Number / Blocking Reference Number |
|---|---|---|---|---|---|---|---|
| Class 4 | Second Lien Claims<br><br>XS_____<br><br>XS_____ | €_____ ⎯ | ☐ Euroclear<br><br>☐ Clearstream | ☐ ACCEPT (VOTE FOR) THE PLAN<br><br>☐ REJECT (VOTE AGAINST) THE PLAN | _____ | _____ | _____ |

3

**Item 2.  Release Information.**[7]

Article VIII.C of the Plan provides for a release by the Debtors (the "Debtor Release"):

**Except as otherwise provided in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, their Estates, the Reorganized Debtors, and any Person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative Claims, asserted or assertable on behalf of any of the Debtors, Reorganized Debtors, and their Estates, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, contingent or noncontingent, in Law, equity, contract, tort or otherwise, that the Debtors, their Estates, or the Reorganized Debtors, including any successors to the Debtors or any Estate representatives appointed or selected, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, their Estates, or other Entity, or that any holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof), the purchase, sale, or recission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, any related adversary proceedings, intercompany transactions between or among a Debtor and another Debtor or an Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into or filing of the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan, any other Definitive Document, or any Restructuring Transactions before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Disclosure Statement or the Plan, the solicitation of votes with respect to the Plan, the Consent Solicitation, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing.**

---

[7]   The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  You should read the Plan before completing this Ballot.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any Causes of Action identified in the Schedule of Retained Causes of Action, *provided* that, for the avoidance of doubt, no Causes of Action against any Consenting Stakeholder shall be included on such Schedule of Retained Causes of Action, (ii) any post Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or Agreement (including any Definitive Document, the Exit Facility Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any Claim or obligation arising under the Plan, or (iii) any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

<u>Article VIII.D</u> of the Plan provides for a third-party release by the Releasing Parties (the "<u>Third-Party Release</u>"):

Except as otherwise provided in the Plan or the Confirmation Order to the contrary, on and after the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, pursuant to section 1123(b) of the Bankruptcy Code, in each case except for Claims arising under, or preserved by, the Plan, to the fullest extent permitted under applicable law, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each and every Releasing Party, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claims or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action arising at any time prior to the Effective Date, including any Avoidance Actions and any derivative claims assert, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, existing on or before the Effective Date, contingent or noncontingent, in law, equity, contract, tort, or otherwise, including any derivative Claims asserted or assertable on behalf of any of the Debtors, that such Entities would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, or their Estates or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, and their Estates (including the capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the purchase, sale, or recission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor or Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or Filing of the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Facility, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Facility, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan, or the Plan Supplement, before

5

or during the Chapter 11 Cases, or any Restructuring Transactions, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable Law, the filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the Consent Solicitation, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan and the Restructuring Transactions, including the issuance or distribution of Securities pursuant to the Restructuring Transactions and/or Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the Exit Facility Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any Claim or obligation arising under the Plan, or (b) any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

<u>IMPORTANT INFORMATION REGARDING THE THIRD-PARTY RELEASE</u>:

Under the Plan, "**Related Party**" means, each of, and in each case solely in its capacity as such, current and former directors, managers, officers, committee members, members of any Governing Body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors.

Under the Plan, "**Released Parties**" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Lenders; (d) the Agents (including the DIP Agent); (e) Holders of First Lien Claims; (f) the members of the Ad Hoc Group; (g) the Consenting Senior Creditors; (h) Holders of Second Lien Claims; (i) the CastleKnight Funds; (j) the SVP Funds; (k) the Factors; (l) Holders of Claims or Interests who vote to accept the Plan or are presumed to accept the Plan and do not affirmatively opt out of the releases set forth therein; (m) Holders of Claims or Interests who abstain from voting on the Plan and who do not affirmatively opt out of the releases set forth therein; (n) Holders of Claims or Interests who vote to reject the Plan or are deemed to reject the Plan but do not affirmatively opt out of the releases set forth therein; (o) each current and former Affiliate of each Entity in clause (a) through the following clause (p); and (p) each Related Party of each Entity in clause (a) through clause (o), provided that, in each case, an Entity shall not be a Released Party if it:  (i) affirmatively opts out of the releases in the Plan; or (ii) timely objects to the releases in the Plan and such objection is not resolved before the Confirmation Hearing.

Under the Plan, "**Releasing Parties**" means, collectively, and in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Lenders; (d) the Agents (including the DIP Agent); (e) Holders of First Lien Claims; (f) the members of the Ad Hoc Group; (g) the Consenting Senior Creditors; (h) Holders of Second Lien Claims; (i) the CastleKnight Funds; (j) the SVP Funds; (k) the Factors; (l) Holders of Claims or Interests who vote to accept the Plan or are presumed to accept the Plan and do not affirmatively opt out of the releases set forth therein; (m) Holders of Claims or Interests who abstain from voting on the Plan and who do not affirmatively opt out of the releases set forth therein; (n) Holders of Claims or Interests who vote to reject the Plan or are deemed to reject the Plan but do not affirmatively opt out of the releases set forth therein; (o) each current and former Affiliate of each Entity in

clause (a) through the following clause (p); and (p) each Related Party of each Entity in clause (a) through clause (o); provided that, in each case, an Entity shall not be a Releasing Party if it:  (i) affirmatively opts out of the releases in the Plan; or (ii) timely objects to the releases in the Plan and such objection is not resolved before the Confirmation Hearing.

