United States Bankruptcy Court
Southern District of Texas

**ENTERED**

December 16, 2025

Nathan Ochsner, Clerk

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|   |   |   |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| KLEOPATRA FINCO S.À R.L., *et al.*,[1] | ) | Case No. 25-90642 (CML) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**ORDER (I) APPROVING THE DEBTORS'
DISCLOSURE STATEMENT FOR THE JOINT PREPACKAGED PLAN OF
REORGANIZATION OF KLEOPATRA FINCO S.À R.L. AND ITS DEBTOR
AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE,
(II) CONFIRMING THE JOINT PREPACKAGED PLAN OF REORGANIZATION
OF KLEOPATRA FINCO S.À R.L. AND ITS DEBTOR AFFILIATES PURSUANT TO
CHAPTER 11 OF THE BANKRUPTCY CODE, AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors (collectively, the "Debtors")[2] having:

a.  on November 4, 2025:

   i.  entered into the restructuring support agreement (as may be amended, modified, or supplemented from time to time, the "RSA") with holders of (1) over two-thirds of the First Lien Claims and (2) over two-thirds of the Second Lien Claims;

   ii.  commenced solicitation of votes to accept or reject the Plan by, among other

---

[1]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Klockner.  The location of Kleopatra Finco S.à r.l.'s principal place of business and the Debtors' service address in these chapter 11 cases is 46A, Avenue J.F. Kennedy, L-1855 Luxembourg, R.C.S. Luxembourg.

[2]  Capitalized terms used but not defined in these findings of fact, conclusions of law, and order (collectively, this "Confirmation Order") have the meanings ascribed to them in the *Amended Joint Prepackaged Plan of Reorganization of Kleopatra Finco S.à r.l. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 235] (as modified, amended, or supplemented from time to time, the "Plan," a copy of which is attached hereto as **Exhibit A**) or the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of Kleopatra Finco S.à r.l. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 6] (including all exhibits attached thereto, and as modified, amended, or supplemented from time to time, the "Disclosure Statement"), as applicable.  The rules of interpretation set forth in Article I.B of the Plan apply herein.

things, commencing service of the Solicitation Packages[3] to Holders of Claims in Class 3 (First Lien Claims) and Class 4 (Second Lien Claims), in accordance with the applicable provisions of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"); and

b.   after commencing solicitation of votes to accept or reject the Plan, on November 4, 2025 (the "Petition Date"), commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code;

c.   on November 5, 2025, filed:

   i.   the *Declaration of Marc Rotella, Chief Financial Officer of Kleopatra Finco S.à r.l., in Support of First Day Motions* [Docket No. 4] (the "First Day Declaration"), detailing the facts and circumstances of these Chapter 11 Cases;

   ii.   the Debtors' first-day pleadings;

   iii.   the *Joint Prepackaged Plan of Reorganization of Kleopatra Finco S.à r.l. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 5];

   iv.   the Disclosure Statement [Docket No. 6]; and

   v.   the Scheduling Motion, including the Ballots attached as Exhibits 3A, 3B, and 4 thereto [Docket No. 7];

d.   obtained, on November 5, 2025, entry of the *Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Establishing a Plan and Disclosure Statement Objection Deadline and Related Procedures, (III) Approving the Solicitation Procedures, (IV) Approving the Combined Hearing Notice, (V) Waiving the Requirements for the U.S. Trustee to Convene a Meeting of Creditors, (VI) Waiving the Requirements for the Debtors to File (A) Schedules and SOFAs and (B) Rule 2015.3 Financial Reports, and (VII) Granting Related Relief* [Docket No. 83] (the "Scheduling Order"), approving:

---

[3]   The solicitation packages (the "Solicitation Packages") included (a) the Plan; (b) the Disclosure Statement (including all exhibits attached thereto); and (c) the respective Ballots for voting classes as outlined in, and attached as exhibits to, the *Debtors' Emergency Motion for Entry of an Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Establishing a Plan and Disclosure Statement Objection Deadline and Related Procedures, (III) Approving the Solicitation Procedures, (IV) Approving the Combined Hearing Notice, (V) Waiving the Requirements for the U.S. Trustee to Convene a Meeting of Creditors, (VI) Waiving the Requirements for the Debtors to File (A) Schedules and SOFAs and (B) Rule 2015.3 Financial Reports, and (VII) Granting Related Relief* [Docket No. 7] (the "Scheduling Motion").

i. the *Notice of (I) Commencement of Prepackaged Chapter 11 Bankruptcy Cases; (II) Hearing Approving the Disclosure Statement, Confirming the Joint Prepackaged Chapter 11 Plan, and Related Matters; and (III) Objection Deadlines and Summary of the Debtors' Joint Prepackaged Chapter 11 Plan* (the "Combined Hearing Notice"), attached to the Scheduling Order as Exhibit 1, which contained notice of the commencement of these Chapter 11 Cases, the date and time set for the Combined Hearing, and the deadline for filing objections to the Plan and Disclosure Statement;

ii. the notice of publication attached as Exhibit 2 to the Scheduling Order (the "Publication Notice");

iii. the Ballots attached to the Scheduling Order as Exhibits 3A, 3B, and 4; and

iv. the *Notice of (I) Non-Voting Status of Certain Claims and Interests and (II) Opportunity for Holders of Such Claims or Interests to Opt Out of the Plan Release* (the "Opt-Out Form"), attached to the Scheduling Order as Exhibit 5, that was distributed to Holders of Claims in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 5 (General Unsecured Claims), Class 8 (Section 510(b) Claims), and Class 9 (KH2 Equity Interests and KPA Equity Interests);

e. on November 5, 2025, filed the *Certificate of Service* regarding the Debtors' prepetition service of solicitation materials on Holders of Claims in Class 3 (First Lien Claims) [Docket No. 46], and, on December 3, 2025, filed the *Amended Certificate of Service* regarding the Debtors' prepetition service of solicitation materials on Holders of Claims in Class 3 (First Lien Claims) and Class 4 (Second Lien Claims) [Docket No. 194] (together with the Proof of Publication (as defined below), the "Affidavits").

f. on or before November 10, 2025, commenced service of (a) the Opt-Out Form, and (b) the Combined Hearing Notice on Holders of Claims or Interests deemed to accept or reject the Plan;

g. on November 10, 2025, and November 13, 2025, respectively, published a version of the Publication Notice, modified for publication in *The New York Times* (national and international edition), as evidenced by Proof of Publication of The New York Times [Docket No. 143] and the Proof of Publication of The New York Times International Edition [Docket No.142] (collectively, the "Proof of Publication").

h. on December 4, 2025, filed the *Plan Supplement for the Debtors' Joint Prepackaged Plan of Reorganization of Kleopatra Finco S.à r.l. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 203] (as modified, amended, or supplemented from time to time, the "Plan Supplement" and which, for purposes of the Plan and this Confirmation Order, is included in the definition of "Plan");

3

i.    on December 14, 2025, filed:

    i.    the *Declaration of Gary D. Begeman in Support of Confirmation of the Joint Prepackaged Plan of Reorganization of Kleopatra Finco S.à r.l. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 230] (the "Begeman Declaration");

    ii.    the *Declaration of Brent Herlihy in Support of Confirmation of the Joint Prepackaged Plan of Reorganization of Kleopatra Finco S.à r.l. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 231] (the "Herlihy Declaration");

    iii.    the *Declaration of Jonathan C. Hickman in Support of (I) Approval of the Debtors' Disclosure Statement on a Final Basis and (II) Confirmation of the Joint Prepackaged Plan of Reorganization of Kleopatra Finco S.à r.l. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 232] (the "Hickman Declaration" and, together with the Herlihy Declaration and the Begeman Declaration, the "Confirmation Declarations"); and

    iv.    the *Declaration of Leticia Sanchez on behalf of Stretto, Inc. Regarding the Solicitation and Tabulation of Votes on the Joint Prepackaged Plan of Reorganization of Kleopatra Finco S.à r.l. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, which detailed the results of the Plan voting process [Docket No. 233] (the "Voting Report").

j.    on December 15, 2025, filed the *Amended Joint Prepackaged Plan of Reorganization of Kleopatra Finco S.à r.l. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 235].

k.    operated their businesses and managed their properties during these Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

The United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") having:

a.    reviewed the solicitation procedures in the Scheduling Motion regarding votes to accept or reject the Plan (the "Solicitation Procedures");

b.    heard the statements and arguments made by counsel with respect to the approval of the requested relief in the Scheduling Motion, including the approval of the Solicitation Procedures and the Confirmation Schedule (as defined in the Scheduling Motion), and approved the relief requested therein;

c.    taken notice of the Plan, the Disclosure Statement, the Scheduling Motion, the Plan Supplement, the Confirmation Brief, the Confirmation Declarations, the Voting

Report, the Combined Hearing Notice, the Affidavits, and all filed pleadings, exhibits, statements, and comments regarding approval of the Disclosure Statement and Confirmation of the Plan, including any and all objections, statements, and reservations of rights;

d.  reviewed the discharge, compromises, settlements, releases, exculpations, and injunctions set forth in Article VIII of the Plan;

e.  held a hearing on December 16, 2025, at 1:00 p.m., prevailing Central Time, pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code to consider approval of the Disclosure Statement and Confirmation of the Plan (the "Combined Hearing");

f.  heard the statements and arguments made by counsel in respect of both approval of the Disclosure Statement and Confirmation of the Plan;

g.  considered all oral representations, testimony, documents, filings, and other evidence regarding both approval of the Disclosure Statement and Confirmation; and

h.  taken judicial notice of all pleadings and other documents filed, all orders entered, and all evidence and arguments presented in these Chapter 11 Cases.

NOW, THEREFORE, it appearing to the Bankruptcy Court that notice of the Combined Hearing and the opportunity for any party in interest to object to both approval of the Disclosure Statement and Confirmation were adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and that the legal and factual bases set forth in the documents filed in support of both approval of the Disclosure Statement and Confirmation and other evidence presented at the Combined Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court makes and issues the following findings of fact and conclusions of law, and orders:

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.     Findings and Conclusions.**

1.      The determinations, findings, judgments, decrees, orders, and conclusions set forth herein and in the record of the Combined Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.     Jurisdiction, Venue, and Core Proceeding.**

2.      The Bankruptcy Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. § 1334.  The Bankruptcy Court has exclusive jurisdiction to determine whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  Approval of the Disclosure Statement and Confirmation of the Plan are core proceedings as defined in 28 U.S.C. § 157(b)(2).