---

**EVEN IF YOU VOTE TO REJECT THE PLAN, VOTE TO ACCEPT THE PLAN, OR IF YOU DO NOT VOTE ON THE PLAN, YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE UNLESS YOU OPT OUT OF THE THIRD-PARTY RELEASE BY CHECKING THE OPT-OUT BOX BELOW. BY OPTING OUT OF THE THIRD-PARTY RELEASE SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN THE PLAN.**

---

☐     The undersigned elects to **OPT OUT** of the Third-Party Release.

**Item 3.  Certification of Claims in the Voting Class Held in Additional Accounts.**

By completing and returning this Ballot, the Beneficial Holder of the Claims identified in Item 1 certifies that this Ballot is the only Ballot submitted for the Claims in the Voting Class identified in Item 1 owned by such Beneficial Holder as indicated in Item 1, except for the Claims identified in the following table.  To be clear, if any Beneficial Holder holds Claims in a Voting Class through one or more Direct Participants, such Beneficial Holder must identify all Claims in the Voting Class held through its own name and/or each Direct Participant in the following table, and must indicate the same vote to accept or reject the Plan on all Ballots submitted.

ONLY COMPLETE ITEM 3 IF YOU HAVE SUBMITTED OTHER BALLOTS ON ACCOUNT OF CLASS 4 CLAIMS.

| Class 4 – Second Lien Secured Notes Claims | | | |
|---|---|---|---|
| **Account Number of Other Claims Voted in the Voting Class** | **Name of Owner[8]** | **Principal Amount of Other Claims Voted in the Voting Class** | **ISIN of Other Claims Voted in the Voting Class** |
| | | | |
| | | | |
| | | | |
| | | | |

---

[8]  Insert your name if the Claims in the respective Voting Class are held by you in your own name or, if held in a street name through a Direct Participant, insert the name of your broker or bank.

8

**Item 4.  Certifications.**

Upon execution of this Ballot, the undersigned certifies that:

a.  as of the Noteholders Voting Record Date, the undersigned was the Beneficial Holder (or authorized signatory for a Beneficial Holder) of the Claims in the Voting Class set forth in <u>Item 1</u>;

b.  the Beneficial Holder has reviewed a copy of the Disclosure Statement, the Plan, and the remainder of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

c.  the Beneficial Holder has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Solicitation Package or other publicly available materials;

d.  the Beneficial Holder has submitted an Electronic Consent Instruction to the relevant Clearing System for all of such Beneficial Holder's Claims through a Direct Participant, such that no transfers of such Beneficial Holder's Second Lien Secured Notes may be effected until the earliest to occur of (i) the Voting Deadline and (ii) the date on which such Beneficial Holder submits a withdrawal notice, and the Beneficial Holder has received a Second Lien Custody Instruction Reference Number / Blocking Reference Number that has been included in this Ballot;

e.  the Beneficial Holder has cast the same vote with respect to all of the Beneficial Holder's Claims in the Voting Class;

f.  the Beneficial Holder understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in <u>Item 1</u>, only the last properly completed Ballot voting the Claim and received by the Information and Tabulation Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Information and Tabulation Agent;

g.  the Beneficial Holder understands and acknowledges that by submitting Electronic Consent Instructions on behalf of an Eligible Holder, each Direct Participant will be deemed to have consented to the relevant Clearing System providing any details set forth in such Electronic Consent Instruction to the Information and Tabulation Agent (and to the Information and Tabulation Agent providing such details to the Debtors and their legal and other advisers).  Eligible Holders that need assistance with respect to the procedures for participating in the Consent Solicitation should contact the Information and Tabulation Agent.  Furthermore, pursuant to the terms of the Disclosure Statement, the Information and Tabulation Agent will be deemed to have been authorized by the Beneficial Holder to share with the Claims and Noticing Agent any and all information about such Beneficial Holder's Ballot disclosed to the Information and Tabulation Agent via such Beneficial Holder's Ballot or otherwise; and

h.  the Beneficial Holder understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the Beneficial Holder hereunder, shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, and legal representatives of the Beneficial Holder and shall not be affected by, and shall survive, the death or incapacity of the Beneficial Holder.

**Accepted and Acknowledged**

Name of Beneficial Holder:_____

(<em>print or type</em>)

Signature:_____

Name of Signatory:_____

(<em>if other than Beneficial Holder</em>)

Date:_____

**Item 5.  Beneficial Holder Information and Signature.**

Name of Beneficial Holder: _____
                                              (*print or type*)

Signature: _____

Name of Signatory: _____
                                      (*if other than Beneficial Holder*)

Second Lien Custody Instruction Reference Number /
Blocking Reference Number: _____

Title: _____

Address: _____

_____

_____

Date Completed: _____

Email Address: _____

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON DECEMBER 11, 2025.**

**In order to complete this Ballot, you must provide your Second Lien Custody Instruction Reference Number / Blocking Reference Number, which may only be obtained following delivery of an Electronic Consent Instruction to the relevant Clearing System**.  You may obtain your Second Lien Custody Instruction Reference Number / Blocking Reference Number in the manner described in the section entitled *Voting Instructions* below and in the Disclosure Statement.

**If you received a return envelope addressed to the relevant Direct Participant,** please complete, sign, and date the Ballot and return it in the envelope provided or otherwise in accordance with the instructions provided by the relevant Direct Participant.  Please allow sufficient time for your Ballot to be processed by the relevant Direct Participant.  The Ballot must be **actually received** by the Information and Tabulation Agent at velvet@glas.agency on or before the Voting Deadline.