**C.     Eligibility for Relief.**

3.      The Debtors were and are Entities eligible for relief under section 109 of the Bankruptcy Code, and the Debtors are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

**D.     Commencement and Joint Administration of these Chapter 11 Cases.**

4.      On the Petition Date, each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  On November 5, 2025, the Bankruptcy Court entered an order [Docket No. 47] authorizing the procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.  Since

the Petition Date, the Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

**E.     Committee.**

5.     On November 17, 2025, the U.S. Trustee appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 152], and on November 21, 2025, reconstituted the Committee [Docket No. 170]. On November 25, 2025, following the resignation of the members of the Committee, the Committee was disbanded [Docket No. 178].

**F.     Burden of Proof—Confirmation of the Plan.**

6.     The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of section 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation. In addition, and to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard.

**G.     Notice.**

7.     As evidenced by the Affidavits and the Voting Report, the Debtors provided due, adequate, and sufficient notice of the commencement of these Chapter 11 Cases, the Disclosure Statement, the Plan (and the opportunity to opt out of the Third-Party Release therein), the Plan Supplement, and the Combined Hearing, in compliance with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, including Bankruptcy Rules 2002(b), 3017, 3019, and 3020(b), the Bankruptcy Local Rules, and the Scheduling Order. Further, the Plan, Disclosure Statement, Scheduling Order, Combined Hearing Notice, and all other documents filed in these Chapter 11 Cases were and continue to be available at no charge to all members of the public on

7

the case website maintained by the Claims and Noticing Agent at: http://cases.stretto.com/Klockner.  No other or further notice is or shall be required.

### H. Disclosure Statement.

8. The Disclosure Statement contains (a) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations, including the Securities Act, and (b) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein.  The filing of the Disclosure Statement with the clerk of the Bankruptcy Court satisfied Bankruptcy Rule 3016(b). The Debtors' use of the Disclosure Statement in solicitation of acceptances of the Plan is approved and the Disclosure Statement is approved on a final basis pursuant to this Confirmation Order.

### I. Ballots.

9. Class 3 (First Lien Claims) and Class 4 (Second Lien Claims) are the only classes of claims entitled under the Plan to vote to accept or reject the Plan (the "Voting Classes").

10. The ballots the Debtors used to solicit votes to accept or reject the Plan from Holders of Claims in the Voting Classes (the "Ballots") adequately addressed the particular needs of these Chapter 11 Cases and were appropriate for Holders of Claims in the Voting Classes to vote to accept or reject the Plan.

### J. Solicitation.

11. The solicitation of votes on the Plan was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable rules, laws, and regulations, including the Securities Act.

12.     As described in the Confirmation Declarations, the Voting Report, the Affidavits, the Scheduling Motion, and the Confirmation Brief, prior to the Petition Date, the Debtors caused the Solicitation Packages to be transmitted and served to (a) all Holders of Class 3 First Lien SFA Claims that held such Claims as of October 30, 2025 (the "First Lien SFA Loans Voting Record Date") and (b) all Holders of Class 3 First Lien Secured Notes Claims and Class 4 Claims as set forth in the Scheduling Order as of the Noteholders Voting Record Date,[4] in compliance with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Bankruptcy Local Rules, and any applicable non-bankruptcy law.  The posting and service of the Solicitation Packages were timely, adequate, and sufficient under the facts and circumstances of these Chapter 11 Cases.  The establishment and notice of the Voting Record Dates were reasonable and sufficient, and the period during which the Debtors solicited votes to accept or reject to the Plan was a reasonable and sufficient period for Holders of Claims in the Voting Classes to make an informed decision to accept or reject the Plan and complies with Bankruptcy Rule 2002 and 17 CFR§ 240. 14e-1(a), to the extent applicable.  None of the post-solicitation technical modifications to the Plan merit re-solicitation.  No other or further notice or opportunity to vote on the Plan is or shall be required.

13.     Under section 1126(f) of the Bankruptcy Code, Holders of Claims in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), and Class 5 (General Unsecured Claims) (collectively, the "Unimpaired Classes") are Unimpaired and conclusively presumed to have accepted the Plan.  The Debtors were not required to solicit votes from the Holders of Claims and

---

[4]     To facilitate solicitation of the First Lien Secured Notes and Second Lien Secured Notes, the Debtors established a separate voting record date for First Lien Secured Noteholders and Second Lien Secured Noteholders (the "Noteholders Voting Record Date" and, together with the First Lien SFA Loans Voting Record Date, collectively, the "Voting Record Dates").  The Noteholders Voting Record Date was the individualized date in which each Holder of First Lien Secured Notes and Second Lien Secured Notes submitted their respective votes on the Plan and thereby blocked the amount of their Claims entitled to vote on the Plan.

Interests in Class 8 (Section 510(b) Claims) and Class 9 (KH2 Equity Interests and KPA Equity Interests) (collectively, the "Deemed Rejecting Classes"), which were Impaired and deemed to reject the Plan under the Bankruptcy Code.  Holders of Claims and Interests in Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests) (such Classes together with the Unimpaired Classes and the Deemed Rejecting Classes, the "Non-Voting Classes") are Unimpaired and conclusively presumed to have accepted the Plan (to the extent Reinstated) or are Impaired and deemed to reject the Plan (to the extent cancelled), and, in either event, are not entitled to vote to accept or reject the Plan.  No further notice shall be required for Holders of Claims in Non-Voting Classes.

### K.      Voting.

14.      As evidenced by the Voting Report, the procedures used to solicit and tabulate the Ballots were fair, reasonable, and conducted in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Disclosure Statement, and any applicable nonbankruptcy law, rule, or regulation.  As evidenced by the Voting Report, each of the Voting Classes voted to accept the Plan with respect to each Debtor.

### L.      Plan Supplement.

15.      The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the filing and notice of such documents are good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules, and all other applicable rules, laws, and requirements, and no other or further notice is required.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan and the RSA (including, for the avoidance of doubt, any consent rights set forth or incorporated therein), the Debtors reserve the right to alter, amend, update, or modify, in each case in whole or in part, and to add additional documents to, the Plan Supplement before the

10

Effective Date.  The Debtors served the Plan Supplement on all members of the Voting Classes and made the Plan Supplement publicly available on the Claims and Noticing Agent's website. No other or further notice is or shall be required.

### M.   Compliance with Bankruptcy Code Requirements—Section 1129(a)(1).

16.   The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code.  In addition, the Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

### (i)   Proper Classification—Sections 1122 and 1123.

17.   The Plan satisfies the requirements of sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.  Article III of the Plan provides for the separate classification of Claims and Interests into nine Classes.  Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests.  The classification scheme contained in the Plan does not reflect any improper purpose and does not unfairly discriminate between, or among, Holders of Claims or Interests.  Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.

### (ii)   Specified Unimpaired Classes—Section 1123(a)(2).

18.   The Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code. Article III of the Plan specifies the Unimpaired Classes within the meaning of section 1124 of the Bankruptcy Code:

| Class | Designation |
| --- | --- |
| Class 1 | Other Secured Claims |
| Class 2 | Other Priority Claims |
| Class 5 | General Unsecured Claims |

19.   Additionally, Article II of the Plan specifies that Allowed Administrative Claims, Priority Tax Claims, DIP Claims, Professional Fee Claims, Restructuring Expenses, Factoring

Program Superpriority Claims, and Factoring Program Claims will be paid in full in accordance with the terms of the Plan; although these Claims are not classified under the Plan.

### (iii)    Specified Treatment of Impaired Classes—Section 1123(a)(3).

20.    The Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code. Article III of the Plan specifies the Claims and Interests in the following Classes that are Impaired (the "Impaired Classes") under the Plan within the meaning of section 1124 of the Bankruptcy Code:

| Class | Designation |
| --- | --- |
| Class 3 | First Lien Claims |
| Class 4 | Second Lien Claims |
| Class 8 | Section 510(b) Claims |
| Class 9 | KH2 Equity Interests and KPA Equity Interests |

21.    For the avoidance of doubt, Holders of Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests) are Unimpaired, and conclusively presumed to accept the Plan, or are Impaired, and deemed to reject the Plan, and, in either event, are not entitled to vote to accept or reject the Plan.

### (iv)    No Discrimination—Section 1123(a)(4).

22.    The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code. The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.

### (v)    Adequate Means for Plan Implementation—Section 1123(a)(5).

23.    The Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code. Article IV of the Plan, the exhibits and attachments to the Plan, the Plan Supplement, and the Disclosure Statement, provide, in detail, adequate and proper means for the Plan's implementation, including, without limitation:  (a) the general settlement of Claims and Interests; (b) authorization

12

to effectuate the Restructuring Transactions, including all Exit Facility Documents and related security agreements and mortgages; (c) the vesting of authority in the Reorganized Debtors; (d) the funding and sources of consideration for distributions under the Plan, including the Cash on hand, New Equity Interests, and the Exit Facility; (e) the preservation of each Debtor's corporate existence after the Effective Date; (f) the vesting of assets in the Reorganized Debtors; (g) the cancellation of all notes, instruments, certificates and other documents evidencing Claims or Interests, including credit agreements, note purchase agreements, and indentures; (h) the authorization and approval of certain corporate actions under the Plan; (i) the adoption of the New Organizational Documents by the Reorganized Debtors; (j) the appointment of the New Board and the other Governing Bodies; (k) the effectuation and implementation of other documents and agreements contemplated by, or necessary to effectuate, the transactions contemplated by the Plan; (l) the exemption from certain securities laws; (m) the exemptions consistent with section 1146 of the Bankruptcy Code; (n) the assumption of certain employment obligations; (o) the assumption of the D&O Liability Insurance Policies; (p) the implementation of the Management Incentive Plan; and (q) the preservation of Claims and Causes of Action not released pursuant to the Plan.

**(vi)   Voting Power of Equity Securities—Section 1123(a)(6).**

24.     The Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code. Article IV.I of the Plan provides that the New Organizational Documents will comply with section 1123(a)(6) of the Bankruptcy Code.  The New Organizational Documents will prohibit the issuance of non-voting securities to the extent required by section 1123(a)(6) of the Bankruptcy Code.

**(vii)   Directors and Officers—Section 1123(a)(7).**

25.     The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. Article IV.J of the Plan sets forth the structure of the New Board, which shall consist of directors

13

and a CEO as outlined and designated in accordance with the terms of the Governance Term Sheet set forth in the Plan Supplement.  The other Governing Bodies shall be appointed in accordance with the New Organizational Documents.

### (viii)   Impairment / Unimpairment of Classes—Section 1123(b)(1).

26.     The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code.  Article III of the Plan impairs or leaves Unimpaired each Class of Claims and Interests.

### (ix)   Assumption—Section 1123(b)(2).

27.     The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.  Article V of the Plan provides for the assumption of the Debtors' Executory Contracts and Unexpired Leases, and the payment of Cures, if any, related thereto, not previously assumed, assumed and assigned, or rejected during these Chapter 11 Cases under section 365 of the Bankruptcy Code.  The assumption of Executory Contracts and Unexpired Leases hereunder may include the assignment of certain of such contracts to Affiliates.