IF YOU HAVE ANY QUESTIONS ABOUT THIS BALLOT OR THE PLAN SOLICITATION OR YOU NEED ADDITIONAL VOTING MATERIALS, PLEASE CONTACT THE INFORMATION AND TABULATION AGENT AT <u>VELVET@GLAS.AGENCY</u>.  IF YOU HAVE QUESTIONS ABOUT THE VOTING PROCEDURES, PLEASE CONTACT THE RELEVANT DIRECT PARTICIPANT.  ANY BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER WILL NOT BE COUNTED.

**Important Information Regarding Releases under the Plan**:

The Plan includes the following release, exculpation, and injunction provisions:[9]

<u>Article VIII.C: Releases by the Debtors</u>

        **Except as otherwise provided in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, their Estates, the Reorganized Debtors, and any Person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative Claims, asserted or assertable on behalf of any of the Debtors, Reorganized Debtors, and their Estates, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, contingent or noncontingent, in Law, equity, contract, tort or otherwise, that the Debtors, their Estates, or the Reorganized Debtors, including any successors to the Debtors or any Estate representatives appointed or selected, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, their Estates, or other Entity, or that any holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof), the purchase, sale, or recission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in-or out-of-court restructuring efforts, any Avoidance Actions, any related adversary proceedings, intercompany transactions between or among a Debtor and another Debtor or an Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into or filing of the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan, any other Definitive Document, or any Restructuring Transactions before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Disclosure Statement or the Plan, the solicitation of votes with respect to the Plan, the Consent Solicitation, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing.**

---

[9]    The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights. If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  You should read the Plan before completing this Ballot.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any Causes of Action identified in the Schedule of Retained Causes of Action, *provided* that, for the avoidance of doubt, no Causes of Action against any Consenting Stakeholder shall be included on such Schedule of Retained Causes of Action, (ii) any post Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or Agreement (including any Definitive Document, the Exit Facility Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any Claim or obligation arising under the Plan, or (iii) any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

<u>Article VIII.D: Releases by Third Parties</u>

Except as otherwise provided in the Plan or the Confirmation Order to the contrary, on and after the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, pursuant to section 1123(b) of the Bankruptcy Code, in each case except for Claims arising under, or preserved by, the Plan, to the fullest extent permitted under applicable law, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each and every Releasing Party, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claims or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action arising at any time prior to the Effective Date, including any Avoidance Actions and any derivative claims assert, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, existing on or before the Effective Date, contingent or noncontingent, in law, equity, contract, tort, or otherwise, including any derivative Claims asserted or assertable on behalf of any of the Debtors, that such Entities would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, or their Estates or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, and their Estates (including the capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the purchase, sale, or recission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor or Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or Filing of the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Facility, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Facility, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan, or the Plan Supplement, before or during the Chapter 11 Cases, or any Restructuring

13

Transactions, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable Law, the filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the Consent Solicitation, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan and the Restructuring Transactions, including the issuance or distribution of Securities pursuant to the Restructuring Transactions and/or Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the Exit Facility Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any Claim or obligation arising under the Plan, or (b) any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

<u>Article VIII.E:  Exculpation</u>

Notwithstanding anything contained in the Plan to the contrary, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or Third-Party Release, effective as of the Effective Date, no Exculpated Party shall have or incur liability or obligation for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any Claim arising from the Petition Date through the Effective Date related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the RSA and related prepetition transactions, the Bridge Facilities, the Bridge Facility Agreement, the Definitive Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan, the Plan Supplement, the Restructuring Transactions, the DIP Facility, the DIP Documents, or any wind down transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) in connection with the RSA and related prepetition transactions, the Bridge Facilities, the Bridge Facility Agreement, the Definitive Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Disclosure Statement, the Plan, the Plan Supplement, the Restructuring Transactions, the DIP Facility, the DIP Documents, any preference, fraudulent transfer, or other avoidance Claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Restructuring Transactions, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

<u>Article VIII.G:  Injunction</u>

Except as otherwise expressly provided in the Plan or in the Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that have been extinguished, released, discharged, or are subject to exculpation, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, and the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action;  (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action;  (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action;  (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has timely filed a motion with the Bankruptcy Court expressly requesting the right to perform such setoff, subrogation or recoupment on or before the Effective Date, and notwithstanding an indication of a Claim, Interest, or Cause of Action or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as applicable, subject to Article VIII.C, Article VIII.D, and Article VIII.E hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim not released or subject to exculpation under the Plan, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party.

The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

## VOTING INSTRUCTIONS

1.  As described in the Disclosure Statement, the Company is soliciting the votes of Beneficial Holders of Class 4 Second Lien Secured Notes Claims with respect to the Plan referred to in the Disclosure Statement. The Plan and the Disclosure Statement are included in the Solicitation Package you received with the Ballot and available at https://glas-agency.appiancloud.com/suite/sites/kp-transaction-1L-2L. Capitalized terms used but not defined herein shall have the meanings assigned to them in the Plan. **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.** You may wish to seek legal advice concerning the Plan and the treatment of your Claim under the Plan.