### (x)   Compromise and Settlement—Section 1123(b)(3).

28.     In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to the Plan.  The compromises and settlements embodied in the Plan are the result of extensive, arm's-length, good-faith negotiations that, in addition to the Plan, resulted in the execution of the RSA, which preserve value for the Debtors, their Estates, and all their stakeholders, avoid extended, uncertain, time-consuming, and value-destructive litigation, and represent a fair and reasonable compromise of all Claims, Interests, Causes of Action, and controversies, and entry

14

into which represented a sound exercise of the Debtors' business judgment. The compromises and settlements in the Plan are fair, equitable, reasonable, and in the best interests of the Debtors and their Estates and satisfy the requirements of applicable law for approval pursuant to Bankruptcy Rule 9019.

### (xi)   Debtor Release.

29.     Article VIII.C of the Plan describes certain releases granted by the Debtors in accordance with section 1123(b) of the Bankruptcy Code (the "Debtor Release"). The Debtors have demonstrated that the releases provided under the Debtor Release constitute a sound exercise of their business judgment, and the Debtors have otherwise established the propriety of the Debtor Release and satisfied the requirements of Bankruptcy Rule 9019 with respect thereto. Each of the Released Parties has made a substantial contribution to the Plan and to the Debtors' reorganization. The Debtor Release is a necessary and integral element of the Plan, and is fair, equitable, reasonable, and in the best interests of the Debtors, the Estates, and Holders of Claims and Interests. The Debtors' or the Reorganized Debtors' pursuit of any such Claims and Causes of Action against the Released Parties is not in the best interests of the Estates' various constituencies because the costs involved would outweigh any potential benefit from pursuing such Claims and Causes of Action.

30.     The Debtor Release appropriately offers protection to parties who provided consideration to the Debtors and whose participation in the Debtors' restructuring process and these Chapter 11 Cases was and continues to be critical to the Debtors' successful implementation of the Restructuring Transactions and emergence. Specifically, the Released Parties under the Plan made significant concessions and contributions to these Chapter 11 Cases, including by actively supporting the Plan and these Chapter 11 Cases. In particular, the Holders of First Lien Claims and the Holders of Second Lien Claims comprise the Voting Classes and voted in favor of

the Plan. The Consenting Senior Creditors, the CastleKnight Funds, and the SVP Funds have supported and committed to continue to support the Debtors' restructuring pursuant to the RSA. The Consenting First Lien Secured Creditors agreed to equitize their secured claims to facilitate the reorganization efforts of the Debtors and negotiated for the use of their cash collateral, which provided liquidity necessary to fund the administration of these Chapter 11 Cases. The required Holders of First Lien Claims under the Debtors' prepetition debt documents also provided crucial forbearances on certain events of default under the Senior Facilities Agreement and the First Lien Secured Notes Indenture that provided the Debtors with the necessary runway to file these Chapter 11 Cases in an orderly manner, and provided the Prepetition Bridge Financing, and the DIP Facility, which enabled the Company to fund operations and the costs of the Restructuring Transactions prior to and during the pendency of these Chapter 11 Cases.

31. The Debtor Release for the Debtors' current and former directors and officers is appropriate because the Debtors' directors, officers, and managers share an identity of interest with the Debtors, supported and made substantial contributions to the success of the Plan and these Chapter 11 Cases, and actively participated in meetings, and negotiations during these Chapter 11 Cases. Further, the DIP Lenders and DIP Agent provided the DIP Facility, which was a necessary component to fund these Chapter 11 Cases to emergence. Additionally, the First Lien SFA Agent, the First Lien Secured Notes Trustee, and the Second Lien Secured Notes Trustee consented to the Debtors' use of cash collateral, and the Factors agreed to continue the Factoring Program during these Chapter 11 Cases, providing the Debtors with necessary liquidity to maintain operations. In sum, the Released Parties played an integral role in the formulation of the Plan, made significant contributions that are essential to the Plan's success, and expended significant time and resources analyzing and negotiating the Plan and the issues presented by the Debtors' prepetition capital

structure. The Debtor Release applies solely to those parties who affirmatively supported the Plan and the Debtor Release embodied therein.

32. As such, the Debtor Release is: (a) the result of a sound exercise of the Debtors' business judgment; (b) an essential part of the agreement among those participating in the negotiations and formulation of the Plan; (c) in exchange for the good and valuable consideration provided by or on behalf of the Released Parties; (d) a good faith settlement and compromise of the Claims and Causes of Action released herein negotiated at arm's-length; (e) in the best interests of the Debtors, their Estates, all Holders of Claims and Interests, and any other parties in interest; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) without limiting the Debtor Release, a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates from asserting any Claim or Cause of Action released pursuant to the Debtor Release. Further, as described in the Begeman Declaration, the Special Committee analyzed and considered all potential Claims and Causes of Action held by the Debtors and determined that the Debtor Release was appropriate and necessary under the circumstances. In light of the foregoing, the Debtor Release is approved.

### (xii)   Release by Holders of Claims and Interests.

33. Article VIII.D of the Plan describes certain releases granted by the Releasing Parties (the "Third-Party Release"). The Third-Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of such Claims and Causes of Action; (e) in the best interests of the Debtors, their Estates, Holders of Claims and Interests, and all other parties in interest; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

17

34.     The Third-Party Release is an integral part of the Plan.  Similar to the Debtor Release, the Third-Party Release was integral to the formulation of the Plan.  Like the Debtor Release, the Third-Party Release was critical to incentivizing parties to support the Plan, facilitated participation in the RSA, the Plan, and the chapter 11 process generally, and prevented potentially significant, time-consuming, and value-depleting litigation.  The Third-Party Release was a core negotiation point and an integral component of the RSA and was instrumental in developing a Plan that maximized value for all of the Debtors' stakeholders.  As such, the Third-Party Release appropriately offers certain protections to parties who constructively participated in the Debtors' restructuring process by, among other things, supporting the Plan.

35.     The Third-Party Release is consensual as to all relevant parties, including all Releasing Parties, and such parties were provided notice of these Chapter 11 Cases, the Plan, and the deadline to object to Confirmation of the Plan, received the Combined Hearing Notice and the Opt-Out Form or a Ballot, as applicable, and were properly informed that the Holders of Claims against or Interests in the Debtors that did not check a prominently featured and clearly labeled box on the applicable Ballot or Opt-Out Form, returned in advance of the Voting Deadline, would be deemed to have expressly, unconditionally, generally, individually, and collectively consented to the release and discharge of all Claims and Causes of Action against the Debtors and the Released Parties.  Furthermore, the Third-Party Release provides that any Entity shall not be a Released Party if it opts out of, or timely objects to, the Third-Party Release.  Additionally, the release provisions of the Plan were conspicuous, emphasized with boldface type in the Plan, the Disclosure Statement, the Ballots, the Opt-Out Form, and the Combined Hearing Notice.  Additionally, the Opt-Out Form contains information on how to return the Opt-Out Form by mail

18

and how to access an electronic online portal whereby a Holder can opt out of the Third-Party Release.

36.     The Third-Party Release provides finality for the Debtors, the Reorganized Debtors, and the Released Parties regarding the parties' respective obligations under the Plan and with respect to the Reorganized Debtors.  The Third-Party Release is specific in language, is integral to and a condition of the compromises and settlements embodied in the Plan, and is appropriately tailored under the facts and circumstances of these Chapter 11 Cases.  The Combined Hearing Notice sent to Holders of Claims and Interests and published in *The New York Times* on November 10, 2025, and *The New York Times International Edition* on November 13, 2025, and the Ballots sent to all Holders of Claims and Interests entitled to vote on the Plan, in each case, unambiguously stated that the Plan contains the Third-Party Release.  The Releasing Parties were given due and adequate notice of the Third-Party Release, including the deadline to object to, or opt out of, the Third-Party Release, and thus the Third-Party Release is consensual under controlling precedent in the Fifth Circuit as to those Releasing Parties that did not timely object or elect to opt out of granting the Third-Party Release.  The Third-Party Release is authorized and approved.

### (xiii)   Exculpation.

37.     The exculpation provision set forth in Article VIII.E of the Plan and incorporated into this Confirmation Order is essential to the Plan.  The record in these Chapter 11 Cases fully supports the exculpation and the exculpation provision set forth in Article VIII.E of the Plan, which are appropriately tailored to protect the Debtors and the Exculpated Parties from inappropriate litigation.  The exculpation, including the carve-out for actual fraud, willful misconduct, or gross negligence are consistent with section 1125(e) of the Bankruptcy Code.  The Debtors and the Exculpated Parties subject to the exculpation provision have, and upon entry of this Confirmation

19

Order will be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable Law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan, or such distributions made pursuant to the Plan.

### (xiv)   Injunction.

38.      The injunction provision set forth in Article VIII.F of the Plan is necessary to implement, preserve, and enforce the Debtors' discharge, the Debtor Release, the Third-Party Release, and exculpation provision.  The injunction provisions are appropriately tailored to achieve those purposes.  Without limiting Article VIII.F of the Plan, and notwithstanding anything to the contrary in this Confirmation Order, no Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Exculpated Parties or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as applicable, subject to the terms of the Plan, without the Bankruptcy Court (a) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim not released or subject to exculpation under the Plan, and (b) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Exculpated Party or Released Party.

### (xv)   Preservation of Claims and Causes of Action.

39.      Article IV.Q of the Plan appropriately provides that the Reorganized Debtors will retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, in accordance with section 1123(b)(3)(B) of the Bankruptcy Code.  The Reorganized Debtors' rights to commence,

prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VIII of the Plan. The provisions regarding the preservation of Causes of Action in the Plan, including the Schedule of Retained Causes of Action, are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests.

### (xvi)   Release of Liens.

40.     The release and discharge of all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates (and the exceptions to such release and discharge provided in the Exit Facility Documents, the Factoring Program Documents, the Plan, this Confirmation Order, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan) described in Article VIII.B of the Plan (the "Release of Liens") are necessary to implement the Plan. The provisions of the Release of Liens are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

### (xvii)   Additional Plan Provisions—Section 1123(b)(6).

41.     The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

### (xviii)   Cure of Defaults—Section 1123(d).

42.     Article V.C of the Plan provides for the satisfaction of Cures associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code. The Debtors or the Reorganized Debtors, as applicable, shall pay the Cure amount, if any, on the Effective Date or as soon as reasonably practicable thereafter. Unless

otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease with the consent of the Required Consenting Senior Creditors, all requests for payment of Cures that differ from the amounts paid or proposed to be paid, including in the ordinary course, by the Debtors or the Reorganized Debtors to a counterparty must be Filed with the Bankruptcy Court on or before thirty (30) days after the Effective Date. Any such request that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court. Any Cure shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Reorganized Debtors of the Cure in the Debtors' ordinary course of business; provided that nothing in the Plan shall prevent the Reorganized Debtors from paying any Cure despite the failure of the relevant counterparty to File such request for payment of such Cure. The Reorganized Debtors also may settle any Cure without any further notice to or action, order, or approval of the Bankruptcy Court with the consent of the Required Consenting Senior Creditors. In addition, any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan must be Filed with the Bankruptcy Court on or before thirty (30) days after the Effective Date. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.