2.  In order to complete this Ballot, a Beneficial Holder must first deliver an Electronic Consent Instruction for all of such Beneficial Holder's Claims to the Clearing Systems. Delivery of an Electronic Consent Instruction is required to obtain a Second Lien Custody Instruction Reference Number / Blocking Reference Number, which is necessary to complete this Ballot. Any Ballot that is properly completed, executed, and timely returned to the Company that fails to include a valid Second Lien Custody Instruction Reference Number / Blocking Reference Number pertaining to such Beneficial Holder's Claims may not be counted. Only Direct Participants may submit Electronic Consent Instructions to the Clearing Systems. Each Electronic Consent Instruction must include, in addition to any information required by the relevant Clearing System:

    (i)   the principal amount of the Second Lien Secured Notes to which such Electronic Consent Instruction relates (only Electronic Consent Instructions with respect to Second Lien Secured Notes in minimum denominations of €100,000 and integral multiples of €1,000 in excess thereof will be accepted);

    (ii)  the name of the Direct Participant and the securities account number for the relevant Clearing System in which the Second Lien Secured Notes are held; and

    (iii) the name, telephone number and email address of the Beneficial Holder of the Second Lien Secured Notes which such Electronic Consent Instruction relates.

3.  If the Beneficial Holder is not a Direct Participant, the Beneficial Holder (or a financial institution or other intermediary on its behalf) must procure that the Direct Participant through which it holds the Second Lien Secured Note submits an Electronic Consent Instruction. The receipt of an Electronic Consent Instruction by the relevant Clearing System will be acknowledged by such Clearing System in accordance with the procedures laid out in the Clearing System Notice of that Clearing System, and the Beneficial Holder will receive a Second Lien Custody Instruction Reference Number / Blocking Reference Number. Moreover, receipt of an Electronic Consent Instruction will result in the blocking of the Second Lien Secured Notes represented by such Electronic Consent Instruction until the earliest to occur of (i) the Voting Deadline, and (ii) the date on which the relevant Beneficial Holder validly submits a withdrawal notice. Each Beneficial Holder that submits an Electronic Consent Instruction must take the appropriate steps through the relevant Clearing System necessary to ensure that no transfers can be effected in relation to such blocked Second Lien Secured Notes in accordance with the requirements of the relevant Clearing System and the deadlines required by such Clearing System.

4.  To ensure that your vote is counted, you must: (a) complete the Ballot; (b) indicate your decision either to accept or reject the Plan in Item 1 of the Ballot; and (c) sign and return the Ballot in accordance with the instructions received, **so that this Ballot (if "pre-validated" by the relevant Direct Participant) is actually received by the Information and Tabulation Agent at velvet@glas.agency by the Voting Deadline**. If you are returning your Ballot to the Direct Participant that provided you with this Ballot, your completed Ballot must be sent to the relevant Direct Participant, allowing sufficient time for the relevant Direct Participant to receive your Ballot and transmit the Ballot to the Information and Tabulation Agent so that it is actually received by the Voting Deadline. The relevant Direct Participant is authorized to disseminate the Solicitation Packages and voting instructions to, and collect voting information from, Beneficial Holders according to its customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.

5.  The Information and Tabulation Agent will not accept Ballots by facsimile or other electronic means (other than by email at velvet@glas.agency for pre-validated ballots only). If you are directed by the relevant Direct Participant to submit the Ballot to the Direct Participant via electronic means, such instructions to the relevant

Direct Participant shall have the same effect as if you had completed and returned a physical Ballot to the relevant Direct Participant, including all certifications.

6.    The time by which a Ballot including your vote is **actually received** by the Information and Tabulation Agent at velvet@glas.agency shall be the time used to determine whether a Ballot has been submitted by the Voting Deadline.  **The Voting Deadline is December 11, 2025 at 4:00 p.m., prevailing Central Time**.

7.    If a Ballot is received after the Voting Deadline, it will not be counted unless the Company determines otherwise or as permitted by applicable law or court order.  In all cases, Beneficial Holders should allow sufficient time to ensure timely delivery.  No Ballot should be sent to the Company or the Company's financial or legal advisors. A Ballot will not be counted unless received by the Information and Tabulation Agent.

8.    If a Beneficial Holder simultaneously casts inconsistent duplicate Ballots, with respect to the same Claim, such Ballots will not be counted.

9.    The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and to make certain certifications with respect thereto.  Accordingly, at this time, creditors should not surrender certificates or instruments representing or evidencing their Claims, and the Company will not accept delivery of any such certificates or instruments surrendered together with a Ballot.

10.   The Ballot does not constitute, and shall not be deemed to be:  (a) a Proof of Claim; or (b) an assertion or admission with respect to any Claim.

11.   Please be sure to sign and date your Ballot.  If you are completing the Ballot on behalf of an Entity, indicate your relationship with that Entity and the capacity in which you are signing.

12.   You must vote your entire Claim in the Voting Class either to accept or reject the Plan and may not split your vote.  Accordingly, a Ballot that partially rejects and partially accepts the Plan as to the Voting Class will not be counted as a vote to accept or reject the Plan as to that Class.

13.   Any Ballot that is properly completed, executed, and timely returned to the Company that fails to indicate acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.

14.   The following Ballots will not be counted in determining the acceptance or rejection of the Plan:  (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder; (b) any Ballot cast by a Person or Entity that does not hold a Claim in a Class that is entitled to vote on the Plan; (c) any unsigned Ballot; (d) any Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan; and/or (e) any Ballot submitted by a party not entitled to cast a vote with respect to the Plan.

15.   If you hold Claims or Interests in more than one Class under the Plan or for different Claims within a Class you may receive more than one Ballot.  Each Ballot votes only your Claims or Interests indicated on that Ballot. Please complete and return each Ballot you receive.

16.   For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular Class will be aggregated and treated as if such creditor held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided*, that if separate affiliated entities hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such creditor held one Claim in such Class, and the vote of each affiliated entity will be counted separately as a vote to accept or reject the Plan.