43.     If there is any dispute regarding any Cure, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of the Cure amount shall occur as soon as reasonably practicable after entry of a Final Order

22

resolving such dispute, approving such assumption (and, if applicable assignment), or as may be agreed upon by the Debtors or the Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.

### N. Debtors' Compliance with the Bankruptcy Code—Section 1129(a)(2).

44. The Debtors complied with the applicable provisions of the Bankruptcy Code and, thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code. Specifically, each Debtor:

a. is an eligible debtor under section 109 of the Bankruptcy Code, and a proper proponent of the Plan under section 1121(a), of the Bankruptcy Code;

b. has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

c. complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Bankruptcy Local Rules, any applicable nonbankruptcy law, rule, regulation, and all other applicable Law, in transmitting the Solicitation Packages, and related documents and notices, and in soliciting and tabulating the votes on the Plan.

### O. Plan Proposed in Good Faith—Section 1129(a)(3).

45. The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors proposed the Plan in good faith and not by any means forbidden by law, and all acceptances and rejections of the Plan were solicited and submitted in good faith and not by any means forbidden by law. In so determining, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan, the Plan Supplement, the RSA, all Definitive Documents, the process leading to Confirmation of the Plan, including the overwhelming support of Holders of Claims for the Plan, and the transactions to be implemented pursuant thereto. The Debtors and their agents filed these Chapter 11 Cases and proposed the Plan in good faith with the legitimate purpose of allowing the Debtors to implement the Restructuring Transactions on an expedited timeline so as to minimize disruption to the Debtors' business

operations, reorganize, and emerge from bankruptcy with a capital and organizational structure that will allow the Reorganized Debtors to conduct their business and satisfy their obligations with sufficient liquidity.   Further, the directors and officers of the Debtors at all relevant times comported with the highest standards of business judgment and good faith.

### P.     Payment for Services or Costs and Expenses—Section 1129(a)(4).

46.     The procedures set forth in the Plan for the Bankruptcy Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

### Q.     Directors, Officers, and Insiders—Section 1129(a)(5).

47.     An appointment process for the Reorganized Debtors' directors and officers proposed to serve after the Effective Date was disclosed in the Plan Supplement.  Accordingly, the Debtors satisfy the requirements of section 1129(a)(5) of the Bankruptcy Code.

### R.     No Rate Changes—Section 1129(a)(6).

48.     Section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases.

### S.     Best Interest of Creditors—Section 1129(a)(7).

49.     The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The Liquidation Analysis attached to the Disclosure Statement as Exhibit D, the Hickman Declaration, and the other evidence related thereto in support of the Plan that was proffered or adduced at, prior to, or in connection with the Combined Hearing:  (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that Holders of Allowed Claims and

Interests in each Class will recover at least as much under the Plan on account of such Claim or Interest, as of the Effective Date, as such Holder would receive if the Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code.

**T.      Acceptance by Certain Classes—Section 1129(a)(8).**

50.      Classes 1, 2, and 5 constitute Unimpaired Classes, each of which is conclusively presumed to accept the Plan in accordance with section 1126(f) of the Bankruptcy Code. The Voting Classes (Classes 3 and 4) voted to accept the Plan. Classes 6 and 7 are conclusively presumed to accept the Plan (to the extent reinstated) or are Impaired and deemed to reject the Plan (to the extent canceled), and, in either event, are not entitled to vote to accept or reject the Plan. The Deemed Rejecting Classes (Classes 8 and 9) are conclusively deemed to reject the plan and consequently are not entitled to vote on the Plan.

**U.      Treatment of Claims Entitled to Priority under Section 507(a) of the Bankruptcy Code—Section 1129(a)(9).**

51.      The treatment of Allowed Administrative Claims, Priority Tax Claims, DIP Claims, Factoring Program Superpriority Claims, and Professional Fee Claims under Article II of the Plan, and of Other Priority Claims, under Article III of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**V.      Acceptance by At Least One Impaired Class—Section 1129(a)(10).**

52.      The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As evidenced by the Voting Report, the Voting Classes each voted to accept the Plan by the requisite numbers and amount of Claims, without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code), specified under the Bankruptcy Code.

**W.     Feasibility—Section 1129(a)(11).**

53.     The Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code. The Financial Projections attached to the Disclosure Statement as <u>Exhibit C</u>, the Hickman Declaration, and the other evidence supporting Confirmation of the Plan proffered or adduced by the Debtors at, or prior to, the Combined Hearing:  (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; (d) establish that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of, the Reorganized Debtors or any successor to the Reorganized Debtors under the Plan, except as provided in the Plan; and (e) establish that the Reorganized Debtors will have sufficient funds to meet their obligations under the Plan.

**X.     Payment of Fees—Section 1129(a)(12).**

54.     The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code. Article XII of the Plan provides for the payment of all fees payable by the Debtors under 28 U.S.C. § 1930(a).

**Y.     Continuation of Retiree Benefits—Section 1129(a)(13).**

55.     The Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code. Article IV.N of the Plan provides that the Debtors shall (a) assume all employment agreements, indemnification agreements, or other employment-related agreements entered into with current or former employees as of the Petition Date or (b) enter into new agreements with such employees on terms and conditions acceptable to the Debtors, the Required Consenting Senior Creditors, and such employees.

**Z.      Non-Applicability of Certain Sections—Sections 1129(a)(14), (15), and (16).**

56.      Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.  The Debtors owe no domestic support obligations, are not individuals, and each of the Debtors is a moneyed, business, or commercial corporation.

**AA.      Only One Plan—Section 1129(c).**

57.      The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code. The Plan is the only chapter 11 plan filed in each of these Chapter 11 Cases.

**BB.      Principal Purpose of the Plan—Section 1129(d).**

58.      The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

**CC.      Small Business Case—Section 1129(e).**

59.      None of these Chapter 11 Cases are a "small business case," as that term is defined in the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

**DD.      Good Faith Solicitation—Section 1125(e).**

60.      The Exculpated Parties, the directors and officers of any of the Debtors, each of the Debtors and Reorganized Debtors, the DIP Agent and DIP Lenders, and with respect to the foregoing, the Related Parties thereto, have acted fairly, in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code, and in a manner consistent with the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations in connection with all of their respective activities relating to support and consummation of the Plan, including the execution, delivery, and performance of the RSA, the solicitation and tabulation of votes on the Plan, and the activities described in section 1125 of the Bankruptcy Code, as applicable, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

61. The Debtors and their agents participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(g), with regard to the offering, issuance, and distribution of recoveries under the Plan and therefore are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan, so long as such distributions are made consistent with and pursuant to the Plan.

**EE.   Satisfaction of Confirmation Requirements.**

62. Based on the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**FF.   Satisfaction of Conditions Precedent to the Effective Date.**

63. The Plan shall not become effective unless and until the conditions set forth in Article IX.A of the Plan have been satisfied or waived in accordance with Article IX.B of the Plan.

**GG.   Implementation.**

64. All documents and agreements necessary to implement the Plan, including those contained in the Plan Supplement, the Definitive Documents, and all other relevant and necessary documents, have been or will be negotiated in good faith and at arm's-length, are in the best interests of the Debtors, and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law.

**HH.   Disclosure of Facts.**

65. The Debtors disclosed all material facts regarding the Plan, including with respect to consummation of the Restructuring Transactions, and the fact that each Debtor will emerge from

its respective Chapter 11 Case as a validly existing separate corporate entity, limited liability company, partnership, or other form, as applicable.

**II.    Good Faith.**

66.    The Debtors proposed the Plan in good faith and not by any means prohibited by law, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of their stakeholders.  The Plan accomplishes this goal.  The Plan is the product of extensive, good faith, arm's-length negotiations among the Debtors and their principal constituencies, including the Consenting Stakeholders.  Accordingly, the Debtors, the Released Parties, and the Exculpated Parties have been, are, and will continue to be acting in good faith within the meaning of section 1125(e) of the Bankruptcy Code if they proceed to:  (a) consummate the Restructuring Transactions in accordance with the Plan and the agreements, settlements, transactions, transfers, and other actions contemplated thereby, regardless of whether such agreements, settlements, transactions, transfers, and other actions are expressly authorized by this Confirmation Order; and (b) take any actions authorized and directed or contemplated by this Confirmation Order.

## ORDER

IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

67.    **Disclosure Statement.**  The Disclosure Statement is **APPROVED** in all respects.

68.    **Confirmation of the Plan.**  The Plan is approved in its entirety and **CONFIRMED** under section 1129 of the Bankruptcy Code.  The terms of the Plan, including the Plan Supplement (including any supplements, amendments, or modifications thereof in accordance with this Confirmation Order and the Plan) and the Definitive Documents, are incorporated by reference into and are an integral part of this Confirmation Order.

69.     **Deemed Acceptance of Plan.**    In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims who voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to accept the Plan.

70.     **No Action Required.**   Under section 1142(b) of the Bankruptcy Code and any other comparable provisions under applicable law, no further action of the respective directors, managers, or members of the Debtors is required to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, the Restructuring Transactions, and any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan, including the Definitive Documents.

71.     The transactions described in the Plan (as may be subsequently amended, modified, or supplemented from time to time consistent with the Plan), the Plan Supplement (as may be subsequently amended, modified, or supplemented from time to time consistent with the Plan), the Definitive Documents, and this Confirmation Order, including the Restructuring Transactions or other transactions as set forth in, or contemplated by, the Restructuring Steps Plan, are hereby approved.  Whether prior to, on or after the Effective Date, as applicable, and without any further order of the Court, the Debtors, the Reorganized Debtors, all Holders of Claims and Interests, as applicable, and their respective directors, managers, officers, employees, members, agents, attorneys, financial advisors, and investment bankers, are hereby authorized, directed, and empowered pursuant to section 1142(b) of the Bankruptcy Code and any other applicable law to, and shall take any action that the Debtors or Reorganized Debtors determine are reasonably necessary, advisable, or appropriate to implement, effectuate, and consummate the Plan, the Plan Supplement, the Definitive Documents, the Restructuring Transactions, or any other transaction

30

set forth in, contemplated by, or consistent with the Restructuring Steps Plan (as may be modified, amended, or supplemented consistent with the Plan), or this Confirmation Order.