---

**If you have any questions regarding the Plan Solicitation, you need additional voting materials, if you did not receive a copy of the Disclosure Statement or Plan, or if you need additional copies of the enclosed materials, please contact the Claims and Noticing Agent at <u>KPInquiries@Stretto.com</u>, with a copy to the Information and Tabulation Agent at <u>Velvet@glas.agency</u>.**

**<u>PLEASE SUBMIT YOUR BALLOT PROMPTLY</u>**

**Exhibit A**

The relevant Direct Participant may have checked a box below to indicate the ISIN to which this Ballot pertains, or otherwise provided that information to you on a label or schedule attached to this Ballot:

| | **CLASS 4 – SECOND LIEN SECURED NOTES ISIN** |
|---|---|
| ☐ | ISIN:  XS3056028171 |
| ☐ | ISIN:  XS3056028502 |

18

**<u>Exhibit 5</u>**

**Opt-Out Form**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KLEOPATRA FINCO S.À R.L., *et al.*,[1] | ) | Case No. 25-90642 (CML) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

NOTICE OF (I) NON-VOTING STATUS OF CERTAIN
CLAIMS AND INTERESTS AND (II) OPPORTUNITY FOR HOLDERS OF
SUCH CLAIMS OR INTERESTS TO OPT OUT OF THE PLAN RELEASE

**THIS NOTICE AND OPT-OUT FORM AFFECTS YOUR LEGAL RIGHTS. PLEASE READ THIS OPT-OUT FORM CAREFULLY.**

**UNLESS YOU CHECK THE BOX IN <u>ITEM 2</u> OF THE ATTACHED OPT-OUT FORM, YOU WILL BE HELD TO FOREVER RELEASE CERTAIN PARTIES, INCLUDING, BUT NOT LIMITED TO, (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) THE DIP LENDERS; (D) THE AGENTS (INCLUDING THE DIP AGENT); (E) HOLDERS OF FIRST LIEN CLAIMS; (F) THE MEMBERS OF THE AD HOC GROUP; (G) THE CONSENTING SENIOR CREDITORS; (H) HOLDERS OF SECOND LIEN CLAIMS; (I) THE CASTLEKNIGHT FUNDS; (J) THE SVP FUNDS; (K) HOLDERS OF CLAIMS OR INTERESTS WHO VOTE TO ACCEPT THE PLAN OR ARE PRESUMED TO ACCEPT THE PLAN AND DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES SET FORTH HEREIN; (L) HOLDERS OF CLAIMS OR INTERESTS WHO ABSTAIN FROM VOTING ON THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES SET FORTH THEREIN; (M) HOLDERS OF CLAIMS OR INTERESTS WHO VOTE TO REJECT THE PLAN OR ARE DEEMED TO REJECT THE PLAN BUT DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES SET FORTH THEREIN.**

**IF YOU DO NOT WANT TO GIVE THESE RELEASES, YOU MUST CHECK THE BOX IN <u>ITEM 2</u> OF THE ATTACHED OPT-OUT FORM, COMPLETE THIS OPT-FORM, SIGN IT, AND RETURN IT SO IT IS ACTUALLY RECEIVED BY THE CLAIMS AND NOTICING AGENT ON OR BEFORE 4:00 P.M. PREVAILING CENTRAL TIME ON DECEMBER 11, 2025.**

On November 4, 2025 Kleopatra Finco S.à r.l. and certain of its affiliates (collectively, the "<u>Debtors</u>," and together with their non-debtor affiliates, the "<u>Company</u>") commenced solicitation of votes on the *Joint Prepackaged Plan of Reorganization of Kleopatra*

---

[1]   A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://cases.stretto.com/Klockner.  The location of Kleopatra Finco S.à r.l.'s principal place of business and the Debtors' service address in in these Chapter 11 Cases is 46A, Avenue J.F. Kennedy, L-1855 Luxembourg, R.C.S. Luxembourg.

*Finco S.à r.l. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplemented from time to time, and including all exhibits and supplements thereto, the "Plan") prior to the filing of these Chapter 11 Cases (the "Solicitation Date").  On the Solicitation Date, the Debtors, among other things, distributed the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of Kleopatra Finco S.à r.l. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplemented from time to time, and including all exhibits and supplements thereto, the "Disclosure Statement")[2] to Holders of First Lien Claims and Holders of Second Lien Claims, in each case, as of the First Lien SFA Loans Voting Record Date[3] and the Noteholders Voting Record Date[4] (collectively, the "Voting Record Dates").

The Bankruptcy Court can confirm the Plan and bind you if the Plan is accepted by the Holders of at least two thirds in amount and more than one half in number of the Claims in each Impaired Class who vote on the Plan and if the Plan otherwise satisfies the applicable requirements of section 1129(a) Bankruptcy Code.  If the Plan is confirmed by the Court, it will be binding on you even though you are not entitled to vote on the Plan and are deemed to accept or reject, as applicable and set forth below, the Plan pursuant to section 1126(f) or 1126(g), respectively and as applicable, of the Bankruptcy Code.  As further described below, in order to opt out of the Third Party Plan Release (defined below), you must complete, sign and return this Opt Out Form to the Claims and Noticing Agent by no later than 4:00 p.m. (prevailing Central Time) on December 11, 2025.