72. **Binding Effect.**  Upon the occurrence of the Effective Date, the terms of the Plan (including, for the avoidance of doubt, the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are presumed to have accepted or deemed to reject the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all Non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  For the avoidance of doubt, upon the occurrence of the Effective Date, recipients of New Equity Interests and Exit Financing Loans or Notes shall become bound by the New Organizational Documents and Exit Facility Documents (as applicable) regardless of whether or not such recipients actually return signature pages thereto.

73. **Incorporation by Reference.**  The terms and provisions of the Plan, the Plan Supplement, this Confirmation Order, the Definitive Documents, all other relevant and necessary documents, and each of the foregoing's schedules and exhibits shall, on and after the Effective Date, be incorporated herein by reference and are an integral part of this Confirmation Order.

74. **Vesting of Assets in the Reorganized Debtors.**  Except as otherwise provided in this Confirmation Order, the Plan, or any agreement, instrument, or other document incorporated herein, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, Causes of Action, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, this Confirmation Order, or

31

any agreement, instrument, or other document incorporated in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.  For the avoidance of doubt, no Reorganized Debtor shall be treated as being liable on any Claim that is discharged pursuant to the Plan.  After the Effective Date, a certified copy of this Confirmation Order may be filed with the appropriate clerk or recorded with the recorder of any federal, state, province, country, or local authority whether foreign or domestic, to effectuate the transfer of all property in each Estate to each respective Reorganized Debtor, vesting the Reorganized Debtors with all right, title, and interest of the Debtors to the property in each Estate, free and clear of all Liens, Claims, Interests, and other encumbrances of record.  The terms and provisions of the Plan, the Plan Supplement, this Confirmation Order, the Definitive Documents, all other relevant and necessary documents, and each of the foregoing's schedules and exhibits shall, on and after the Effective Date, be binding in all respects upon, and shall inure to the benefit of, the Debtors and Reorganized Debtors, the Debtors' Estates and their creditors, and their respective successors and assigns, any affected third parties, all Holders of Claims and Interests, whether known or unknown, against the Debtors, including, but not limited to any trustees, examiners, administrators, responsible state officers, estate representatives, or similar entities for the Debtors, if any, subsequently appointed in any of these Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of these Chapter 11 Cases, and each of their respective affiliates, successors, and assigns.

75.    **Cancellation of Existing Securities, Agreements, and Interests.**    On the Effective Date and subject to the effectiveness of the Exit Facility, (unless otherwise specified in

the Restructuring Steps Plan) the Exit Facility, the Factoring Program Documents, or to the extent otherwise provided in the Plan or this Confirmation Order (including to the extent any DIP Claim is refinanced and/or converted into the Exit Facility), as applicable, all notes, instruments, certificates, credit agreements, note purchase agreements, indentures, and other documents evidencing Claims (including, for the avoidance of doubt, the First Lien Secured Notes Indenture, the Second Lien Secured Notes Indenture, the Senior Facilities Agreement, and all related collateral and credit documentation), KH2 Equity Interests, or KPA Equity Interests, shall, be cancelled, and any rights of any Holder in respect thereof shall be deemed cancelled and of no force or effect, and all prior, present and future obligations and liabilities, actions, suits, accounts or demands, covenants, and indemnities (both actual and contingent), of the Debtors and any Non-Debtor Affiliates, or any other parties thereunder, or in any way related thereto, shall be deemed satisfied in full, released, cancelled, discharged, and of no force or effect, and the Agents/Trustees and each of the lenders and holders and their respective agents, successors and assigns, shall each be automatically and fully released and discharged of and from all duties and obligations thereunder without any need for further action or approval by the Bankruptcy Court or for a Holder to take further action.

76.     **Effectiveness of All Actions.**  All actions contemplated by the Plan, including all actions in connection with or pursuant to the RSA and the Definitive Documents, may be modified, in accordance with their respective terms, from time to time prior to the Effective Date (including, without limitation, any restructuring transaction steps set forth in one or more exhibits to the Plan Supplement), are hereby effective and authorized to be taken on, prior to, or after the Effective Date, as applicable, under this Confirmation Order, without further application to, or order of the Bankruptcy Court, or further action by the respective officers, directors, managers, or members of

33

the Debtors or the Reorganized Debtors and with the effect that such actions had been taken by the unanimous action, consent, approval and vote of each of such officers, directors, managers, or members.

77. **Restructuring Transactions.** The Debtors or the Reorganized Debtors, as applicable, are authorized to enter into and effectuate the Restructuring Transactions contemplated by the Plan, the RSA and the other Definitive Documents, and to take any actions as may be necessary or appropriate to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan (including, for the avoidance of doubt, the Plan Supplement) that are consistent with and pursuant to the terms and conditions of the Plan and the Restructuring Steps Plan, including the transactions described in Article IV.B of the Plan. Any transfers of assets or equity interests effectuated or any obligations incurred through the Restructuring Transactions are hereby approved and shall not constitute fraudulent conveyances or fraudulent transfers or otherwise be subject to avoidance. To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, all transfers contemplated herein and in the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, transfer tax, sales tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

78. **Distributions.** The provisions governing distributions contained in Article VI of the Plan are approved in their entirety. The distributions and payments made pursuant to the Plan

shall be permanent, irrevocable, and indefeasible and shall not be subject to avoidance, turnover, recharacterization or adjustment in any respect unless otherwise specifically provided in the Plan or this Confirmation Order.

79.     **Claims Register.**  Any duplicate Claim or any Claim that has been paid, satisfied, amended, or superseded may be adjusted or expunged (including pursuant to the Plan) on the Claims Register by the Debtors or Reorganized Debtors or the Claims and Noticing Agent without the Debtors or Reorganized Debtors having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim and without any further notice to or action, order, or approval of the Bankruptcy Court.

80.     **Exit Facility.**  On the Effective Date, the Reorganized Debtors shall enter into the Exit Facility, pursuant to the Exit Facility Documents and which terms shall be in all respects consistent with the RSA and the Plan.  Confirmation of the Plan shall constitute (a) approval of the Exit Facility and the Exit Facility Documents and the transactions contemplated thereby; and (b) authorization for the Debtors and the Reorganized Debtors, as applicable, to take any and all actions necessary or appropriate to consummate the Exit Facility, including executing and delivering the Exit Facility Documents, in each case, without any further notice to or order of the Bankruptcy Court.  On the Effective Date, the Exit Facility shall be issued and distributed as provided for in the Restructuring Steps Plan pursuant to, and in accordance with, the Plan.  On the Effective Date, all of the Liens and security interests to be granted by the Debtors or Reorganized Debtors, as applicable in accordance with the Exit Facility Documents: (a) shall be deemed to be granted; (b) shall be legal, valid, binding, automatically perfected, non-avoidable, first-priority and enforceable Liens on, and security interests in, the applicable collateral specified in the Exit Facility Documents; and (c) shall not be subject to avoidance, recharacterization, or equitable

subordination for any purposes whatsoever and shall not constitute preferential transfers, fraudulent transfers, or fraudulent conveyances under the Bankruptcy Code or any applicable nonbankruptcy law. The Exit Facility Documents shall be binding on all parties party to the Exit Facility. For the avoidance of doubt, upon the occurrence of the Effective Date, recipients of Exit Financing Loans or Notes shall become bound by Exit Facility Documents regardless of whether or not such recipients actually return signature pages thereto.

81.    **Factoring Program Documents.**    Confirmation of the Plan shall constitute (a) approval of the Factoring Program in its entirety; (b) authorization to continue the Factoring Program upon and following the Effective Date; (c) authorization of the Factoring Program Documents and the transactions contemplated thereby; and (d) authorization for the Debtors and the Reorganized Debtors, as applicable, to take any and all actions necessary or appropriate to continue the Factoring Program, including authorization to enter into any amendments to the Factoring Program Documents and execute any documentation to effectuate the continuation of the Factoring Program upon and following the Effective Date, without any further notice to or order of the Bankruptcy Court. On the Effective Date, any Allowed Factoring Claims in existence shall be Reinstated in accordance with the terms of the Factoring Program Documents. Without limiting the rights of any other party in interest, the transfers of the Receivables by the Participants in the Factoring Program, whether occurring prior to or subsequent to the Effective Date, shall constitute non-recourse true sales under applicable non-bankruptcy law and are hereby deemed true sales for fair consideration and are not otherwise voidable or avoidable. On the Effective Date, all of the Liens and security interests to be granted by the Debtors or Reorganized Debtors, as applicable, in accordance with the Factoring Program Documents: (a) shall be deemed to be granted; (b) shall be legal, valid, binding, automatically perfected, non-avoidable, first-priority and

36

enforceable Liens on, and security interests in, the applicable collateral specified in the Factoring Program Documents; and (c) shall not be subject to avoidance, recharacterization, or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers, fraudulent transfers, or fraudulent conveyances.  For the avoidance of doubt, nothing in the Plan or this Confirmation Order shall alter or modify any Factoring Program Document, which shall be amended only by agreement of the Factors and Participants in accordance with the Factoring Program Documents, and which shall otherwise remain in full force and effect as of the Effective Date.

82.     **Issuance of the New Equity Interests.**  On the Effective Date, subject to the terms and conditions of the Plan and the Restructuring Steps Plan, New Kleo Holdco or Reorganized KH2, as applicable (the "New Equity Issuer"), shall issue the New Equity Interests, which distribution or issuance shall be governed by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, including the New Organizational Documents, which terms and conditions shall bind each Entity receiving such distribution or issuance.  The issuance of the New Equity Interests, including equity awards reserved for the Management Incentive Plan, shall be authorized without the need for any further corporate action or without any further action by the Debtors or Reorganized Debtors.  Any Entity's acceptance of New Equity Interests shall be deemed as its agreement to the New Organizational Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with their terms.  For the avoidance of doubt, upon the occurrence of the Effective Date recipients of New Equity Interests shall become bound by the New Organizational Documents regardless of whether or not such recipients actually return signature pages thereto.