You are receiving this notice and the attached opt-out form because you are a Holder or potential Holder of a Claim or Interest in one of the following Plan classes (the "Non-Voting Classes") as of the Voting Record Date.  As such, you are (1) either presumed to accept or deemed to reject the Plan, and as a result, **not** entitled to vote on the Plan; and (2) entitled to opt out of the releases provided by the Plan.

| Class | Claims and Interests | Status | Voting Rights |
|-------|----------------------|--------|---------------|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 5 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 8 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

---

[2]   Capitalized terms used but not defined herein have the meanings set forth in the Plan or the Disclosure Statement, as applicable.

[3]   "First Lien SFA Loans Voting Record Date" is October 30, 2025.

[4]   "Noteholders Voting Record Date" is the individualized date in which each Holder of First Lien Secured Notes and Second Lien Secured Notes submits their respective votes on the Plan and thereby blocks the amount of their Claims entitled to vote on the Plan.

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 9 | KH2 Equity Interests and KPA Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

If the Plan is confirmed and consummated, Holders of Allowed Claims and Interests in the Non-Voting Classes will receive the following treatment on the Effective Date:

- All Allowed Other Secured Claims will receive, except to the extent a Holder of An Allowed Other Secured Claim agrees to less favorable treatment of its Allowed Claim, in full and final satisfaction of such Other Secured Claim, at the option of the applicable Debtor or the Reorganized Debtors in consultation with the Required Consenting Senior Creditors either: (i) payment in full in cash of its Allowed Other Secured Claim; (ii) the collateral securing its Allowed Other Secured Claim; (iii) Reinstatement of its Allowed Other Secured Claim; or (iv) such other treatment rendering its Allowed Other Secured Claim Unimpaired.

- All Allowed Other Priority Claims will receive, except to the extent that a holder of an Allowed Other Priority Claim agrees to less favorable treatment, in full and final satisfaction of such Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim or such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

- All Allowed General Unsecured Claims shall, in full and final satisfaction of such General Unsecured Claim, either (i) be Reinstated; or (ii) receive such other treatment rendering such General Unsecured Claims Unimpaired.

- All Allowed Section 510(b) Claims shall be cancelled, released, discharged, and extinguished, and will be of no further force or effect, and Holders of Section 510(b) Claims will not receive any distribution on account of such Section 510(b) Claims.

- All KH2 Equity Interests and KPA Equity Interests shall be cancelled, released, discharged, extinguished, and will be of no further force or effect. Holders of KH2 Equity Interests and KPA Equity Interests shall receive no recovery or distribution on account thereof and each Holder of a KH2 Equity Interest and KPA Equity Interest shall not receive or retain any distribution, property, or other value on account of such KH2 Equity Interest or KPA Equity Interest.

**Additionally, the Plan contains release, exculpation, injunction, and discharge provisions set forth in <u>Article VIII</u> of the Plan, INCLUDING A THIRD-PARTY RELEASE IN <u>ARTICLE VIII.D</u> OF THE PLAN (THE "<u>THIRD-PARTY RELEASE</u>"). SUCH PROVISIONS IN <u>ARTICLE VIII</u> OF THE PLAN ARE COPIED IN THE ATTACHED OPT-OUT FORM.**

**YOU WILL BE DEEMED TO HAVE CONSENTED, AND BE BOUND BY, TO THE THIRD-PARTY PLAN RELEASE SET FORTH IN ARTICLE VIII.D OF THE PLAN UNLESS YOU CHECK THE OPT-OUT BOX IN THE ATTACHED OPT-OUT FORM**

**AND COMPLETE AND SUBMIT THE OPT-OUT FORM IN ACCORDANCE WITH THE INSTRUCTIONS SET FORTH THEREIN.**

      Your rights are described in the Plan and Disclosure Statement.  Copies of the Plan, the Disclosure Statement, and any other publicly-filed documents in the Chapter 11 Cases are available free of charge, as applicable, by: (a) visiting the Debtors' restructuring website at http://cases.stretto.com/Klockner;  (b)emailing  KPInquiries@Stretto.com  (with "Kleopatra – Solicitation Inquiries" in the subject line); or (c) calling the Claims and Noticing Agent at (833) 212-0915 (USA or Canada) (toll-free) or +1 (949) 273-2457 (International).  You may also obtain copies of any pleadings filed in the Chapter 11 Cases via PACER at https://www.pacer.gov (for a fee).

\*  \*  \*  \*  \*  \*

## OPTIONAL OPT-OUT FORM FOR PLAN RELEASES

If the Plan is confirmed and consummated, the releases set forth in Article VIII of the Plan (the "Plan Releases") shall apply. **THE PLAN RELEASES INCLUDE A THIRD-PARTY RELEASE SET FORTH IN ARTICLE VIII.D OF THE PLAN (THE "THIRD-PARTY RELEASE") AND COPIED BELOW, ALONG WITH CERTAIN RELEVANT DEFINITIONS.**

You are receiving this Plan Releases opt-out form (this "Opt-Out Form") because you are a Holder or potential Holder of a Claim or Interest in a Non-Voting Class as of Voting Record Date. Holders of Claims or Interests in a Non-Voting Class are entitled to opt out of the Third-Party Plan Release as provided herein.