83.     As part of the Plan Supplement, prior to the Effective Date, the Debtors shall file a shareholders agreement (the "Shareholders Agreement") in respect of the New Equity Issuer and the New Equity Interests.  The Shareholders Agreement shall be consistent with the Governance Term Sheet filed as Exhibit D to the Plan Supplement.  Any person receiving New Equity Interests on the Effective Date shall be required to deliver to the Debtors a signature page to the Shareholders Agreement and such other documentation as many be reasonably requested by the Debtors in order to complete the Restructuring Transactions (such documentation, the "Share Delivery Documents"); *provided* that Shareholders Agreement and the other New Organizational Documents shall be binding on recipients of New Equity Interests regardless of whether or not such recipients actually deliver signature pages thereto.  The Debtors shall be permitted to establish a holding period trust (the terms of which shall be acceptable to the Required Consenting First Lien Creditors, as defined in the RSA) to hold in trust for a period of eighteen (18) months following the Effective Date any New Equity Interests that have not been delivered to a party on account of such party's failure to deliver the Share Delivery Documents.  Upon the expiration of such eighteen-month period, if a party has not delivered the Share Delivery Documents, such party shall not receive New Equity Interests under the Plan, and all right, title, and interest in such New Equity Interests shall be forfeited.

84.     **Distributions Exempt from Securities Laws.**  Pursuant to section 1145 of the Bankruptcy Code, or, to the extent that section 1145 of the Bankruptcy Code is either not permitted or not applicable, section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, Regulation S under the Securities Act, and/or other available exemptions from registration, the offering, issuance, and distribution of the New Equity Interests as contemplated in the Plan and/or the offering, issuance, and distribution of Other Securities, if any, shall be exempt from, among

other things, the registration requirements of section 5 of the Securities Act and any other applicable U.S. federal, state, or local laws requiring registration prior to the offering, issuance, distribution, or sale of Securities.  The offering of such New Equity Interests and/or Other Securities prior to the Petition Date shall be exempt from the registration requirements of the Securities Act in reliance upon section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, and/or in reliance on Regulation S under the Securities Act.

85.     The shares of New Equity Interests and the Other Securities, if any, to be issued under the Plan on account of Allowed Claims in accordance with, and pursuant to, section 1145 of the Bankruptcy Code will be freely transferable under the Securities Act by the recipients thereof, subject to: (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 1145(b) of the Bankruptcy Code, and compliance with applicable securities laws and any rules and regulations of the United States Securities and Exchange Commission or state or local securities laws, if any, applicable at the time of any future transfer of such Securities or instruments; and (b) any restrictions on the transferability of such New Equity Interests and/or Other Securities in the New Organizational Documents.  The Reorganized Debtors need not provide any further evidence other than the Plan or this Confirmation Order to any Entity (including DTC, Euroclear Bank SA/NV and/or Clearstream Banking S.A., any nominee thereof or any transfer agent for the New Equity Interests and/or Other Securities) with respect to the treatment of the New Equity Interests and/or Other Securities to be issued under the Plan under applicable securities laws.

86.     **Compromise of Controversies.**  In consideration for the distributions and other benefits, including releases, provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims, Interests, and controversies settled, compromised,

39

satisfied, or otherwise resolved under the Plan and the entry of this Confirmation Order constitutes approval of such compromise and settlement under Bankruptcy Rule 9019.

87.     **Assumption and Assignment of Contracts and Leases.**  On the Effective Date, any Executory Contract or Unexpired Lease of the Debtors not listed on the Rejected Executory Contract and Unexpired Lease List is deemed to be an Assumed Executory Contract or Unexpired Lease, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, in accordance with the provisions and requirements of section 365 of the Bankruptcy Code, and the payment of Cures, if any, shall be paid in accordance with Article V.C of the Plan.  The Debtors or the Reorganized Debtors, as applicable, may alter, amend, modify, or supplement the Rejected Executory Contract and Unexpired Lease List at any time through and including forty-five (45) days after the Effective Date.

88.     To the maximum extent permitted by Law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the Non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

89.     Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable Cure pursuant to Article V of the Plan, in the amount and at the time dictated by the Debtors' ordinary course of business, shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including

defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.  Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in these Chapter 11 Cases, including pursuant to this Confirmation Order, and for which any Cure has been fully paid pursuant to Article V of the Plan, in the amount and at the time dictated by the Debtors' ordinary course of business, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.

90.     The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan (including the procedures regarding the resolution of any and all disputes concerning the assumption and assignment, as applicable, of such Executory Contracts and Unexpired Leases) shall be, and hereby are, approved in their entirety.

91.     **Indemnification.**  All indemnification provisions in place as of the Effective Date shall be (a) reinstated and remain intact, irrevocable, and shall survive the Effective Date on terms no less favorable to such current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of, or acting on behalf of, the Debtors than the indemnification provisions in place prior to the Effective Date, and (b) shall be assumed by the Reorganized Debtors.

92.     **Authorization to Consummate.**  The Debtors are authorized to consummate the Plan in accordance with the terms thereof after the entry of this Confirmation Order, subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article IX of the Plan.

93.    **Professional Compensation.**  All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court.  The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court allows, including from the Professional Fee Escrow Account, which the Reorganized Debtors will establish in trust for the Professionals and fund with Cash equal to the Professional Fee Amount on the Effective Date.  When all such Allowed amounts owing to Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtors without any further action, order, or approval of the Bankruptcy Court.

94.    From and after the Confirmation Date, (a) any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate and the Debtors or the Reorganized Debtors, as applicable, may employ and pay any Professional without any further notice to or action, order, or approval of the Bankruptcy Court and (b) in advance of or in connection with the Effective Date and entry into the Exit Facility, the Debtors shall be authorized to pay all DIP Fees and Expenses (as defined in the Final DIP Order) without such DIP Fees and Expenses being subject to paragraph 35 of the Final DIP Order.

95.    **Restructuring Expenses.**  The provision governing payment of Restructuring Expenses in Article II.E of the Plan is approved in its entirety.  The payment of all reasonable and documented fees and out-of-pocket expenses incurred by the advisors to the Factors as set forth in Article II.F of the Plan is approved in its entirety.  The provision governing payment of fees, costs,

and expenses of the Disbursing Agent (including the Agents/Trustees) in Article VI.C.2 of the Plan is approved in its entirety.

96. **Release, Exculpation, Discharge, and Injunction Provisions.** The release, exculpation, discharge, and injunction provisions set forth in Article VIII of the Plan are, subject to the occurrence of the Effective Date, approved and authorized in their entirety, and such provisions are effective and binding on all parties and Entities to the extent provided therein.

     a. <u>Discharge of Claims and Termination of Interests</u>.

97. The following discharge of Claims and termination of Interests in Article VIII.A of the Plan is approved:

> **Pursuant to section 1141(d) of the Bankruptcy Code and except as otherwise specifically provided herein, in the Plan, or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided herein shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims that the Debtors resolve or compromise after the Effective Date), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services that employees of the Debtors have performed prior to the Effective Date, and that arise from a termination of employment, any contingent or noncontingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (a) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the holder of such a Claim or Interest has accepted the Plan. Any default or "event of default" by the Debtors with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date. Without prejudice to the distributions, rights, and treatment that are provided by the**

**Plan, this Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date, and, upon the Effective Date, all Holders of such Claims and Interests shall be forever precluded and enjoined, pursuant to Section 524 of the Bankruptcy Code, from prosecuting or asserting any such Claim or Interest against the Debtors, Reorganized Debtors, or any of their assets or property.**

b.      Release of Liens.

98.      The following Release of Liens in Article VIII.B of the Plan is approved:

**Except as otherwise provided in the Exit Facility Documents, the Factoring Program Documents, the Plan, this Confirmation Order, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, benefit, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert and, as applicable, be reassigned, surrendered, reconveyed, or retransferred to the Reorganized Debtors and their successors and assigns. Any Holder of such Secured Claim shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor (including any Cash Collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder, including the Agents/Trustees) and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases. The presentation or filing of this Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

**To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps reasonably requested by the Debtors or the Reorganized Debtors, that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.**

c.      Releases by the Debtors.

99.     The following releases by the Debtors in Article VIII.C of the Plan are approved:

**Except as otherwise provided in the Plan or this Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, their Estates, the Reorganized Debtors, and any Person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative Claims, asserted or assertable on behalf of any of the Debtors, Reorganized Debtors, and their Estates, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, contingent or noncontingent, in Law, equity, contract, tort or otherwise, that the Debtors, their Estates, or the Reorganized Debtors, including any successors to the Debtors or any Estate representatives appointed or selected, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, their Estates, or other Entity, or that any holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof), the purchase, sale, or recission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, any related adversary proceedings, intercompany transactions between or among a Debtor and another Debtor or an Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into or filing of the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Documents, the New Equity Interests,**

the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or this Confirmation Order in lieu of such legal opinion) created or entered into in connection with the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan, any other Definitive Document, or any Restructuring Transactions before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Disclosure Statement or the Plan, the solicitation of votes with respect to the Plan, the Consent Solicitation, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any Causes of Action identified in the Schedule of Retained Causes of Action, *provided* that, for the avoidance of doubt, no Causes of Action against any Consenting Stakeholder shall be included on such Schedule of Retained Causes of Action, (ii) any post-Effective Date obligations of any party or Entity under the Plan, this Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the Exit Facility Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any Claim or obligation arising under the Plan, or (iii) any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair,

**equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.**

    d.      <u>Releases by the Releasing Parties</u>.[5]

100.    The following Third-Party Release in Article VIII.D of the Plan is approved:

**Except as otherwise provided in the Plan or this Confirmation Order to the contrary, on and after the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, pursuant to section 1123(b) of the Bankruptcy Code, in each case except for Claims arising under, or preserved by, the Plan, to the fullest extent permitted under applicable law, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each and every Releasing Party, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claims or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action arising at any time prior to the Effective Date, including any Avoidance Actions and any derivative Claims asserted or assertable on behalf of any of the Debtors, that such Entities would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, or their Estates or other Entity, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, existing on or before the Effective Date, contingent or noncontingent, in law, equity, contract, tort, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, and their Estates (including the capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the purchase, sale, or recission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court**

---

[5]    Notwithstanding anything contrary herein, or in the Plan, any Related Parties of funds and accounts managed by BlackRock Investment Management (UK) Limited or its affiliates that are signatories to the RSA (the "<u>BlackRock Consenting Creditors</u>"), (including any separate branch, trading desk, fund and/or business group of a BlackRock Consenting Creditor) shall not be deemed to be Releasing Parties themselves, unless such Related Party has itself signed the RSA.

restructuring efforts, intercompany transactions between or among a Debtor and another Debtor or Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or Filing of the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Facility, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or this Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the RSA, the Bridge Facilities, the Bridge Facility Agreement, the DIP Facility, the DIP Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program, the Factoring Program Documents, the Disclosure Statement, the Plan, or the Plan Supplement, before or during the Chapter 11 Cases, or any Restructuring Transactions, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable Law, the filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the Consent Solicitation, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan and the Restructuring Transactions, including the issuance or distribution of Securities pursuant to the Restructuring Transactions and/or Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Plan, this Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the Exit Facility Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any Claim or obligation arising under the Plan, or (b) any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding

**that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.**

    e.    <u>Exculpation</u>.