The Third-Party Plan Release provides as follows:[5]

**Except as otherwise provided in the Plan or the Confirmation Order to the contrary, on and after the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, pursuant to section 1123(b) of the Bankruptcy Code, in each case except for Claims arising under, or preserved by, the Plan, to the fullest extent permitted under applicable law, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each and every Releasing Party, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claims or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action arising at any time prior to the Effective Date, including any Avoidance Actions and any derivative claims assert, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, existing on or before the Effective Date, contingent or noncontingent, in law, equity, contract, tort, or otherwise, including any derivative Claims asserted or assertable on behalf of any of the Debtors, that such Entities would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, or their Estates or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, and their Estates (including the capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the purchase, sale, or recission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts,**

---

[5]    The Plan also contains Debtor releases and exculpation and injunction provisions, set forth in Articles VIII.A, VIII.C, VIII.E, VIII.D, and VIII.F of the Plan, respectively. Unless you otherwise are included in the definition of Released Parties, you must be a Releasing Party (*i.e.*, a Holder of a Claim or Interest that does not opt out of the Third Party Release) to receive the Plan Releases.

intercompany transactions between or among a Debtor and another Debtor or Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or Filing of the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Facility, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Documents, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Facility, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Documents, the Disclosure Statement, the Plan, or the Plan Supplement, before or during the Chapter 11 Cases, or any Restructuring Transactions, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable Law, the filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the Consent Solicitation, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan and the Restructuring Transactions, including the issuance or distribution of Securities pursuant to the Restructuring Transactions and/or Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the Exit Facility Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any Claim or obligation arising under the Plan, or (b) any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for

hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

**Certain Definitions Related to the Third-Party Plan Release**

Under the Plan, **"Related Party"** means, each of, and in each case solely in its capacity as such, current and former directors, managers, officers, committee members, members of any Governing Body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors.

Under the Plan, "**Released Parties**" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Lenders; (d) the Agents (including the DIP Agent); (e) Holders of First Lien Claims; (f) the members of the Ad Hoc Group; (g) the Consenting Senior Creditors; (h) Holders of Second Lien Claims; (i) the CastleKnight Funds; (j) the SVP Funds; (k) the Factors; (l) Holders of Claims or Interests who vote to accept the Plan or are presumed to accept the Plan and do not affirmatively opt out of the releases set forth therein; (m) Holders of Claims or Interests who abstain from voting on the Plan and who do not affirmatively opt out of the releases set forth therein; (n) Holders of Claims or Interests who vote to reject the Plan or are deemed to reject the Plan but do not affirmatively opt out of the releases set forth therein; (o) each current and former Affiliate of each Entity in clause (a) through the following clause (p); and (p) each Related Party of each Entity in clause (a) through clause (o); provided that, in each case, an Entity shall not be a Released Party if it: (i) affirmatively opts out of the releases in the Plan; or (ii) timely objects to the releases in the Plan and such objection is not resolved before the Confirmation Hearing.

Under the Plan, **"Releasing Parties"** means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Lenders; (d) the Agents (including the DIP Agent); (e) Holders of First Lien Claims; (f) the members of the Ad Hoc Group; (g) the Consenting Senior Creditors; (h) Holders of Second Lien Claims; (i) the CastleKnight Funds; (j) the SVP Funds; (k) the Factors; (l) Holders of Claims or Interests who vote to accept the Plan or are presumed to accept the Plan and do not affirmatively opt out of the releases set forth therein; (m) Holders of Claims or Interests who abstain from voting on the Plan and who do not affirmatively opt out of the releases set forth therein; (n) Holders of Claims or Interests who vote to reject the Plan or are deemed to reject the Plan but do not affirmatively opt out of the releases set forth therein; (o) each current and former Affiliate of each Entity in clause (a) through the following clause (p); and (p) each Related Party of each Entity in clause (a) through clause (o); provided that, in each case, an Entity shall not be a Releasing Party if it: (i) affirmatively opts out of the releases in the Plan; or (ii) timely objects to the releases in the Plan and such objection is not resolved before the Confirmation Hearing.

7

> **YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY PLAN RELEASE UNLESS YOU CHECK THE OPT-OUT BOX IN ITEM 2 BELOW AND COMPLETE AND SUBMIT THIS OPT-OUT FORM BY DECEMBER 11, 2025 AND IN ACCORDANCE WITH THE INSTRUCTIONS BELOW.**

**Item 1.** **Claims or Interests Held.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of the following Claims and/or Interests in the aggregate amount(s) specified below (insert amount(s) in applicable box(es) below):

☐      Class 1 Other Secured Claims

☐      Class 2 Other Priority Claims

☐      Class 5 General Unsecured Claims

☐      Class 8 Section 510(b) Claims

☐      Class 9 KPA Equity Interests

**Item 2.** **Third-Party Plan Release Opt Out**

☐      The undersigned elects to **OPT OUT** of the Third-Party Plan Release so that it will not apply to me, the undersigned.

**Item 3.** **Certifications.**

By signing this Opt-Out Form, the undersigned certifies that:

(a)      as of the Voting Record Date, either:  (i) the entity is the Holder of the Claims/Interests set forth in Item 1; or (ii) the entity is an authorized signatory for an entity that is a Holder of the Claims/Interests set forth in Item 1;

(b)      the entity has received a copy of the notice to which this Opt-Out Form is attached and is submitting this Opt-Out Form pursuant to the terms and conditions set forth therein;

(c)      the entity has submitted the same election with respect to the Third-Party Plan Release for all Claims and Interests in a single Class set forth in Item 1; and

(d)      no other Opt-Out Forms with respect to Claims/Interests set forth in Item 1 have been submitted or, if any other Opt-Out Forms have been submitted with respect to such Claims/Interests, then any such earlier Opt-Out Forms are hereby revoked.