101.    Pursuant to section 1125(e) of the Bankruptcy Code, the following exculpation of the Exculpation Parties in Article VIII.E of the Plan is approved:

**Notwithstanding anything contained in the Plan to the contrary, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or Third-Party Release, effective as of the Effective Date, no Exculpated Party shall have or incur liability or obligation for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any Claim arising from the Petition Date through the Effective Date related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the RSA and related prepetition transactions, the Bridge Facilities, the Bridge Facility Agreement, the Definitive Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Factoring Program), the Factoring Program Documents, the Disclosure Statement, the Plan, the Plan Supplement, the Restructuring Transactions, the DIP Facility, the DIP Documents, or any wind down transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or this Confirmation Order in lieu of such legal opinion) in connection with the RSA and related prepetition transactions, the Bridge Facilities, the Bridge Facility Agreement, the Definitive Documents, the New Equity Interests, the Exit Facility, the Exit Facility Documents, the Disclosure Statement, the Plan, the Plan Supplement, the Restructuring Transactions, the DIP Facility, the DIP Documents, any preference, fraudulent transfer, or other avoidance Claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Restructuring Transactions, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or**

**upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.**

    f.    <u>Injunction</u>.

102.    The following injunction in Article VIII.F of the Plan is approved:

**Except as otherwise expressly provided in the Plan or in this Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan or this Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that have been extinguished, released, discharged, or are subject to exculpation, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, and the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has timely filed a motion with the Bankruptcy Court expressly requesting the right to perform such setoff, subrogation or recoupment on or before the Effective Date, and notwithstanding an indication of a Claim, Interest, or Cause of Action or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan.**

**No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Exculpated Parties or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as applicable, subject to Article VIII.C, Article VIII.D, and Article VIII.E of the Plan, without the Bankruptcy Court (i) first determining, after**

**notice and a hearing, that such Claim or Cause of Action represents a colorable Claim not released or subject to exculpation under the Plan, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Exculpated Party or Released Party.**

**The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.**

103.     **New Organizational Documents.**  On or immediately prior to the Effective Date, except as otherwise provided in the Plan and subject to local Law requirements, the New Organizational Documents shall be automatically adopted or amended by the Reorganized Debtors as may be necessary to effectuate the transactions contemplated by the Plan.  To the extent required under the Plan or applicable non-bankruptcy Law, each of the Reorganized Debtors will file its New Organizational Documents with the Secretaries of State and/or other applicable authorities in its respective state, province, or country of incorporation in accordance with the corporate Laws of the respective state, province, or country of incorporation to the extent such filing is required for each such document.   The New Organizational Documents will, among other things (a) authorize the issuance of the New Equity Interests and (b) prohibit the issuance of non-voting Equity Securities to the extent required under section 1123(a)(6) of the Bankruptcy Code.  After the Effective Date, the Reorganized Debtors may amend and restate their respective New Organizational Documents as permitted by the laws of its jurisdiction of incorporation or formation and in accordance with the terms thereof, and the Reorganized Debtors may file such amended certificates or articles of incorporation, bylaws, or such other applicable formation documents, and other constituent documents as permitted by the Laws of the respective states, provinces, or countries of incorporation or formation and the New Organizational Documents.   For the avoidance of doubt, upon the occurrence of the Effective Date, recipients of New Equity Interests shall be deemed bound by the terms of the New Organizational Documents regardless of whether or not they have actually returned signature pages thereto.

51

104. **Directors and Officers of the Reorganized Debtors.**  As of the Effective Date, the term of the current members of the board of directors or other Governing Body of each of the Debtors shall expire, such current directors shall be deemed to have resigned, and all of the directors for the initial term of the New Board and the other Governing Bodies shall be appointed in accordance with the New Organizational Documents.  Each such member and officer of the Reorganized Debtors shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents and other constituent documents of the Reorganized Debtors.

105. **Compliance with Tax Requirements.**  In connection with the Plan, to the extent applicable, the Debtors, the Reorganized Debtors, the Disbursing Agent, and any applicable withholding or reporting agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, any applicable withholding or reporting agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Debtors and the Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

106. **Documents, Mortgages, and Instruments.**  This Confirmation Order is, and shall be, binding upon and shall govern the acts of all Persons or Entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of

deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and state officials, and corresponding officials in all applicable jurisdictions, both foreign and domestic, and all other Persons and Entities who may be required, by operation of Law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument. Each and every federal, state, local, and foreign government agency is hereby directed to accept any and all documents and instruments necessary, useful, advisable, or appropriate (including financing statements under the applicable uniform commercial code) to effectuate, implement, and consummate the transactions contemplated by the Plan, including the Restructuring Transactions, and this Confirmation Order and, to the extent such Persons or Entities are not identified by the Debtors or Reorganized Debtors, as applicable, after reasonable due inquiry, the Debtors or Reorganized Debtors, as applicable, shall be granted power of attorney to sign on behalf of such Person or Entity.

107. **Continued Effect of Stays and Injunction.** Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays in effect in these Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

108. **Reversal/Stay/Modification/Vacatur of Confirmation Order.** Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of the Bankruptcy Court, or any other court, such reversal, stay, modification, or vacatur shall not affect the validity

or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken under or in connection with the Plan before the Effective Date of any such reversal, stay, modification, or vacatur, including, without limitation, the validity of any obligation, indebtedness, or liability incurred by the Reorganized Debtors.  Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the Effective Date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

109.     **Nonseverability of Plan Provisions Upon Confirmation.**  Each provision of the Plan is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (c) nonseverable and mutually dependent.

110.     **Post-Confirmation Modifications.**   Without need for further order or authorization of the Bankruptcy Court, the Debtors or the Reorganized Debtors, as applicable, are authorized and empowered, to make any and all modifications to any and all documents that are necessary to effectuate the Plan that do not materially modify the terms of such documents and are consistent with the Plan, subject to the terms of the Plan and the RSA.

111.     **Applicable Nonbankruptcy Law.**  The provisions of this Confirmation Order, the Plan and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

112.     **Waiver of Filings.**  Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to File any list, schedule, or statement with the Bankruptcy Court or the U.S. Trustee is permanently waived as to any such list, schedule, or statement not Filed as of the Confirmation Date.

113.     **Reporting.**   After entry of this Confirmation Order, the Debtors or Reorganized Debtors, as applicable, shall have no obligation to File with the Bankruptcy Court, serve on any parties, or otherwise provide any party with any other report that the Debtors or Reorganized Debtors, as applicable, were obligated to provide under the Bankruptcy Code or an order of the Bankruptcy Court, including obligations to provide any reports to any parties otherwise required under the "first" and "second" day orders entered in these Chapter 11 Cases.

114.     **Waiver of Section 341 Meeting of Creditors; Waiver of Schedules and Statements.**   Any requirement under section 341(e) for the United States Trustee to convene a meeting of creditors is permanently waived as of the Confirmation Date.   Any requirement for the Debtors to file schedules of assets and liabilities and statements of financial affairs is permanently waived as of the Confirmation Date.

115.     **Governmental Approvals Not Required.**   This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority with respect to the dissemination, implementation, or consummation of the Plan and the Disclosure Statement, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

116.     **Provisions Regarding Certain Tax Authorities.**   Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall receive Cash equal to the full amount of its Claim or such other treatment in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

117. **Protections Against Discriminatory Treatment.** Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the United States Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of these Chapter 11 Cases (or during these Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in these Chapter 11 Cases.

118. **Provisions Regarding Governmental Units.** Nothing in this Confirmation Order, the Plan, or any Plan Supplement discharges, releases, precludes, enjoins or exculpates: (i) any police or regulatory liability to any Governmental Unit that is not a Claim; (ii) any Claim of a Governmental Unit arising on or after the Confirmation Date; (iii) any liability to a Governmental Unit under police and regulatory statutes or regulations that any entity would be subject to as the owner, lessor, lessee, permittee, controller, or operator of property or a facility after the Effective Date, including, but not limited to, liability for contamination; pollution; hazardous or toxic substances; protection of the environment; and impacts on human health, safety, and welfare; or (iv) any liability of any Non-Debtor to a Governmental Unit. Nor shall anything in this Confirmation Order, the Plan, or any Plan Supplement enjoin or otherwise bar a Governmental Unit from asserting or enforcing any liability described in the preceding sentence or affect any setoff or recoupment rights of any Governmental Unit.

119.     Nothing in this Confirmation Order, the Plan, or any Plan Supplement authorizes the transfer or assignment of any governmental (i) lease, (ii) license, (iii) permit, (iv) registration, (v) authorization, (vi) certification, or (vii) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under non-bankruptcy laws, regulations, and rules (including police or regulatory law or environmental law, or otherwise). For the avoidance of doubt, (A) the Bankruptcy Court retains jurisdiction to determine whether environmental claims asserted by any Governmental Unit or other Entity are discharged or otherwise barred by this Confirmation Order, the Plan, or any Plan Supplement, or the Bankruptcy Code (it being understood that nothing in this clause (A) divests any tribunal of any concurrent jurisdiction (if any)), and (B) nothing in this Confirmation Order or the Plan divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Confirmation Order, the Plan, or Plan Supplement or to adjudicate any defense asserted thereunder.

120.     **Provisions Regarding Kenvue.**   Notwithstanding anything to the contrary contained in this Confirmation Order, the Plan, or the Plan Supplement, Kenvue Brands LLC, Kenvue Inc., Kenvue SA Proprietary Limited, JNTL Consumer Health, JNTL Consumer Health I, JNTL Consumer Health (France) SAS, Kenvue Ltda., MCNEIL HEALTHCARE, LLC and any of their affiliates and subsidiaries (collectively, "Kenvue") are deemed to have opted out of the Third-Party Release, including the releases contained in Article VIII.D. of the Plan and Kenvue shall not be a Releasing Party under the Plan. For the avoidance of doubt, (i) Kenvue will not be required to take any additional action to opt out of the Third-Party Release contained in Article VIII.D. of the Plan, (ii) nothing in this Confirmation Order, the Plan or the Plan Supplement shall waive, resolve, settle, release, enjoin, discharge, impair or prejudice any rights, claims and interests (if any) held by Kenvue against the Debtors, Reorganized Debtors or any third party, and

(iii) all such rights, claims and interests (if any) will not be subject to the discharge provision set forth in Article VIII.A. of the Plan or the injunction set forth in Article VIII.F. of the Plan.