| | |
|---|---|
| Name of Holder: | |
| | (Print or type) |
| Signature: | |
| Name of Signatory: | |
| | (If other than Holder) |
| Title: | |
| Address: | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |

## INSTRUCTIONS FOR SUBMITTING THIS OPT-OUT FORM
## PLEASE RETURN YOUR OPT-OUT FORM PROMPTLY

**For this Opt-Out Form to be valid and effective, it must be completed and signed as provided above and returned to the Claims and Noticing Agent by <u>one</u> of the following methods so as to be <u>actually</u> <u>received</u> by the Claims and Noticing Agent on or before December 11, 2025 at 4:00 p.m., prevailing Central Time.**

| <u>If by First-Class Mail to:</u> | <u>If by Hand Delivery or Overnight Mail:</u> |
|---|---|
| Kleopatra Finco S.à r.l. Ballot Processing Center<br>c/o Stretto<br>410 Exchange, Suite 100<br>Irvine, CA 92602 | Kleopatra Finco S.à r.l. Ballot Processing Center<br>c/o Stretto<br>410 Exchange, Suite 100<br>Irvine, CA 92602 |

### OR

**By electronic, online submission:**

To submit your Opt-Out Form via the online portal, visit https://cases.stretto.com/Klockner. Click on the "E-Ballot" section of the website and follow the instructions to submit **your Opt-Out Form**.

The E-Ballot Portal is the sole manner in which Opt-Out Forms will be accepted via electronic or online transmission. Opt-Out Forms submitted by facsimile, email, or other means of electronic transmission will not be counted.

**Holders who submit an Opt-Out Form using the online portal should NOT also submit a paper Opt-Out.**

**<u>Important Information Regarding Releases under the Plan</u>**

The Plan includes the following release, exculpation, and injunction provisions:[6]

<u>Article VIII.C: Releases by the Debtors</u>

**Except as otherwise provided in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, their Estates, the Reorganized Debtors, and any Person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative Claims, asserted or assertable on behalf of any of the Debtors, Reorganized Debtors, and their Estates, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, contingent or noncontingent, in Law, equity, contract, tort or otherwise, that the Debtors, their Estates, or the Reorganized Debtors, including any successors to the Debtors or any Estate representatives appointed or selected, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, their Estates, or other Entity, or that any holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof), the purchase, sale, or recission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, any related adversary proceedings, intercompany transactions between or among a Debtor and another Debtor or an Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into**

---

[6]   The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  You should read the Plan before completing this Ballot.

or filing of the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan, any other Definitive Document, or any Restructuring Transactions before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Disclosure Statement or the Plan, the solicitation of votes with respect to the Plan, the Consent Solicitation, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any Causes of Action identified in the Schedule of Retained Causes of Action, *provided* that, for the avoidance of doubt, no Causes of Action against any Consenting Stakeholder shall be included on such Schedule of Retained Causes of Action, (ii) any post Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or Agreement (including any Definitive Document, the Exit Facility Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any Claim or obligation arising under the Plan, or (iii) any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

Article VIII.D: Releases by Third Parties

  **Except as otherwise provided in the Plan or the Confirmation Order to the contrary, on and after the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, pursuant to section 1123(b) of the Bankruptcy Code, in each case except for Claims arising under, or preserved by, the Plan, to the fullest extent permitted under applicable law, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each and every Releasing Party, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claims or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action arising at any time prior to the Effective Date, including any Avoidance Actions and any derivative claims assert, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, existing on or before the Effective Date, contingent or noncontingent, in law, equity, contract, tort, or otherwise, including any derivative Claims asserted or assertable on behalf of any of the Debtors, that such Entities would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, or their Estates or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, and their Estates (including the capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the purchase, sale, or recission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor or Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or Filing of the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Facility, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Facility, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan, or the Plan Supplement, before or during the Chapter 11 Cases, or any Restructuring Transactions, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable**

Law, the filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the Consent Solicitation, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan and the Restructuring Transactions, including the issuance or distribution of Securities pursuant to the Restructuring Transactions and/or Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the Exit Facility Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any Claim or obligation arising under the Plan, or (b) any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

Article VIII.E:  Exculpation

Notwithstanding anything contained in the Plan to the contrary, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or Third-Party Release, effective as of the Effective Date, no Exculpated Party shall have or incur liability or obligation for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any Claim arising from the Petition Date through the Effective Date related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the RSA and related prepetition transactions, the Bridge Facilities, the Bridge Facility Agreement, the Definitive Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Disclosure Statement, the Plan, the Plan Supplement, the Restructuring Transactions, the DIP Facility, the DIP Documents, or any wind down transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any

Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) in connection with the RSA and related prepetition transactions, the Bridge Facilities, the Bridge Facility Agreement, the Definitive Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan, the Plan Supplement, the Restructuring Transactions, the DIP Facility, the DIP Documents, any preference, fraudulent transfer, or other avoidance Claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Restructuring Transactions, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

Article VIII.G:  Injunction

Except as otherwise expressly provided in the Plan or in the Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that have been extinguished, released, discharged, or are subject to exculpation, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, and the Released Parties:   (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has timely filed a motion with the Bankruptcy Court expressly requesting the right to perform such setoff, subrogation or recoupment on or before the Effective Date, and notwithstanding an indication of a Claim, Interest, or Cause of Action or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, the Reorganized Debtors, the Exculpated

Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as applicable, subject to Article VIII.C, Article VIII.D, and Article VIII.E hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim not released or subject to exculpation under the Plan, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party

*   *   *   *   *