121.    **Notice of Confirmation and Effective Date.**  The Reorganized Debtors shall serve notice of entry of this Confirmation Order, substantially in the form attached hereto as **Exhibit B**, in accordance with Bankruptcy Rules 2002 and 3020(c) on all Holders of Claims and Interests within ten (10) Business Days after the date of entry of this Confirmation Order.  Notwithstanding the above, no notice of Confirmation or Consummation or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Combined Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.  As soon as reasonably practicable after the Effective Date, the Reorganized Debtors shall file notice of the Effective Date, substantially in the form attached hereto as **Exhibit C**, and shall serve a copy of the same on the above-referenced parties.  The above-referenced notices are adequate under the particular circumstances of these Chapter 11 Cases and no other or further notice is necessary.

122.    **Failure of Consummation.**  If Consummation does not occur, the Plan shall be null and void in all respects and nothing contained in the RSA, the Plan, or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtors or any Holder of Claims or Interests, or any other Entity; (2) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity, respectively; *provided* that all provisions of the RSA that survive termination thereof shall remain in effect in accordance with the terms thereof.

123.     **Substantial Consummation.**  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101(2) of the Bankruptcy Code.

124.     **Waiver of Stay.**  For good cause shown, any stay of this Confirmation Order provided by any Bankruptcy Rule or Bankruptcy Local Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Bankruptcy Court.

125.     **References to and Omissions of Plan Provisions.**  References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.  The failure to specifically include or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by this reference.

126.     **Headings.**  Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

127.     **Effect of Conflict.**  This Confirmation Order supersedes any Bankruptcy Court order entered prior to the Confirmation Date that may be inconsistent with this Confirmation Order.  If there is any inconsistency between this Confirmation Order and the Plan, this Confirmation Order shall control.

128.     **Final Order.**  This Confirmation Order is a Final Order, and the period in which an appeal must be filed shall commence upon the entry hereof.

129.     **Retention of Jurisdiction.**  The Bankruptcy Court may properly, and upon the Effective Date shall, to the full extent set forth in the Plan, retain jurisdiction over all matters

59

arising out of, and related to, these Chapter 11 Cases, including the matters set forth in Article XI

of the Plan and section 1142 of the Bankruptcy Code.


Signed:  December 16, 2025

_____

Christopher Lopez
United States Bankruptcy Judge

**Exhibit A**

**Plan**

Filed at Docket No. 235

**Exhibit B**

**Notice of Entry of Confirmation Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| KLEOPATRA FINCO S.À R.L., *et al.*,[1] | ) Case No. 25-90642 (CML) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**NOTICE OF ENTRY OF ORDER (I) APPROVING THE DEBTORS'
DISCLOSURE STATEMENT FOR THE JOINT PREPACKAGED PLAN OF
REORGANIZATION OF KLEOPATRA FINCO S.À R.L. AND ITS DEBTOR
AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE,
(II) CONFIRMING THE JOINT PREPACKAGED PLAN OF REORGANIZATION
OF KLEOPATRA FINCO S.À R.L. AND ITS DEBTOR AFFILIATES PURSUANT TO
CHAPTER 11 OF THE BANKRUPTCY CODE, AND (III) GRANTING RELATED RELIEF**

**PLEASE TAKE FURTHER NOTICE** that, on December [16], 2025, the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), entered the *Order (I) Approving the Debtors' Disclosure Statement for the Joint Prepackaged Plan of Reorganization of Kleopatra Finco S.à r.l. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code, (II) Confirming the Joint Prepackaged Plan of Reorganization of Kleopatra Finco S.à r.l. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code, and (III) Granting Related Relief* [Docket No. [●]] (the "Confirmation Order") confirming the *Amended Joint Prepackaged Plan of Reorganization of Kleopatra Finco S.à r.l. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 235] (the "Plan").[2]

Copies of the Confirmation Order, the Plan, and all documents filed in these Chapter 11 Cases are available free of charge by visiting https://cases.stretto.com/Klockner.  You may also obtain copies of any pleading by visiting the Court's website at https://ecf.txsb.uscourts.gov in accordance with the procedures and fees set forth therein.

The Debtors will serve a separate notice following the occurrence of the Effective Date.

The Plan and its provisions are binding on the Debtors, the Reorganized Debtors, the Disbursing Agent, any Holder of a Claim against, or Interest in, the Debtors and such Holder's respective successors and assigns, regardless of whether such Holder (1) will receive any property or interest in property under the Plan or (2) failed to vote to accept or reject the Plan or affirmatively voted to reject the Plan.

---

[1]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Klockner.  The location of Kleopatra Finco S.à r.l.'s principal place of business and the Debtors' service address in these chapter 11 cases is 46A, Avenue J.F. Kennedy, L-1855 Luxembourg, R.C.S. Luxembourg.

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

Dated: December [●], 2025
Houston, Texas

*/s/ [DRAFT]*

**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
Eric M. English (TX Bar No. 24062714)
M. Shane Johnson (TX Bar No. 24083263)
Megan Young-John (TX Bar No. 24088700)
James A. Keefe (TX Bar No. 24122842)
Joanna D. Caytas (TX Bar No. 24127230)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone:      (713) 226-6000
Facsimile:      (713) 226-6248
Email:          jhiggins@porterhedges.com
                eenglish@porterhedges.com
                sjohnson@porterhedges.com
                myoung-john@porterhedges.com
                jkeefe@porterhedges.com
                jcaytas@porterhedges.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          joshua.sussberg@kirkland.com

-and-

Chad J. Husnick, P.C. (admitted *pro hac vice*)
John R. Luze, P.C. (admitted *pro hac vice*)
Jeffrey T. Michalik (admitted *pro hac vice*)
David R. Gremling (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          chad.husnick@kirkland.com
                john.luze@kirkland.com
                jeff.michalik@kirkland.com
                dave.gremling@kirkland.com

*Proposed Co-Counsel for the Debtors*
*and Debtors in Possession*

*Proposed Co-Counsel for the Debtors*
*and Debtors in Possession*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December [●], 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.  Additionally, the foregoing document will be served as set forth in a forthcoming affidavit filed by the Debtor's claims agent.

/s/ *[DRAFT]*
John F. Higgins

**Exhibit C**

**Notice of Effective Date**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| KLEOPATRA FINCO S.À R.L., *et al.*,[1] | ) | Case No. 25-90642 (CML) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF OCCURRENCE**
**OF THE EFFECTIVE DATE OF THE JOINT PREPACKAGED**
**PLAN OF REORGANIZATION OF KLEOPATRA FINCO S.À R.L. AND ITS**
**DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

On [●], Christopher M. Lopez, United States Bankruptcy Judge for the United States Bankruptcy Court for the Southern District of Texas (the "Court"), entered the *Order (I) Approving the Debtors' Disclosure Statement for the Joint Prepackaged Plan of Reorganization of Kleopatra Finco S.à r.l. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code, (II) Confirming the Joint Prepackaged Plan of Reorganization of Kleopatra Finco S.à r.l. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code, and (III) Granting Related Relief* [Docket No. [●]] (the "Confirmation Order") confirming the *Amended Joint Prepackaged Plan of Reorganization of Kleopatra Finco S.à r.l. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 235] (the "Plan") of the above-captioned debtors (the "Debtors").[2]

The Effective Date of the Plan occurred on **[●]**.

If you would like to obtain a copy of the Confirmation Order, the Plan, or any other pleadings filed in these Chapter 11 Cases, you may:  (a) email KPInquiries@Stretto.com; (b) call the Debtors' restructuring hotline at (833) 212-0915 (US toll free) or +1 (949) 273-2457 (international);  or  (c) visit the Debtors' case website free of charge at https://cases.stretto.com/Klockner.  You may also obtain a copy of the Plan, Confirmation Order, or any other pleadings filed in these Chapter 11 Cases for a fee via PACER at:  http://www.txs.uscourts.gov.

The Court has approved certain discharge, release, exculpation, injunction, and related provisions in Article VIII of the Plan.

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Klockner.  The location of Kleopatra Finco S.à r.l.'s principal place of business and the Debtors' service address in these chapter 11 cases is 46A, Avenue J.F. Kennedy, L-1855 Luxembourg, R.C.S. Luxembourg.

[2]   Capitalized terms used but not defined herein have the meanings given to them in the Plan.

The Plan and its provisions are binding on the Debtors, the Reorganized Debtors, the Disbursing Agent, any Holder of a Claim against, or Interest in, the Debtors and such Holder's respective successors and assigns, regardless of whether such Holder (1) will receive any property or interest in property under the Plan or (2) failed to vote to accept or reject the Plan or affirmatively voted to reject the Plan.

The Plan and the Confirmation Order contain other provisions that may affect your rights. You are encouraged to review the Plan and the Confirmation Order in their entirety.

Dated: December [●], 2025
Houston, Texas

*/s/ [DRAFT]*

| | |
|---|---|
| **PORTER HEDGES LLP** | **KIRKLAND & ELLIS LLP** |
| John F. Higgins (TX Bar No. 09597500) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Eric M. English (TX Bar No. 24062714) | Joshua A. Sussberg, P.C. (admitted *pro hac vice*) |
| M. Shane Johnson (TX Bar No. 24083263) | 601 Lexington Avenue |
| Megan Young-John (TX Bar No. 24088700) | New York, New York 10022 |
| James A. Keefe (TX Bar No. 24122842) | Telephone:    (212) 446-4800 |
| Joanna D. Caytas (TX Bar No. 24127230) | Facsimile:    (212) 446-4900 |
| 1000 Main St., 36th Floor | Email:          joshua.sussberg@kirkland.com |
| Houston, Texas 77002 | |
| Telephone:    (713) 226-6000 | -and- |
| Facsimile:    (713) 226-6248 | |
| Email:          jhiggins@porterhedges.com | Chad J. Husnick, P.C. (admitted *pro hac vice*) |
|                      eenglish@porterhedges.com | John R. Luze, P.C. (admitted *pro hac vice*) |
|                      sjohnson@porterhedges.com | Jeffrey T. Michalik (admitted *pro hac vice*) |
|                      myoung-john@porterhedges.com | David R. Gremling (admitted *pro hac vice*) |
|                      jkeefe@porterhedges.com | 333 West Wolf Point Plaza |
|                      jcaytas@porterhedges.com | Chicago, Illinois 60654 |
| | Telephone:    (312) 862-2000 |
| | Facsimile:    (312) 862-2200 |
| | Email:          chad.husnick@kirkland.com |
| | john.luze@kirkland.com |
| | jeff.michalik@kirkland.com |
| | dave.gremling@kirkland.com |
| *Proposed Co-Counsel for the Debtors* | *Proposed Co-Counsel for the Debtors* |
| *and Debtors in Possession* | *and Debtors in Possession* |

## CERTIFICATE OF SERVICE

I certify that on December [●], 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas. Additionally, the foregoing document will be served as set forth in a forthcoming affidavit filed by the Debtor's claims agent.

/s/ *[DRAFT]*
John F. Higgins